**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Fast Radius, Inc., *et al.*,[1] | Case No. 22-11051 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF AN**
**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE**
**POTENTIAL SALE OF CERTAIN OF THE DEBTORS' ASSETS,**
**(II) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,**
**(III) APPROVING THE FORM AND MANNER OF NOTICE**
**THEREOF, (IV) APPROVING ASSUMPTION AND**
**ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), by and through their proposed counsel, DLA Piper LLP (US) ("DLA"), hereby submit this motion for the entry of an order (the "Bidding Procedures Order"), substantially in the form attached to this motion as **Exhibit A**. In support of this motion, the Debtors rely upon, and incorporate by reference (i) the *Declaration of Louis Rassey in Support of Chapter 11 Petitions and First Day Pleadings* (the "Rassey Declaration") and the *Declaration of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings* (the "Whittman Declaration" and, together with the Rassey Declaration, the "First Day Declarations"),[2] and (ii) the *Declaration of Brendan J. Murphy in Support of Sale and Bidding Procedures Motion* (the "Sale Declaration"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Fast Radius, Inc. (2788), Fast Radius Operations, Inc. (5398) and Fast Radius PTE. LTD (9511). The corporate headquarters and the mailing address for the Debtors is 113 N. May Street, Chicago, Illinois 60607.

[2] Capitalized terms used but not defined in this motion have the meaning given to them in the First Day Declarations, Sale Declaration and Bidding Procedures.

filed contemporaneously herewith. In further support of this motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.

3.     Venue of these chapter 11 cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief requested in this motion are sections 105(a), 363, and 365 of title 11 of the United States code (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.     On the date hereof (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.     The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in these

chapter 11 cases.  No date has been set for a meeting of creditors pursuant to section 341 of the Bankruptcy Code.

7.      Additional factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declarations and Sale Declaration, which are fully incorporated into this motion by reference.

### I.      The Debtors' Prepetition Marketing Efforts

8.      In light of growing liquidity challenges, beginning in July of 2022, the Debtors and their advisors commenced an extensive prepetition marketing process to explore all potential strategic alternatives, including sales and capital markets solutions.  The Debtors engaged investment bankers Citigroup Global Markets Inc. and Lincoln Partners Advisors LLC ("Lincoln") to assist in exploring all potential strategic alternatives.  The Debtors and their investment bankers contacted over 275 potentially interested parties as part of this prepetition process, entered into more than 50 nondisclosure agreements, and held more than 20 management presentations. Potential investors and/or acquirors also had access to a virtual data room with approximately 1,000 documents—which is in addition to the commercial and financial information already publicly available via SEC filings.  This process yielded a variety of proposals, including a financing transaction and other licensing arrangements—neither of which proved actionable or sufficient on a standalone basis to adequately capitalize the Debtors.

9.      More specifically, the Debtors were in advanced discussions with one particular strategic investor.  On September 29 and 30, 2022, the Debtors and such party engaged in substantial, in-person diligence.  On October 7, 2022, the strategic investor submitted an indication of interest to acquire the Debtors.  On October 19, 2022, the Debtors entered into an exclusivity agreement with that party in furtherance of a cash-for-equity transaction that would have

effectively taken the Company private, delivered a return for existing equity, and left existing creditors unimpaired. However, due, in part, to exogenous factors such as an unsolicited takeover bid of that potential acquiror, the deal could not move forward as contemplated by early November. This development limited the Debtors' alternatives because of their liquidity profile and truncated window within which to source an acceptable out-of-court transaction to avoid a default under the Prepetition Loan Agreements. Accordingly, the Debtors were left with limited liquidity and forced to pivot to an expedited filing for chapter 11.

10.     The Debtors and their advisors continue to market the Debtors' business with hopes of identifying a strategic or market participant to serve as a stalking horse bidder (a "Stalking Horse Bidder") or other bidder in a chapter 11 process. In conjunction with their exploration of strategic alternatives, the Debtors have established and maintained consistent communication with key stakeholders, including their secured lenders. The Debtors have used this dialogue, which has involved substantial diligence, discussion, and interaction among the relevant parties, to keep its creditor constituencies apprised (to the extent practicable) of the status of its marketing process and extend maturity dates to allow for a more comprehensive ability to consummate a value-maximizing transaction.

11.     Despite consistent efforts to conserve cash, the Debtors and their advisors have moved with urgency as they anticipate substantial liquidity challenges around mid-December, absent material developments.

12.     Although parties continue to express serious interest in the Debtors' business, in light of the Debtors' limited available liquidity, and after considering all of their alternatives, the Debtors determined that an in-court sale process would best preserve liquidity and maximize value,

4

and the Debtors anticipate seeking approval of appropriate bidding procedures to continue their prepetition marketing process in court.

13.    As part of the prepetition marketing process, the Debtors and their advisors worked to identify potential sources for debtor in possession financing to extend the timeline to bridge to consummation of a sale transaction.  Unfortunately, due to their asset profile and their prepetition secured lenders' unwillingness to provide incremental liquidity (or to consent to being primed), the Debtors have no present offers for postpetition funding.  Against this backdrop, the Debtors and their advisors believe that any no postpetition financing will be available, if at all, unless and until there are qualifying bids that evidence sufficient value with respect to their current secured lenders, thus obviating the need for an expedited sale process, as proposed below.

## II.    Proposed Sale Process and Potential Selection of Stalking Horse Bidder

14.    The Debtors seek to establish certain bidding procedures (the "Bidding Procedures") for the marketing and, potentially, the sale of all or substantially all of the Debtors' assets (the "Assets").

15.    The Debtors are seeking approval of the Bidding Procedures to establish an open process for the solicitation, receipt, and evaluation of bids on a timeline that allows the Debtors to consummate a sale of the Assets (the "Sale").  The Debtors are seeking approval of the Bidding Procedures to establish an open process for the solicitation, receipt, and evaluation of bids on a timeline that allows the Debtors to consummate a Sale of the Assets in a manner that maximizes value for the estate.  As explained above, the current marketing process for the Assets began well before the Petition Date, in July 2022.

16.    The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders by encouraging prospective bidders to submit

competitive, value-maximizing bids for the Assets.  More specifically, the Debtors propose the following timeline for the Sale:

| Event or Deadline | Date and Time |
|---|---|
| Deadline to Designate Stalking Horse Bidders (if any) | November 23, 2022 |
| Deadline to Object to Designation of any Stalking Horse Bidder or Grant of Bid Protections | Three (3) business days following service of the applicable Stalking Horse Notice |
| Initial Sale Objection Deadline | November 30, 2022 |
| Bid Deadline | December 5, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if applicable) | An Auction may be held on December 7, 2022, at 9:00 a.m. (prevailing Eastern Time) via live auction and/or remote video |
| Cure Objection Deadline | December 8, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Final Sale Objection Deadline | December 8, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | December 9, 2022, at __ [a./p.]m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Target Closing Date | December 12, 2022 |

17.     In light of the foregoing, the Debtors have determined that the Bidding Procedures are in the best interests of the Debtors' estates and provide interested parties with sufficient opportunity to participate.

18.     At this time the Debtors have not identified a Stalking Horse Bidder.  If the Debtors select a Stalking Horse Bidder, no later than one (1) business day after selecting a Stalking Horse Bidder, the Debtors shall file with the Court and serve a notice (a "Stalking Horse Notice") on the Notice Parties (a) identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price and Assets subject to the Stalking Horse Bid), and the amount

and form of any Bid Protections offered to the Stalking Horse Bidder, and (b) attaching a copy of the relevant agreement (the "Stalking Horse Agreement").

19.     Having the flexibility to designate a Stalking Horse Bidder and provide certain bid protections (the "Bid Protections") will provide the Debtors with the ability to maximize the value of the Assets.  Given the Debtors' need to maximize value for creditors and other stakeholders through a timely and efficient marketing and Sale process, the ability to designate a Stalking Horse Bidder and offer Bid Protections to such bidder (although the Debtors ultimately may, in the exercise of their business judgment, not designate a Stalking Horse Bidder at all) is a reasonable and sound exercise of the Debtors' business judgment and provides an actual benefit to the Debtors' estates.

### III.   The Bidding Procedures

20.     The Debtors have developed and proposed the Bidding Procedures, attached as Exhibit 1 to the Bidding Procedures Order, to govern the auction process.  The Bidding Procedures are designed to promote participation and active bidding and ensure an orderly marketing process. The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the process for written, irrevocable offers ("Bids"), the manner in which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of any auction (the "Auction"), the selection and approval of any ultimately successful bidders, and the deadlines with respect to the foregoing.  The Bidding Procedures will allow the Debtors to conduct the Sale process in a fair, orderly and transparent manner that will maximize value for all stakeholders.

21.    A summary of the Bidding Procedures and the procedures for conducting the

Auction are as follows[3]:

| | |
|---|---|
| **Participation Requirements** | To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a potential bidder (a "<u>Potential Bidder</u>") must deliver the following documents (collectively, the "<u>Preliminary Bid Documents</u>") by email to each of: (i) DLA; and (ii) Lincoln (collectively with DLA, the "<u>Bid Recipients</u>"):<br>a.  an executed confidentiality agreement on terms acceptable to the Debtors, to the extent not already executed;<br>b.  the identity of the Potential Bidder and a list of contacts for the Potential Bidder;<br>c.  a description of the diligence the Potential Bidder seeks to conduct; and<br>d.  evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach). |
| **Bid Deadline** | A Bidder that desires to make a Bid shall transmit such proposal, solicitation, or offer via email to each of the Bid Recipients so as to be **actually received** by them on or before **December 5 at 4:00 p.m.** (ET) (the "<u>Bid Deadline</u>"). |
| **Bid Requirements** | To be selected to acquire the Assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder (other than a Stalking Horse Bidder) must deliver to the Debtors and their advisors a written, irrevocable and binding offer for purchase of the Assets that must be determined by the Debtors in their business judgment to satisfy each of the following conditions (collectively, the "<u>Bid Requirements</u>"):<br><br>a.  <u>Identity of Assets</u>: Each Bid must state which of the Assets the Potential Bidder seeks to acquire and which liabilities of the applicable Debtor the Potential Bidder agrees to assume.<br><br>b.  <u>Purchase Price</u>: Each Bid must clearly set forth the terms of any proposed transaction (the "<u>Purchase Price</u>"). The Purchase Price should be a single point value in U.S. dollars for the total enterprise value of the Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis.<br><br>c.  <u>Good Faith Deposit</u>: Each Bid must be accompanied by a cash deposit in an amount equal to 10% of the aggregate value of the cash and non-cash consideration of the Bid to be held in an escrow |

---

[3]     The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures. In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern.  Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms have the meaning given to them in the Bidding Procedures.

account to be identified and established by the Debtors (the "Deposit"). To the extent a Bid is modified before, during, or after the Auction in any manner that increases the purchase price contemplated by such Bid, the Debtors reserve the right to require that such Bidder increase its Deposit so that it equals 10% of the increased value of the aggregate value of the cash and non-cash components of the proposed Transaction.

d.  Marked Agreement: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement (the "APA" or "Asset Purchase Agreement"), the form of which will be provided to any Potential Bidder prior to the Bid Deadline and in the case of an Auction with a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents"). Each Bidder's APA must provide (i) a commitment to close within two business days after all closing conditions are met, and (ii) a representation that the Bidder will use its reasonable best efforts to satisfy all applicable regulatory conditions.

e.  Committed Financing: To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include evidence of committed financing (debt or equity funding, as applicable), including the identity and contact information of the specific person(s) or entity(s) responsible for such committed funding whom Lincoln or DLA should contact regarding such funding, that demonstrates that the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be acceptable to the Debtors (in consultation with the Consultation Parties) and must be unconditional and not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

f.  Contingencies; No Financing or Diligence Outs: A Bid shall not be conditioned on a Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, than those contemplated by the Stalking Horse Bid, if any, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and

9

assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid.

g.  Identity: Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.

h.  Authorization: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

i.  Compliance with the Bankruptcy Code and Non-Bankruptcy Law; Acknowledgement.  Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures.

j.  As-Is, Where-Is: Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

k.  Expenses; Disclaimer of Fees: Each Bid (other than a Stalking Horse Bid) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder (other than a Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or

|  | request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code. |
|  | l.  <u>Adequate Assurance of Future Performance:</u> Each Bid (other than a Stalking Horse Bid) must (1) identify the Contracts to be assumed and assigned in connection with the proposed acquisition, (2) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder, and (3) demonstrate, in the Debtors' reasonable business judgment, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts. |
|  | m.  <u>Joint Bids:</u> The Debtors are authorized to approve joint Bids in their reasonable discretion on a case-by-case basis. |
|  | n.  <u>Backup Bid:</u> Each Bid shall provide that the Potential Bidder will serve as a Backup Bidder if the Potential Bidder's Bid is the next highest or otherwise best Bid. |
|  | o.  <u>Expected Closing Date:</u> Each Bid shall state the Potential Bidder's expected date of closing of the Sale, which shall be no later than **December 12, 2022**; *provided*, that such closing date may be extended pursuant to the terms of an asset purchase agreement. |
| **Designation of Qualified Bidders** | A Bid will be considered a "<u>Qualified Bid</u>," and each Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>," if the Debtors, in consultation with the Consultation Parties, determine that such Bid:<br><br>a.  satisfies the Bid Requirements;<br><br>b.  is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a timeframe acceptable to the Debtors (in consultation with the Consultation Parties); and<br><br>c.  within 24 hours after the Bid Deadline, the Debtors (after consulting with the Consultation Parties) will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties (as defined below) with a copy of each Qualified Bid.<br><br>If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline. |
| **Right to Credit Bid** | Any Qualified Bidder that has a valid and perfected lien on any Assets of the Debtors' estates (a "<u>Secured Creditor</u>") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured. |

| | |
|---|---|
| **Stalking Horse Bidders and Bid Protections** | To the extent provided for in the Bidding Procedures Order, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment, to: (i) select one or more Qualified Bidders to act as Stalking Horse Bidders in connection with the Sale and enter into a Stalking Horse Agreement; and (ii) provide such Stalking Horse Bidder with Bid Protections, not to exceed 3% of the cash purchase price contemplated by such Stalking Horse Agreement. |
| **The Auction** | If one or more Qualified Bids are received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Assets.  The Auction shall commence on **December 7, 2022 (prevailing Eastern Time) at 9:00 a.m. (prevailing Eastern Time)**, via live auction and/or remote video, or such later time or other place as the Debtors determine, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases. |
| **Provisions Governing the Auction** | The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"): <br><br> a.  The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid. <br><br> b.  Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to the terms of these Bidding Procedures and other limitations as may reasonably be imposed by the Debtors.   Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative. <br><br> c.  Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to proposed counsel for the Debtors via electronic mail, to R. Craig Martin, Esq. at craig.martin@us.dlapiper.com.  For the avoidance of doubt, only Qualified Bidders will be entitled to make any Bids at the Auction. For the avoidance of doubt, the Consultation Parties may attend the |

Auction without sending prior written notice of their intention to do so.

d.   Terms of Overbids:

(i)   Minimum Overbid.  Any Overbid, including any Bids by a Stalking Horse Bidder must be made in minimum increments of $250,000 (or such other amount as the Debtors may determine after consultation with the Consultation Parties) of additional value (including after payment of the Bid Protections to any Stalking Horse Bidders, if applicable).

(ii)  Conclusion of Each Overbid Round.  Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (the "Overbid Round Deadline"), subject to extension by the Debtors, by which time any Overbids must be submitted to the Debtors.

(iii) Overbid Alterations.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid and shall otherwise comply with the terms of these Bidding Procedures.

(iv)  Announcing Highest Bid.  After each Overbid Round Deadline, the Debtors shall determine, in consultation with the Consultation Parties and taking into account the Bid Assessment Criteria, whether an Overbid is higher or otherwise better than the Baseline Bid in the initial Overbid round or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall announce and describe to all Qualified Bidders present at the Auction the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, the identity of the bidder with the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

e.   The Debtors, in consultation with the Consultation Parties, reserve the right to adjourn the Auction as necessary to (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) provide Qualified Bidders with additional time to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to offer such additional evidence as the Debtors may require, such as with respect to financial capacity or sufficient funding or financing, in order to consummate the proposed Transaction at the prevailing Overbid amount.

| | |
|---|---|
| | f.  The Auction shall continue until there is only one Qualified Bid that the Debtors determine, after consultation with the Consultation Parties, and taking into account the Bid Assessment Criteria, to be the highest or otherwise best Qualified Bid for the Assets. Such Qualified Bid shall be declared the "Successful Bid" and such Qualified Bidder, the "Successful Bidder," and the Auction will be closed. Such acceptance by the Debtors of the Successful Bid (to be made in accordance with the terms of section IV(d) of the Bidding Procedures) is conditioned upon approval by the Court of the Successful Bid.  Following the closing of the Auction, the Debtors shall not initiate contact with, solicit, or encourage proposals from any person or entity with respect to the Assets.<br><br>g.  Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith *bona fide* offer, and (iii) it intends to consummate the proposed Transaction if selected as the Successful Bidder. |
| **Backup Bidder** | If an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets shall be required to serve as a backup bidder (the "Backup Bidder") until such time that the Sale to the Successful Bidder is consummated, but no later than thirty (30) days past the Sale Hearing, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.<br><br>The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder (the "Backup Bid") shall be announced by the Debtors, after consultation with the Consultation Parties, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder.  The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated.  The Backup Bidder's Deposit shall be held in escrow pending consummation of the Sale to the Successful Bidder.<br><br>If a Successful Bidder fails to consummate the approved Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance. |
| **Reservation of Rights** | The Debtors reserve their rights to modify these Bidding Procedures, after consultation with the Consultation Parties, in any manner that they reasonably determine will best promote the goals of these Bidding |

<table>
<tr><td></td><td>Procedures, or impose, at or prior to the Auction, additional customary terms and conditions in connection with a Sale, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

For the avoidance of doubt and notwithstanding anything to the contrary herein, nothing in these Bidding Procedures or the Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under the applicable law.  Further, nothing in these Bidding Procedures or the Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to:  (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Assets (each, an "<u>Alternate Proposal</u>"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases or any other entity regarding Alternate Proposals.</td></tr>
<tr><td><strong>Notice and Consultation Parties</strong></td><td>Information that must be provided to the "<u>Notice Parties</u>" under these Bidding Procedures must be provided to the following parties: a) proposed counsel to the Debtor DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn: R. Craig Martin, Esq. at craig.martin@us.dlapiper.com); (ii) 1251 Avenue of the Americas New York, New York 10020 (<u>Attn</u>: Rachel Ehrlich Albanese, Esq. at rachel.albanese@us.dlapiper.com); and (iii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (<u>Attn</u>: W. Benjamin Winger, Esq. at benjamin.winger@us.dlapiper.com);  (b) counsel  to  any  statutorily appointed committee; (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (<u>Attn</u>: Timothy Fox, Esq. at Timothy.Fox@usdoj.gov).

The term "<u>Consultation Parties</u>" shall mean: (i) Silicon Valley Bank (<u>Attn</u>: Alex Rheaume, Esq. at arheaume@mofo.com), (ii) SVB Innovation Credit Fund VIII, L.P. (<u>Attn</u>: David Audley, Esq. at audley@chapman.com), and (iii) any statutorily appointed committee in these chapter 11 cases.</td></tr>
</table>

22.     Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value and, as such, do not impair the Debtors' ability to consider all qualified bid proposals and, as noted, preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

## IV.    Form and Manner of Sale Notice

23.     The Auction, if any, shall take place at **9:00 a.m. (prevailing Eastern Time) on December 7, 2022**, via live auction and/or remote video, or such later date and time as selected by the Debtors.

24.     As soon as practicable after entry of the Bidding Procedures Order, the Debtors will cause the sale notice (the "Sale Notice"), substantially in the form attached as Exhibit 2 to the Bidding Procedures Order, to be served on the parties that receive notice of this motion. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

25.     In addition, as soon as practicable after entry of the Bidding Procedures Order, the Debtors will post the Sale Notice on their restructuring website, https://cases.stretto.com/fastradius (the "Case Website") and publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in *The Wall Street Journal, USA Today, The New York Times* (national edition) or another publication of similar distribution, to provide notice to any other potential interested parties.

26.     The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and the dates and deadlines related thereto. Accordingly, the Debtors request that the form and manner of the Sale Notice be approved and no other or further notice of the Auction be required.

## V.    Assumption and Assignment Procedures

27.    The Debtors also seek approval of the Procedures set forth below to facilitate the fair and orderly assumption, assumption and assignment, or rejection of certain of the Debtors' Contracts in connection with the Sale.  The proposed Assumption and Assignment Procedures are as follows:

- **Cure Notice**.  Within two (2) business days after entry of this Order, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice on certain non-Debtor contract counterparties (collectively, the "Contract Counterparties"), and post the Cure Notice to the restructuring website (https://cases.stretto.com/fastradius).  The Debtors may provide supplemental Cure Notices if they discover Contracts inadvertently omitted from the initial Cure Notice or such notice erroneously reports the Cure Amount. Contract Counterparties shall have at least fourteen (14) days from the service date of such supplemental Cure Notice to file and serve an objection in the manner described herein.

- **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparty that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information:  (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale (each, an "Assigned Contract" and, collectively, the "Assigned Contracts"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Amount"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

- **Cure Objections**.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to **December 8, 2022, at 4:00 p.m. (prevailing Eastern time)** (the "Cure Objection Deadline"); *provided* that the Debtors may extend the Cure Objection Deadline by filing a notice of such modification on the Court's docket.  A properly

filed Cure Objection shall be heard at the Sale Hearing or such later date as may be agreed upon by the parties or fixed by the Court.

- **Dispute Resolution**.  Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Successful Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such contract should be excluded and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such Contract.  Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "Cure Dispute"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited into a segregated account held by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution thereof.

- **Supplemental Cure Notice**.  If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Successful Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Successful Bidder, at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modifying a previously filed Cure Notice, including modify the previously stated Cure Amounts associated with any Contracts (the "Supplemental Cure Notice").

- **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any.  All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

- **Dispute Resolution of Supplemental Cure Objection**.  If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine

the Cure Costs, if any, and approve the assumption of the relevant Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.

- **No Cure Objections**. If there are no Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection in a manner that is consistent with the requirements set forth herein, (i) the Cure Costs, if any, set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

## RELIEF REQUESTED

28.     By this motion, the Debtors seek entry of an order, substantially in the form of the Bidding Procedures Order:

(i)     authorizing and approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1, in connection with the purchase and Sale of the Assets;

(ii)    scheduling an Auction for the Assets to be held and establishing certain dates and deadlines in connection with the Bidding Procedures;

(iii)   approving the form and manner of the Sale Notice with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests, attached as Exhibit 2 to the Bidding Procedures Order;

(iv)    approving the Assumption and Assignment Procedures and approving the form and manner of the notice thereof; and

(v)     granting related relief.

29.     The Debtors also seek entry of an order (the "Sale Order") approving the Debtors' entry into an Asset Purchase Agreement substantially in the form that shall be attached to the Sale Order.  The Debtors will file a proposed form of Sale Order and Asset Purchase Agreement in advance of the hearing to consider the Sale Order in the event that the Debtors, in an exercise of their business judgment, believe that such a sale would maximize the value of their estates.

## BASIS FOR RELIEF REQUESTED

**I.    Authority Exists to Approve the Bidding Procedures and Any Sale.**

30.    Ample authority exists for approval of the Bidding Procedures and any Sale. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." This Court's power under section 363 of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

31.    Courts review a debtor's decision to use proper use, sell, or lease out of the ordinary course under the business judgment rule. *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound business purpose justifies such actions.' If the [Debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale." (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)). "Under Delaware law, the business-judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *accord Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 555 n.111 (D. Del. 2008). As set forth below, this Court should approve the Bidding Procedures and the Sale because the Debtors have demonstrated a sound business justification therefor. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 179 (D. Del. 1991).

II.     **The Bidding Procedures are Fair, Designed to Maximize the Value Received by the Debtors' Estates, and Consistent with the Debtors' Reasonable Business Judgment.**

32.     The purpose of sale and bidding procedures is to promote competition in order to maximize the value of the Debtors' assets.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999); *see also Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992).

33.     The Debtors submit that the Bidding Procedures are a valid exercise of their business judgment, fair and appropriate under the circumstances, consistent with procedures routinely approved by courts in this district, and in the best interest of their estates.  The Debtors designed the Bidding Procedures to ensure a fair and reasonable process that will yield the maximum value for the Assets.  The proposed Bidding Procedures will facilitate a competitive process in which all Potential Bidders are encouraged to participate and submit bids (while affording Potential Bidders flexibility in structuring their Bids).  The Bidding Procedures provide Potential Bidders with sufficient notice and opportunity to acquire information necessary to submit timely and informed bids at each stage of the sale process.  Thus, the Debtors and all parties in interest can be assured that the Debtors will have the opportunity to consider all competing bids in a fair process and that the consideration received will be the highest and best available.

34.     Moreover, it is well-established that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold because the best way to determine value is exposure to the market.  *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means

for producing an arm's length fair value transaction"). This is especially true here, where the sale of the Assets has been subjected to an extensive marketing process and intensively scrutinized by the Debtors and their retained advisors.

35.     Moreover, having the option to enter into a Stalking Horse Agreement with a Stalking Horse Bidder ensures that the Debtors retain flexibility to set a minimum purchase price for the Assets that will be tested by the marketplace. As such, the Debtors and their creditors can be assured that, taking into account the financial condition of the market and the economy, the consideration obtained will be fair and reasonable and at or above market.

### III.    A Sale Represents a Sound Exercise of the Debtors' Business Judgment.

36.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." The Debtors submit that application of the section 363(b) standard for sales outside of the ordinary course of a debtor's business is met here.

37.     The Debtors have demonstrated ample business justifications for a Sale. The Debtors made good-faith efforts to sell their business in a prepetition marketing scheme, but have not been successful. The Bidding Procedures provide for a fair and organized process that is designed to encourage competitive bidding in order to maximize the value of the Debtors' business.

38.     In short, the Debtors believe that a sale of the Assets pursuant to and in accordance with the Bidding Procedures will afford Potential Bidders the flexibility to structure their Bids in a manner that best suits their goals, while ensuring that Qualified Bids generate the greatest possible value for the Assets.

**IV.    The Bid Protections Have a Sound Business Purpose and Should Be Approved.**

39.    The Debtors are also seeking authority pursuant to the Bidding Procedures to designate one or more Stalking Horse Bidders and offer Bid Protections to each such Stalking Horse Bidder.  The Debtors seek to utilize such authority only in their discretion if the Debtors determine in their business judgment that any such Bid Protection will likely facilitate a competitive bidding and auction process.  The use of a stalking horse in a public auction process for sales is a customary practice in chapter 11 cases because the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value."  *See Official Comm. Unsecured Creditors v. Interforum Holding LLC*, No. 11‑CV‑219, 2011 WL 2671254, at *1 n. 1 (E.D. Wisc. July 7, 2011).  As a result, stalking horse bidders virtually always require break-up fees and, in many cases, other forms of bidding protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement."  *Id.* (citation omitted).  Thus, the use of bidding protections has become an established practice in chapter 11 cases.

40.    The Debtors believe that the Bid Protections are necessary to attract and retain a Stalking Horse Bidder.  Any Bid Protections will be negotiated through back-and-forth, arm's length negotiations.  By inducing a Stalking Horse Bidder to hold its offer open as a baseline from which other potential bidders can submit higher or better offers, the Bid Protections will serve to encourage more competitive bidding, which will likely increase the purchase price of the Assets.  As such, the Bid Protections will, among other things, enable the Debtors to maximize the value of their estates for the benefit of all economic stakeholders in these chapter 11 cases.

41. The United States Court of Appeals for the Third Circuit has established standards for determining the propriety of bidding incentives in the bankruptcy context. *See O'Brien Envtl. Energy, Inc.*, 181 F.3d at 533–38; *see also In re Reliant Energy Channelview LP*, 594 F.3d 200, 205 (3d Cir. 2010) (noting that *O'Brien* "set forth the controlling legal principles" applicable to bidding incentives). The Court has held that even though bidding incentives, including break-up fees, are measured against a business judgment standard in nonbankruptcy transactions, the administrative expense provisions of section 503(b) of the Bankruptcy Code govern in the bankruptcy context. *See O'Brien Envtl. Energy*, 181 F.3d at 535. Accordingly, bidding incentives must provide some post-petition benefit to the debtor's estate in order to be approved. *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 314 (3rd Cir. 2018); *O'Brien Envtl. Energy*, 181 F.3d at 533. With respect to break-up fees, the standard is generally satisfied if the bid protections promote a more competitive process, for example. *O'Brien Envtl. Energy*, 181 F.3d at 537.

42. The Bid Protections proposed fall within the range of those recently approved. *See, e.g.*, *In re Agspring Miss. Region, LLC*, Case No. 21-11238 (CTG) (Bankr. D. Del. Oct. 14, 2021) [D.I. 103] (approving bid protections of 3% of the purchase price); *In re Sequential Brands Grp., Inc., et al.*, Case No. 21-11194 (JTD) (Bankr. D. Del. Sept. 24, 2021) [D.I. 138] (approving bid protections of 3.65% of the purchase price); *In re Knotel, Inc., et al.*, Case No. 21-10146 (MFW) (Bankr. D. Del. Mar. 11, 2021) [D.I. 418] (approving bid protections of 3% of the purchase price); *In re Ursa Piceance Holdings LLC, et al.*, Case No. 20-12065 (BLS) (Bankr. D. Del. Sept. 29, 2020) [D.I. 124] (authorizing bid protections in an amount not to exceed 2.5% of the purchase

price); *In re Brooks Brothers Grp., Inc. et al.*, Case No. 20-11785 (CSS) (Bankr. D. Del. Aug. 3, 2020) [D.I. 285] (approving bid protections of 3% of the purchase price).[4]

43.     The amount of the proposed Bid Protections is reasonable and appropriate in light of the size and nature of the Sale and the efforts that would be expended by a Stalking Horse Bidder.

44.     Moreover, the Bid Protections are necessary to preserve the value of the estate and would likely be necessary to secure a Stalking Horse Bidder's commitment.  As such, the Bid Protections provide the Debtors with a platform from which to ensure a value-maximizing transaction for the benefit of their estates, creditors, and stakeholders.  Moreover, payment of the Bid Protections is customary and will not diminish the Debtors' estates as the amount of the Bid Protections will be covered in the Minimum Initial Overbid amount.

## V.     Any Sale Will Satisfy the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, Encumbrances, and Other Interests.

45.     The Debtors seek authority to sell the Assets free and clear of all liens, claims, encumbrances, and other interests, pursuant to section 363(f) of the Bankruptcy Code.

46.     Section 363(f) of the Bankruptcy Code provides for a sale "free and clear" of an entity's interest in property of the estate "only if":

(1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in *bona fide* dispute; or

---

[4]     In accordance with Local Rule 7007-2(a)(vii), the Debtors' proposed counsel has copies of each order and will make them available to this Court or to any party that requests them.  The orders are also available on this Court's CM/ECF PACER site at the cited docket numbers and on the dates specified above.

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

47.     Section 363(f) of the Bankruptcy Code is stated in the disjunctive; therefore, it is only necessary to meet one of the five conditions of section 363(f) in a sale under section 363(b) of the Bankruptcy Code.  The Debtors submit that one or more of the conditions set forth in section 363(f) of the Bankruptcy Code will be satisfied with respect to any Sale.

48.     The Debtors anticipate that any Sale will satisfy section 363 of the Bankruptcy Code by virtue of either (a) generating proceeds with an aggregate value that exceeds the value of the liens of the primary lienholder, or (b) the primary lienholder's consent to such Sale.

49.     The Debtors will send the Sale Notice to, among others, all parties who assert liens or claims against the Assets.  Any holder of a claim against or interest in the Assets who does not object to the Sale will be deemed to have consented to the sale of the Assets free and clear of its claim or interest.  11 U.S.C. § 363(f)(2); *see In re Heritage Home Grp. LLC*, Case No. 18-11736 (KG), 2018 WL 4684802 (Bank. D. Del. Sept. 27, 2018); *Hargrave v. Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994).  Moreover, the Debtors believe that any parties that do object on the basis that they hold liens or claims against the Assets will either (a) be holders of liens or claims that are subject to a *bona fide* dispute or (b) would be compelled to accept cash in satisfaction of their interests.  *See* 11 U.S.C. §§ 363(f)(3) & 363(f)(5).

50.     Any lienholder also will be adequately protected by having its liens, if any, attach to the proceeds of the Sale, in the same order of priority, with the same validity, force, and effect, that such creditor had prior to the sale, subject to any claims and defenses that the Debtors and their estates may possess with respect thereto.  *See* 11 U.S.C. § 363(f)(3).  Therefore, pursuant to section 363 of the Bankruptcy Code, the Debtors may sell the Assets free and clear of all liens, claims, and encumbrances, except to the extent of the permitted encumbrances.

51.      The Debtors also submit that it is appropriate to sell the Assets free and clear of successor liability relating to the Debtors' business.  Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtors.  Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 of the Bankruptcy Code sale takes free and clear from successor liability relating to the debtor's business.  *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288–93 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co.* (*In re Leckie Smokeless Coal Co.*), 99 F.3d 573, 585–87 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *Riverside Acquisition Grp. LLC v. Vertis Holdings, Inc. (In re Vertis Holdings, Inc.)*, 536 B.R. 589, 636–38 (Bankr. D. Del. 2015) (sale of assets pursuant to 363(f) barred successor liability claims for tortious acts); *Amphenol Corp. v. Shandler* (*In re Insilco Techs., Inc.*), 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory); *see also In re Gen. Motors Corp.*, 407 B.R. 463, 505–06 (Bankr. S.D.N.Y. 2009) (holding that "[t]he law in this Circuit and District is clear; the Court will permit GM's assets to pass to the purchaser free and clear of successor liability claims, and in that connection, will issue the requested findings and associated injunction"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("*[I]n personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale.").

52.     The purpose of an order authorizing the transfer of assets free and clear of all liens, claims, encumbrances and all other interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, the Debtors would run the risk that potential bidders may not enter the Auction or, if they did, would do so with reduced bid amounts.  To that end, the Successful Bidder should not be liable under any theory of successor liability relating to the Debtors' business but should acquire the Assets free and clear.

## VI.    Any Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.

53.     Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a buyer who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  *See* 11 U.S.C. § 363(m).  Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse, Inc.)*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (holding that section 363(m) "encompasses one who purchases in 'good faith' and for 'value'" under traditional equitable principles); *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996) ("[T]he concept of 'good faith' speaks to the integrity of a party's conduct in the course of the bankruptcy sale proceedings."); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

54.     The Debtors' marketing efforts and negotiations with Potential Bidders have been and will continue to be undertaken at arm's-length and without collusion, with all parties being represented or at least having the opportunity to be represented by their own sophisticated counsel. Accordingly, the Debtors request, and will demonstrate at the Sale Hearing, that the Successful Bidder for the Assets should be deemed a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Debtors believe that providing the Successful Bidder with such protection will ensure that the Debtors will receive the highest or otherwise best offer for the Assets and that the closing of the Sale will occur promptly.

55.     Additionally, the Bidding Procedures are designed to prevent the Debtors and/or the Successful Bidder (or the Backup Bidder) from engaging in any conduct that would cause any Sale to the Successful Bidder (or the Backup Bidder) to be avoided under section 363(n) of the Bankruptcy Code.

## VII.  This Court Should Authorize the Assumption of Executory Contracts and Unexpired Leases.

56.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor."  11 U.S.C. § 365(a).  The bankruptcy court applies a reasonable business judgment standard when considering a debtor's decision to assume or reject an executory contract or unexpired lease.  *See, e.g.*, *In re HQ Glob.  Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (a debtor's decision to assume or reject executory contract is governed by business-judgment standard and can only be overturned if decision was "product of bad faith, whim, or caprice"); *cf. In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (same).  A debtor has

29

exercised its reasonable business judgment if it can demonstrate that assumption or rejection of an executory contract will benefit the estate. *See Sharon Steel Corp.*, 872 F.2d at 36, 39–40; *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987). "[M]ore exacting scrutiny would slow the administration of the debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, for a debtor to assume an executory contract under section 365(b)(1) of the Bankruptcy Code, it also must cure, or provide adequate assurance that it will promptly cure, any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

57.    Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract pursuant to section 365(f) of the Bankruptcy Code. *See L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000) (noting that the Bankruptcy Code "generally favors free assignability as a means to maximize the value of the debtor's estate"); *see also Leonard v. Gen. Motors Corp. (In re Headquarters Dodge, Inc.)*, 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets). Section 365(f)(1) of the Bankruptcy Code permits a debtor to assign unexpired leases and contracts free from anti-assignment restrictions, providing, in relevant part:

> Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

11 U.S.C. § 365(f)(1).  Furthermore, section 365(f)(3) of the Bankruptcy Code prohibits enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof.  *See* 11 U.S.C. § 365(f)(3).  *See, e.g., In re Jamesway Corp.*, 201 B.R. 73, 77–78 (Bankr. S.D.N.Y. 1996) (section 365(f)(3) of the Bankruptcy Code prohibits enforcement of any lease clause creating a right to terminate the lease because it is being assumed or assigned, thereby indirectly barring assignment by a debtor).  Other courts have recognized that provisions that have the effect of restricting assignments cannot be enforced.  *See In re Rickel Home Ctrs., Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section [365(f)], courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute *de facto* anti-assignment provisions.").

58.    Section 365(f) of the Bankruptcy Code requires the debtor and proposed purchaser to provide adequate assurance of future performance in order for debtor to assign an executory contract.  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction."  *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp.* (*In re Sanshoe Worldwide Corp.*), 139 B.R. 585, 592 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 300 (2d Cir. 1993); *see also In re Decora Indus. Inc.*, Case No. 00-4459JJF, 2002 WL 32332749 at *8 (D. Del. May 20, 2002) ("adequate assurance falls short of an absolute guaranty of payment"); *Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (adequate assurance "will fall considerably short of an absolute guarantee of performance") (quoting *In re Luce Industries, Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980)).

59.     Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See, e.g.*, *In re ANC Rental Corp.*, 278 B.R. 714, 724 (Bankr. D. Del. 2002) (adequate assurance is present where prospective assignee hired personnel with experience running debtors' business and presented evidence of its financial security); *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

60.     To facilitate and effect the Sale, the Debtors request approval under section 365 of the Bankruptcy Code of the Debtors' assumption and assignment (as applicable) of the Assigned Contracts to the Successful Bidder.  The Debtors further request that the Sale Order provide that the Assigned Contracts will remain in full force and effect for the benefit of the Successful Bidder (and be transferred to a Successful Bidder, to the extent applicable) notwithstanding any provisions in the Assigned Contracts, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assumption and assignment.

61.     The Debtors propose to serve Cure Notices on all counterparties to Assigned Contracts as set forth herein and in the Order and provide such counterparties with an opportunity to object to assumption and assignment and the Debtors' proposed Cure Amount.  The Assigned Contracts will be assumed and assigned at closing of the contemplated Sale.

62.     The Debtors' assumption and assignment of the Assigned Contracts to the Successful Bidder meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code.  The assumption and assignment of key executory contracts and unexpired leases is necessary for the Successful Bidder to conduct business going forward.

Because no purchaser of the going concern would acquire the Assets without certain key executory contracts and unexpired leases, the assumption and assignment of such agreements is essential to securing the highest or otherwise best offer for the Assets.  Further, upon consummation of any Sale, the Debtors will no longer continue to operate the Assets and will therefore have no use for any of the executory contracts and unexpired leases previously utilized in the ordinary course of the operation of the Assets.

63.    To the extent that any defaults exist under any executory contract or unexpired lease that is to be assumed and assigned in connection with the sale of the Assets, the Successful Bidder or the Debtors, as applicable, will cure any such default prior to such assumption and assignment.

64.    The Debtors contemplate that the Successful Bidder will be able to provide adequate assurance of future performance in connection with any assumed and assigned executory contracts and unexpired leases, because such Successful Bidder must submit evidence sufficient to demonstrate its financial wherewithal and ability to consummate the transaction.  In addition, under the Assumption and Assignment Procedures, the non-Debtor party to any Assigned Contract will have the opportunity to object to adequate assurance of future performance by the Successful Bidder.

65.    The Debtors will present facts at the Sale Hearing establishing the financial credibility, willingness, and ability of the Successful Bidder to perform under the Assigned Contracts.  The Sale Hearing therefore will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Assigned Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.  Further, as set forth above, the Debtors will give notice to all parties to the

Assigned Contracts of their intention to assume and assign the Assigned Contracts, as the case may be, as well as the proposed Cure Amounts.

66.     Accordingly, the Debtors submit that implementation of the proposed Assumption and Assignment Procedures is appropriate in these chapter 11 cases, and the Court will have a sufficient basis to authorize the Debtors to reject or assume and assign contracts as will be set forth in the Successful Bidder's asset purchase agreement.

**VIII.   The Forms of Notice and Notice Procedures for the Bidding Procedures, the Auction, and the Sale Hearing are Reasonable and Appropriate.**

67.     Under Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of the Sale, including disclosing the time and place of any auction, the terms and conditions of the Sale, and the deadline for filing any objections thereto.  *See* Fed. R. Bankr. P. 2002 (a), (c).

68.     The Debtors submit that the notice procedures described above fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Bidding Procedures, the Auction, and the Sale Hearing to the Debtors' creditors and all other interested parties that are entitled to notice, as well as to those parties that have expressed a *bona fide* interest in acquiring the Assets.

69.     Accordingly, the Debtors respectfully request that the Court approve the notice procedures set forth herein, including the form and manner of service of the Sale Notice, the Publication Notice, and the Notice of Successful Bidder and that no other or further notice of the Bidding Procedures, the Auction, and the Sale Hearing is necessary or required.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

70.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the

use, sale or lease of property under Bankruptcy Rule 6004(h). As explained above and in the First Day Declarations, the relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

71.    Nothing contained in this motion is intended to or shall: (a) be construed as an admission as to the validity of any claim against the Debtors; (b) impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates to dispute the amount of, basis for, nature, validity or priority of any claim against the Debtors; (c) impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action which may exist against any third party; (d) be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program or policy between any Debtor and any third party under section 365 of the Bankruptcy Code; or (e) create any rights in favor of, or enhance the status or nature of any claim held by, any person.

## NOTICE

72.    Notice of this motion will be provided to: (a) the Office of the United States Trustee for Region 3; (b) the Office of the United States Attorney for the District of Delaware; (c) each of the parties included on the Debtors' consolidated list of twenty largest unsecured creditors; (d) the Internal Revenue Service; (e) the Securities Exchange Commission; (f) the attorney general for each state in which the Debtors operate;  (g) counsel to the Debtors' secured lenders; (h) the Banks; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (j) any other party

that is entitled to notice under Local Rule 9013-1.  The Debtors respectfully submit that such notice is sufficient and no further notice of this motion is required under the circumstances.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that this Court enter an order, substantially in the form of the Bidding Procedures Order and, following the Sale Hearing, an order, substantially in the form of the Sale Order, granting the relief sought in this motion and granting such other and further relief as may be just and proper.

Dated:  November 8, 2022
        Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**
 */s/  R. Craig Martin*
R. Craig Martin (DE 5032)
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@us.dlapiper.com

-and-

Rachel Ehrlich Albanese (pro hac vice pending)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com

-and-

W. Benjamin Winger (pro hac vice pending)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: benjamin.winger@us.dlapiper.com

*Proposed Counsel for the Debtors*

**<u>Exhibit A</u>**
**(Proposed Bidding Procedures Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Fast Radius, Inc., *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-11051 (___)<br><br>(Joint Administration Requested) |

**ORDER (I) APPROVING BIDDING PROCEDURES
FOR THE POTENTIAL SALE OF CERTAIN OF THE
DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES WITH
RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (IV) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order (this "Order"), (i) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"), (ii) establishing certain dates and deadlines in connection with the Bidding Procedures, including the Sale Hearing, (iii) approving the Bid Protections, (iv) approving the form and manner of notice of any Auction and any Sale Hearing, (v) establishing procedures for the assumption and assignment of contracts and noticing of related Cure Amounts, and (v) granting related relief, all as further described in the Motion; and upon consideration of the First Day Declarations, and the record of these chapter 11 cases; and this Court having found that (a) this Court has jurisdiction over the Debtor, its estate, property of its estate and to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Fast Radius, Inc. (2788), Fast Radius Operations, Inc. (5398) and Fast Radius PTE. LTD (9511).  The corporate headquarters and the mailing address for the Debtors is 113 N. May Street, Chicago, Illinois 60607.

[2]      Capitalized terms used but not otherwise defined in this Order shall have the meanings given to them in the Motion or Bidding Procedures, as applicable.

*Court for the District of Delaware*, dated February 29, 2012, (b) this Court may enter a final order consistent with Article III of the United States Constitution, (c) this is a core proceeding under 28 U.S.C. § 157(b), (d) venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (e) the Debtor's notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances and no other or further notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court (the "Hearing"); and having determined that the legal and factual bases set forth in the Motion, and the First Day Declarations establish just cause for the relief granted in this Interim Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Bidding Procedures**.  The Debtor has articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable and appropriate under the circumstances and designed to achieve the highest or otherwise best offer and to maximize the value of the Debtors' estates.  The Debtors, with the assistance of their advisors, have engaged and continue to engage in a fulsome marketing and sale process to solicit and develop the highest or otherwise best offer for the Debtors' assets (the "Assets").  The Bidding Procedures are designed to build on that marketing and sale process following entry of this Order.

B.    **Notice of the Motion**.  As reflected in the certificate of service filed on November [●], 2022 [Docket No. [●]] (the "Certificate of Service"), the Motion and the notice of the Hearing were served on the Court's electronic filing system and the Notice Parties.  The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of

the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

   **C.** **Sale Notice**. The *Notice of Sale Procedures, Auction and Sale Hearing*, substantially in the form attached hereto as **<u>Exhibit 2</u>**, (the "<u>Sale Notice</u>"), is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Assets subject to any Sale; (v) instructions for promptly obtaining a copy of the form APA; (vi) representations describing any Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, and no other or further notice of any Sale shall be required.

   **D.** **Assumption and Assignment Procedures**.  The Motion and the Cure Notice (as defined herein) are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of their executory contracts, any Cure Amounts (as defined herein), and the Assumption and Assignment Procedures (as defined herein) and are appropriate.

   **E.** **Stalking Horse Option**.  The Debtors' option to accept a Stalking Horse Bid and grant the Stalking Horse Bidder Bid Protections are reasonably calculated to enable the Debtor to maximize the value of its assets by permitting the Debtors to set the floor for bids and contributing to a robust auction process, for the benefit of the Debtors' estates, creditors, and other parties in interest.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein, and any objections, responses and reservations of rights to the Motion or to the relief requested therein that have not been withdrawn, waived, settled or resolved are hereby overruled in all respects on the merits with prejudice.

**II.      Important Dates and Deadlines**

2.      The following dates and deadlines regarding the Sale are hereby established, subject to the right of the Debtors to modify such dates in accordance with the Bidding Procedures and this Order:

| Event or Deadline | Date and Time |
|---|---|
| Deadline to Designate Stalking Horse Bidders (if any) | November 23, 2022 |
| Deadline to Object to Designation of any Stalking Horse Bidder or Grant of Bid Protections | Three (3) business days following service of the applicable Stalking Horse Notice |
| Initial Sale Objection Deadline | November 30, 2022 |
| Bid Deadline | December 5, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if applicable) | An Auction may be held on December 7, 2022, at 9:00 a.m. (prevailing Eastern Time) via live auction and/or remote video |
| Cure Objection Deadline | December 8, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Final Sale Objection Deadline | December 8, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | December 9, 2022, at __ [a./p.]m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Target Closing Date | December 12, 2022 |

3.      **Sale Hearing**.  The Sale Hearing will commence on **December 9, 2022, at [●].m., (ET)**, before the Honorable [●] of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., 6th Floor, Courtroom #2, Wilmington, Delaware 19801.  The Sale Hearing may

4

be adjourned by the Debtor without further notice other than by announcement in open Court, on the Court's calendar or in the applicable hearing agenda.  The Debtors shall present the results of the Auction (if any) or otherwise present any Successful Bidder(s) to the Court at the Sale Hearing.

4.      **Sale Objection Deadline**.  Objections, if any, to the sale of the Assets to a Successful Bidder (the "Initial Objections")—except objections solely related to the conduct of the Auction, the identity of the Successful Bidder, adequate assurance of future performance by the Successful Bidder, and any changes to the form purchase agreement (the "Residual Objections")—must be made by **November 30, 2022, at 4:00 p.m. (ET)** (the "Initial Sale Objection Deadline").  The Residual Objections must be made by **December 8, 2022, at 4:00 p.m. (ET)** (the "Final Sale Objection Deadline" and, together with the Initial Sale Objection Deadline, the "Sale Objection Deadlines").  In each case, all objections must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the applicable Sale Objection Deadline and served on the following parties (the "Notice Parties"): (a) proposed counsel to the Debtor DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn: R. Craig Martin, Esq. at craig.martin@us.dlapiper.com); (ii) 1251 Avenue of the Americas New York, New York 10020 (Attn: Rachel Ehrlich Albanese, Esq. at rachel.albanese@us.dlapiper.com); and (iii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (Attn: W. Benjamin Winger, Esq. at benjamin.winger@us.dlapiper.com); (b) counsel to any statutorily appointed committee; (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35,

Wilmington, Delaware 19801 (<u>Attn</u>: Timothy Fox, Esq. at Timothy.Fox@usdoj.gov), so as to be actually received by the Sale Objection Deadline.

5.      **Response Deadline**.  Responses, if any, to Initial Objections or Residual Objection must be filed at least 24 hours before the Sale Hearing; *provided that* such deadlines may be extended by agreement of the Debtor and the affected objecting party.  Any replies shall be filed only with the leave of the Court.

## III.    Bidding Procedures and Related Relief

6.      The Bidding Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved in their entirety.  The Debtors are authorized to solicit bids and conduct an Auction, if necessary, pursuant to the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.

7.      Each Bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures, and an Auction (if any) shall be transcribed or recorded.

8.      The Debtors are authorized to take all actions as are necessary or appropriate to implement the Bidding Procedures.  Other than as expressly set forth in this Order or the Bidding Procedures, the Debtor reserves its rights, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, to modify the Bidding Procedures, after consultation with the Consultation Parties, in any manner that they reasonably determine will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions in connection with a Transaction, including, without limitation: (a) extending the deadlines set forth in the Bidding Procedures; (b) adjourning the Auction,

including at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

9.      Other than any Bid Protections approved for a Stalking Horse Bidder in accordance with the procedures set forth in this Order, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting such a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

10.      Any Qualified Bidder that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

## IV.    Designation of Stalking Horse Bidders and Bid Protections

11.      Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, to select one or more bidders to act as the Stalking Horse Bidder and enter into agreement(s) (the "Stalking Horse Agreements") with such Stalking Horse Bidder(s) and are further authorized, but not directed, to offer the Bid Protections to such Stalking Horse Bidder(s) provided that the total Bid Protections offered to any Stalking Horse Bidder shall not exceed 3% of the cash purchase price contemplated by such Stalking Horse Agreement.

12.      No later than one (1) business day after selecting a Stalking Horse Bidder, the Debtors shall file with the Court and serve a notice (a "Stalking Horse Notice") on the Notice Parties (a) identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid

7

(including the purchase price and Assets subject to the Stalking Horse Bid), and the amount and form of any Bid Protections offered to the Stalking Horse Bidder, and (b) attaching a copy of the relevant Stalking Horse Agreement.

13.    Any objection to the designation of the Stalking Horse Bidder or to the Bid Protections set forth in the Stalking Horse Notice and Stalking Horse Agreement (a "Stalking Horse Objection") shall be filed no later than the date that is three (3) business days after the date of service of the applicable Stalking Horse Notice.  If a timely Stalking Horse Objection is filed, the proposed designation of the Stalking Horse Bidder and Bid Protections provided for under such Stalking Horse Agreement shall not be deemed approved unless approved by separate order of the Court.  Any hearing with respect to a Stalking Horse Objection may be heard on an emergency basis.  If no Stalking Horse Objection is timely served and filed with respect to a Stalking Horse Bid, the Bid Protections with respect to such Stalking Horse Bidder shall be deemed approved without further order of the Court upon the expiration of three (3) business days after service of the Stalking Horse Notice, and shall be due and payable in accordance with, and subject to the terms of, the applicable Stalking Horse Agreement.  Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order.

14.    If the Stalking Horse Agreement satisfies the condition that the Bid Protections, in total, do not exceed three percent (3%) of the cash purchase price and the Stalking Horse Bidder is not an insider (as defined in section 101(31) of the Bankruptcy Code)—the Debtors may submit an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse Agreement as a stalking horse without the need for further hearing. If a Stalking Horse Bidder and Stalking Horse Agreement are designated that do not satisfy each of the conditions in the prior sentence, the Court shall hold a hearing to consider approval of the

designation of the Stalking Horse Bidder and Stalking Horse Agreement as a stalking horse to be held on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. (prevailing Eastern Time) the day prior to such hearing.

**V.      Auction**

15.      The Debtors are authorized, subject to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary, in the discretion of the Debtors, to conduct and implement the Auction.

16.      Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to proposed counsel for the Debtor, via *e-mail*, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn:  R. Craig Martin, Esq. at craig.martin@us.dlapiper.com).  For the avoidance of doubt, only Qualified Bidders (including any Stalking Horse Bidder, which shall be deemed a Qualified Bidder at all times) will be entitled to make any Bids at the Auction.  For the avoidance of doubt, the Consultation Parties may attend the Auction without sending prior written notice of their intention to do so.

17.      The Debtor shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

18.      Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith bona fide offer, and (iii) it intends to consummate the proposed Sale if selected as the Successful Bidder.

19.    If the Auction is cancelled, then the Debtors shall file a notice with the Court of such election within one (1) business day of the determination of such election by the Debtors.

## VI.    Sale Hearing Notice

20.    The Sale Notice is hereby approved.  Within two (2) business days following the entry of this Order, or as soon as reasonably practicable thereafter (the "Service Date"), the Debtors will cause the Sale Notice to be served in accordance with the Local Rules on: (a) the Office of the United States Trustee; (b) the Securities & Exchange Commission; (c) the Internal Revenue Service; (d) the Delaware State Treasury; (e) the Delaware Secretary of State; (f) counsel to any statutorily appointed committee; (g) counsel to the Debtors' secured lenders; (h) the United States Attorney's Office for the District of Delaware; (i) any party known or reasonably believed to have asserted any lien, claim, or encumbrance or other interest in the Assets; (j) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Assets; (k) any parties that have requested notice in these Cases pursuant to Bankruptcy Rule 2002; (l) all taxing authorities; and (m) to the extent not covered by (a) through (l), all known creditors and parties in interest of the Debtors.  The Debtors shall also post the Sale Notice and the Order on the website of the Debtors' claims and noticing agent located at https://cases.stretto.com/fastradius.

21.    On the Service Date or as soon as practicable thereafter, the Debtors shall publish notice of the proposed Sale, substantially in the form of the Sale Notice (the "Publication Notice"), once in the national edition of *The Wall Street Journal*, *The New York Times*, *USA Today*, or another publication of similar circulation.  Publication of the Publication Notice shall be sufficient and proper notice of any Sale to any other interested parties whose identities are unknown to the Debtors.

## VII.    Assumption and Assignment Procedures

22.    The Assumption and Assignment Procedures set forth in the Motion regarding the assumption and assignment of executory contracts and/or unexpired leases proposed to be assumed by the Debtors and assigned to a Successful Bidder are approved.

a.    **Cure Notice**.  Within two (2) business days after entry of this Order, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice on certain non-Debtor contract counterparties (collectively, the "Contract Counterparties"), and post the Cure Notice to the restructuring website (_____).  The Debtors may provide supplemental Cure Notices if they discover Contracts inadvertently omitted from the initial Cure Notice or such notice erroneously reports the Cure Amount.    Contract Counterparties shall have at least fourteen (14) days from the service date of such supplemental Cure Notice to file and serve an objection in the manner described herein.

b.    **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparty that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information: (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale (each, an "Assigned Contract" and, collectively, the "Assigned Contracts"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Amount"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

c.    **Cure Objections**.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to **December 8, 2022, at 4:00 p.m. (prevailing Eastern time)** (the "Cure Objection Deadline"); *provided* that the Debtors may extend the Cure Objection Deadline by filing a notice of such modification on the Court's docket.  A properly filed Cure Objection shall be heard at the Sale Hearing or such later date as may be agreed upon by the parties or fixed by the Court.

11

d.   **Dispute Resolution**.   Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Successful Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such contract should be excluded and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such Contract.  Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "Cure Dispute"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited into a segregated account held by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution thereof.

e.   **No Cure Objections**.  If there are no Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection in a manner that is consistent with the requirements set forth herein, (i) the Cure Costs, if any, set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

23.   Any objection to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract must be filed with the Court no later than the Sale Hearing.

24.   Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the APA with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

25.     The Cure Notice, substantially the form attached hereto as **<u>Exhibit 3</u>**, is hereby approved.

**VIII.   Other Related Relief**

26.     The requirements set forth in Local Bankruptcy Rule 6004-1 are satisfied by the contents of the Motion.

27.     Notwithstanding Bankruptcy Rule 6004(h) or 6006(d), this Order shall be effective and enforceable immediately upon its entry.

28.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

30.     The Debtors are authorized and empowered to take all actions they deem necessary to implement the relief granted in this Order in accordance with the Motion and to implement the Bidding Procedures.

31.     This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order.

**<u>Exhibit 1</u>**
**(Bidding Procedures)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Fast Radius, Inc., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-11051 (___)<br><br>(Joint Administration Requested) |

## BIDDING PROCEDURES

On November [7], 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

On November [•], 2022, the Bankruptcy Court entered an order [D.I. [•]] (the "Order") approving these bidding procedures (the "Bidding Procedures"). The Bidding Procedures set forth the process by which the Debtors, in consultation with the Consultation Parties (as defined and set forth below), will solicit and evaluate higher or otherwise better Bids for the acquisition of the Debtors' business and/or Assets.

The Debtors are offering investors and/or purchasers the opportunity to acquire some or all of the Assets. On the Petition Date, the Debtors' proposed investment bank, Lincoln Partners Advisors LLC ("Lincoln"), commenced the distribution of teaser and other promotional materials to potentially interested parties advising them of the opportunity to acquire the Assets pursuant to a chapter 11 plan, section 363 transaction, or otherwise (a "Sale"). The Debtors' representatives, including Lincoln, and their transaction committee, shall oversee the Sale process.

To the extent that these Bidding Procedures require the Debtors to consult with the Consultation Parties (as defined below) in connection with making a determination or taking any action, or in connection with any other matter related to these Bidding Procedures or at the Auction (as defined below), if any, the Debtors shall use commercially reasonable efforts to do so in a timely manner prior to making such determination or taking any such action; *provided*, however, that during any period in which a Consultation Party has submitted a Qualified Bid and has become a Qualified Bidder, such Consultation Party shall no longer be considered a Consultation Party under these Bidding Procedures.

---

[1]　　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Fast Radius, Inc. (2788), Fast Radius Operations, Inc. (5398) and Fast Radius PTE. LTD (9511). The corporate headquarters and the mailing address for the Debtors is 113 N. May Street, Chicago, Illinois 60607.

> **Copies of the Order or other documents related thereto are available upon request to Stretto or visiting the Debtors' restructuring website at https://cases.stretto.com/fastradius.**
>
> **The applicable Debtor representatives and their contact information are set forth below.**
>
> **Proposed Investment Banker to the Debtors – Lincoln**
> Brendan Murphy (BMurphy@lincolninternational.com)
> Juan Ospina (JOspina@lincolninternational.com)
>
> **Proposed Counsel to the Debtors - DLA Piper LLP (US) ("DLA")**
> R. Craig Martin (craig.martin@us.dlapiper.com)
> Rachel Ehrlich Albanese (rachel.albanese@us.dlapiper.com)
> W. Benjamin Winger (benjamin.winger@us.dlapiper.com)

## KEY DATES & DEADLINES

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which, in the aggregate, will make the highest or otherwise best offer to acquire some or all of the Debtors' business and/or Assets. The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Debtors' business and/or Assets. The Debtors may select multiple bids for any non-overlapping Assets.

Subject to the Debtors' rights set forth herein, the following table sets forth key dates and deadlines with respect to the Sale process.

| Event or Deadline | Date and Time |
|---|---|
| Deadline to Designate Stalking Horse Bidders (if any) | November 23, 2022 |
| Deadline to Object to Designation of any Stalking Horse Bidder or Grant of Bid Protections | Three (3) business days following service of the applicable Stalking Horse Notice |
| Initial Sale Objection Deadline | November 30, 2022 |
| Bid Deadline | December 5, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if applicable) | An Auction may be held on December 7, 2022, at 9:00 a.m. (prevailing Eastern Time) via live auction and/or remote video |

| Cure Objection Deadline | December 8, 2022, at 4:00 p.m. (prevailing Eastern Time) |
|---|---|
| Final Sale Objection Deadline | December 8, 2022, at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing[2] | December 9, 2022, at __ [a./p.]m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Target Closing Date | December 12, 2022 |

**MARKETING PROCESS**

## I.    Contact Parties

The Debtors, in consultation with Lincoln, developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a transaction through a section 363 sale process, chapter 11 plan, or otherwise (any such alternative, a "Transaction").[3]  The list of parties includes both strategic investors and financial investors (collectively, the "Contact Parties").  The Contact Parties include parties whom the Debtors or their advisors previously contacted regarding a Transaction, regardless of whether such parties expressed any interest at such time in pursuing a Transaction.  The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder (each, a "Potential Bidder") an "Information Package" consisting of: (i) a copy of the Bidding Procedures, the Order, and the Motion; (ii) a form confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors; and (iii) such other materials as may be appropriate under the circumstances.

## II.    Participation Requirements and Initial Diligence

To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a Potential Bidder must deliver the following documents (collectively, the "Preliminary Bid Documents") by email to each of: (i) DLA; and (ii) Lincoln (collectively, the "Bid Recipients"):

a.    an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed;

---

[2]    For the avoidance of doubt, the Sale Hearing may be a hearing pursuant to which the Court considers confirmation of a chapter 11 plan.

[3]    For example, a Transaction could be structured as an asset sale, equity sale, plan of reorganization, or otherwise, as determined by the Debtors in consultation with the Potential Bidder.

b.      the identity of the Potential Bidder and a list of contacts for the Potential Bidder;

c.      a description of the diligence the Potential Bidder seeks to conduct; and

d.      evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach).

Promptly after a Potential Bidder delivers Preliminary Bid Documents to the Bid Recipients, the Debtors, in consultation with the Consultation Parties, will assess the adequacy of the evidence of its financial capacity and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid and participate in the Auction, as applicable.  Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, a "Bidder") may submit Bids; *provided*, *however*, that the Debtors, in their reasonable discretion, may agree to waive some or all of the Potential Bidder requirements set forth herein.  The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

As soon as reasonably practicable after the Debtors, in consultation with the Consultation Parties, determine that a Potential Bidder is a Bidder, the Debtors will provide such Bidder with access to an electronic data room and reasonable due diligence information as reasonably requested by such Bidder (to the extent such Bidder has not already been provided such access and information).  All substantive direct communications, including any due diligence requests, with Potential Bidders and Qualified Bidders shall be through and directed to Lincoln (via email is sufficient).  Lincoln will work to facilitate meetings between any interested Bidder and the Debtors' management team.  For all Potential Bidders, the due diligence period will end on the Bid Deadline, and after the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

The Debtors and their advisors will coordinate all reasonable requests from Bidders for additional information and due diligence access. The Debtors, in consultation with the Consultation Parties, may decline to provide such information to Bidders who, in the Debtors' business judgment and in consultation with the Consultation Parties, have not established, or who have raised doubt, that such Bidder intends in good faith or has the capacity to consummate a Transaction.

For any Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, in consultation with the Consultation Parties, any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Transaction.

**STALKING HORSE BIDDERS AND BID PROTECTIONS**

Subject to the procedures set forth in the Order, the Debtors are authorized, but not obligated, in an exercise of their business judgment to: (a) select one or more Qualified Bidders to act as stalking horse bidders in connection with the Sale (each, a "Stalking Horse Bidder"), and enter into a purchase agreement with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder provide a breakup fee, and/or expense reimbursement, of up to three percent (3%) of the proposed cash Purchase Price (as defined herein) in the aggregate (the "Bid Protections"). No later than one business day after the selection of a Stalking Horse Bidder, the Debtors shall file a notice with the Court of such selection that includes a copy of an executed and binding Stalking Horse Agreement pursuant to the Order.

**AUCTION PROCESS**

I.    **Bid Deadline**

A Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email to each of the Bid Recipients so as to be **actually received** by them on or before **December 5, 2022 at 4:00 p.m.** (ET) (the "Bid Deadline").

II.    **Bid Requirements**

Each Bid by a Bidder must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements"):

a.    Identity of Assets: Each Bid must state which of the Assets the Potential Bidder seeks to acquire and which liabilities of the applicable Debtor the Potential Bidder agrees to assume.

b.    Purchase Price: Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the Transaction, for example (the "Purchase Price"). The Purchase Price should be a single point value in U.S. dollars for the total enterprise value of the Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis.

c.    Good Faith Deposit: Each Bid must be accompanied by a cash deposit in an amount equal to 10% of the aggregate value of the cash and non-cash consideration of the Bid to be held in an escrow account to be identified and established by the Debtors (the "Deposit"). To the extent a Bid is modified before, during, or after the Auction in any manner that increases the purchase price contemplated by such Bid, the Debtors reserve the right to require that such Bidder increase its Deposit so that it

equals 10% of the increased value of the aggregate value of the cash and non-cash components of the proposed Transaction.

d.  <u>Marked Agreement</u>: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement (the "<u>APA</u>"), the form of which will be provided to any Potential Bidder prior to the Bid Deadline and in the case of an Auction with a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Bidder proposes to effectuate the Transaction (collectively, the "<u>Transaction Documents</u>").    Each Bidder's APA must provide (i) a commitment to close within [two] business days after all closing conditions are met, and (ii) a representation that the Bidder will use its reasonable best efforts to satisfy all applicable regulatory conditions.

e.  <u>Committed Financing</u>: To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include evidence of committed financing (debt or equity funding, as applicable), including the identity and contact information of the specific person(s) or entity(s) responsible for such committed funding whom Lincoln or DLA should contact regarding such funding, that demonstrates that the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be acceptable to the Debtors (in consultation with the Consultation Parties) and must be unconditional and not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

f.  <u>Contingencies; No Financing or Diligence Outs</u>: A Bid shall not be conditioned on a Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, than those contemplated by the Stalking Horse Bid, if any, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid.

g.  <u>Identity</u>: Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall

any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.

h.      <u>Authorization</u>: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

i.      <u>Compliance with the Bankruptcy Code and Non-Bankruptcy Law; Acknowledgement</u>.  Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law.  Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures.

j.      <u>As-Is, Where-Is</u>: Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

k.      <u>Expenses; Disclaimer of Fees</u>:  Each Bid (other than a Stalking Horse Bid) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Potential Bidder (other than a Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

l.      <u>Adequate Assurance of Future Performance</u>: Each Bid (other than a Stalking Horse Bid) must (1) identify the Contracts to be assumed and assigned in connection with the proposed acquisition, (2) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder, and (3) demonstrate, in the Debtors' reasonable business judgment, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts.

m.      <u>Joint Bids</u>:  The Debtors are authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

n.    <u>Backup Bid</u>:  Each Bid shall provide that the Potential Bidder will serve as a Backup Bidder if the Potential Bidder's Bid is the next highest or otherwise best Bid.

o.    <u>Expected Closing Date</u>:  Each Bid shall state the Potential Bidder's expected date of closing of the Sale, which shall be no later than December 12, 2022; *provided*, that such closing date may be extended pursuant to the terms of an asset purchase agreement.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction.  **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid.**

## III.    Designation of Qualified Bidders

A Bid will be considered a "<u>Qualified Bid</u>," and each Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>," if the Debtors, in consultation with the Consultation Parties, determine that such Bid:

a.    satisfies the Bid Requirements;

b.    is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a timeframe acceptable to the Debtors (in consultation with the Consultation Parties); and

c.    within 24 hours after the Bid Deadline, the Debtors (after consulting with the Consultation Parties) will notify each Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties (as defined below) with a copy of each Qualified Bid.

If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction date, the Debtors may (in consultation with the Consultation Parties) discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

**IV.    The Auction**

If necessary, the Auction shall take place on December 7, 2022 at 9:00 a.m. (ET), via live auction and/or remote video; or such other place and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids.

No later than December 5, 2022, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid (the "Baseline Bid") and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders.  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the Consultation Parties) deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof including any terms or consideration of such Qualified Bid; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; (e) the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed; (f) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities; (g) the likelihood of a Qualified Bid leading to a confirmed chapter 11 plan; (h) the transaction structure and execution risk, including conditions to, timing of, and certainty of closing, availability of financing and financial wherewithal to meet all commitments, and any required governmental or other approvals; (i) the tax consequences of such Qualified Bid; and (j) any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted according to the following procedures:

a.    The Debtors Shall Preside over the Auction; Participation and Attendance at the Auction

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid.  All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid.

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to the terms of these Bidding Procedures and other limitations as may reasonably be imposed by the Debtors.  Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.

Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to proposed counsel for the Debtors via electronic mail, to R. Craig Martin, Esq. at craig.martin@us.dlapiper.com.  For the avoidance of

doubt, only Qualified Bidders will be entitled to make any Bids at the Auction. The Consultation Parties may attend the Auction without sending prior written notice of their intention to do so.

b.    Terms of Overbids

"Overbid" means any bid made at the Auction by a Qualified Bidder after the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(i)    Minimum Overbid. Any Overbid, including any Bids by a Stalking Horse Bidder must be made in minimum increments of $[250,000] (or such other amount as the Debtors may determine after consultation with the Consultation Parties) of additional value (including after payment of the Bid Protections to any Stalking Horse Bidders, if applicable).

(ii)    Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (the "Overbid Round Deadline"), subject to extension by the Debtors, by which time any Overbids must be submitted to the Debtors.

(iii)    Overbid Alterations. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid and shall otherwise comply with the terms of these Bidding Procedures.

(iv)    Announcing Highest Bid. After each Overbid Round Deadline, the Debtors shall determine, in consultation with the Consultation Parties and taking into account the Bid Assessment Criteria, whether an Overbid is higher or otherwise better than the Baseline Bid in the initial Overbid round or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall announce and describe to all Qualified Bidders present at the Auction the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, the identity of the bidder with the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

c.    Consideration of Overbids

The Debtors, in consultation with the Consultation Parties, reserve the right to adjourn the Auction as necessary to (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) provide Qualified Bidders with additional time to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to offer such additional evidence as the Debtors may require, such as with respect to financial capacity or sufficient funding or financing, in order to consummate the proposed Transaction at the prevailing Overbid amount.

    d.    <u>Closing the Auction</u>

The Auction shall continue until there is only one Qualified Bid—for each set or group of Assets, where divided—that the Debtors determine, after consultation with the Consultation Parties, and taking into account the Bid Assessment Criteria, to be the highest or otherwise best Qualified Bid for the Assets. Such Qualified Bid shall be declared the "<u>Successful Bid</u>," and such Qualified Bidder, the "<u>Successful Bidder</u>," and the Auction will be closed. Such acceptance by the Debtors of the Successful Bid (to be made in accordance with the terms of this section IV(d) of the Bidding Procedures) is conditioned upon approval by the Court of the Successful Bid. Following the closing of the Auction, the Debtors shall not initiate contact with, solicit, or encourage proposals from any person or entity with respect to the Assets.

    e.    <u>No Collusion; Good-Faith *Bona Fide* Offer</u>

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith *bona fide* offer, and (iii) it intends to consummate the proposed Transaction if selected as the Successful Bidder.

## V.    Backup Bidder

    a.    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>") until such time that the Sale to the Successful Bidder is consummated, but no later than thirty (30) days past the Sale Hearing, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

    b.    The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors, after consultation with the Consultation Parties, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated. The Backup Bidder's Deposit shall be held in escrow pending consummation of the Sale to the Successful Bidder.

    c.    If a Successful Bidder fails to consummate the approved Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## VI.    Notice and Consultation Parties

Information that must be provided to the "Notice Parties" under these Bidding Procedures.

The term "Consultation Parties" shall mean: (i) Silicon Valley Bank (Attn: Alex Rheaume, Esq. at arheaume@mofo.com), (ii) SVB Innovation Credit Fund VIII, L.P. (Attn: David Audley, Esq. at audley@chapman.com), and (iii) any statutorily appointed committee in these chapter 11 cases.

## VII.    Reservation of Rights & Fiduciary Out

The Debtors reserve their rights to modify these Bidding Procedures, after consultation with the Consultation Parties, in any manner that they reasonably determine will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions in connection with a Sale, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

For the avoidance of doubt and notwithstanding anything to the contrary herein, nothing in these Bidding Procedures or the Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under the applicable law.  Further, nothing in these Bidding Procedures or the Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to:  (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Assets (each, an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases or any other entity regarding Alternate Proposals.

## VIII.    Consent to Jurisdiction

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

## IX.    Sale Hearing / Confirmation Hearing

A hearing to consider approval of the Successful Bid (or to approve the Stalking Horse APA, as applicable, if no Auction is held) (the "Sale Hearing") is proposed to take place on

**December 9, 2022**, at the Court.  At the Sale Hearing, the Debtors will present such Successful Bid to the Court for approval.  For the avoidance of doubt, the Sale Hearing may be a confirmation hearing if the Debtors and the Successful Bidder elect to implement a Transaction pursuant to a chapter 11 plan.

## X.        Return of Deposit

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) promptly after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## XI.       No Modification of Bidding Procedures

These Bidding Procedures may not be modified except with the express prior written consent of the Debtors.

#       #       #       #

**Exhibit 2**
**(Sale Notice)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Fast Radius, Inc., *et al.*,[1] | Case No. 22-11051 (___) |
| Debtors. | (Joint Administration Requested) |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE REGARDING THE FOLLOWING:**

1.      On [ __ ], the above-captioned debtors and debtors in possession (collectively, the "Debtors"), each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      The Debtors are soliciting offers for the purchase of certain of the Debtors' assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the Court (the "Court") by entry of an order on [●], 2022 [Docket No. [●]] (the "Bidding Procedures Order").  **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**.  To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

3.      The Bid Deadline is **December 5, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures. Only Qualified Bidders that have submitted Qualified Bids by the **December 5, 2022, at 4:00 p.m. (ET)** Bid Deadline are eligible to participate in the Auction, subject to the terms of the Bidding Procedures and other limitations as may reasonably be imposed by the Debtors. Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.

4.      Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to proposed counsel for the Debtors via electronic mail, to R. Craig Martin, Esq. at craig.martin@us.dlapiper.com.

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Fast Radius, Inc. (2788), Fast Radius Operations, Inc. (5398) and Fast Radius PTE. LTD (9511).  The corporate headquarters and the mailing address for the Debtors is 113 N. May Street, Chicago, Illinois 60607.

5.     The Debtors may conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 7, 2022 at 9:00 a.m. (ET)**, via live auction and/or remote video.

6.     Except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **December 8, 2022 at 4:00 p.m. (ET).**

7.     A hearing to consider approval of the Successful Bid (or to approve the Stalking Horse APA, as applicable, if no Auction is held) (the "Sale Hearing") shall take place on **December 9, 2022,** at such time to be set by the Court, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801.  At the Sale Hearing, the Debtors will present such Successful Bid to the Court for approval.

8.     Objections, if any, to the Motion and the sale of the Assets to a Successful Bidder, must be filed with the Court and served upon counsel to the Debtors so as to be actually received by **December 8, 2022 at 4:00 p.m. (ET)**.  In each case, all objections must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the applicable objection deadline and served on proposed counsel to the Debtors.  ***Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by any Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363(f)(2) of the Bankruptcy Code.***

9.     This notice is subject to the fuller terms and conditions of the Motion, the Bidding Procedures, and the Bidding Procedures Order.  In the event of any conflict, the Bidding Procedures Order shall control, and the Debtors encourage parties in interest to review such documents in their entirety.  Parties interested in receiving more information regarding the Sale and/or copies of any related document, including the Motion, or the Bidding Procedures Order, may make a written request to counsel for the proposed counsel for the Debtors.

*[Remainder of page intentionally left blank]*

Dated:  November ___, 2022
             Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 _/s/  Draft_

R. Craig Martin (DE 5032)
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email:  craig.martin@us.dlapiper.com

-and-

Rachel Ehrlich Albanese (*pro hac vice* pending)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com

-and-

W. Benjamin Winger (*pro hac vice* pending)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: benjamin.winger@us.dlapiper.com

*Proposed Counsel for the Debtors*

**<u>Exhibit 3</u>**
**(Cure Notice)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Fast Radius, Inc., *et al*.,[1] | Case No. 22-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on November [●], 2022, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered the *Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, and (V) Granting Related Relief* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"),[2] authorizing the Debtors to solicit offers for the purchase of certain of the Debtors' assets and, if necessary, to conduct an auction (the "<u>Auction</u>") to select the party to purchase such assets. The Auction (if any) will be governed by the bidding procedures (attached to the Bidding Procedures Order as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **<u>Exhibit A</u>**, to which you are a counterparty, upon approval of the Sale. The Assigned Contracts Schedule can also be viewed on the Debtors' case website (https://cases.stretto.com/fastradius). The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **<u>Exhibit A</u>** attached hereto (the "<u>Cure Costs</u>").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Fast Radius, Inc. (2788), Fast Radius Operations, Inc. (5398) and Fast Radius PTE. LTD (9511).  The corporate headquarters and the mailing address for the Debtors is 113 N. May Street, Chicago, Illinois 60607.

provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assigned Contract, be filed with the Court **no later than December 8, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") and if you object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, be filed with the Court **no later than the earlier of (a) the Cure Objection Deadline or Supplemental Assigned Contract Hearing, as applicable**, **and (b) 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable**, in each case, by the following parties: a) counsel to the Debtor DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn: R. Craig Martin, Esq. at craig.martin@us.dlapiper.com); (ii) 1251 Avenue of the Americas New York, New York 10020 (Attn: Rachel Ehrlich Albanese, Esq. at rachel.albanese@us.dlapiper.com); and (iii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (Attn: W. Benjamin Winger, Esq. at benjamin.winger@us.dlapiper.com); and (b) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Timothy Fox, Esq. at Timothy.Fox@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on any grounds, including that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assigned Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims

of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

Dated:   November__, 2022
        Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 */s/  Draft*_____
R. Craig Martin (DE 5032)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5655
Facsimile: (302) 778-7834
Email:  craig.martin@us.dlapiper.com

– and –

Rachel Ehrlich Albanese (*pro hac vice* pending)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email:  rachel.albanese@us.dlapiper.com

-and-

W. Benjamin Winger (*pro hac vice* pending)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email:  benjamin.winger@us.dlapiper.com

*Proposed Counsel for the Debtors*