**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Legacy FSRD, Inc. (f/k/a Fast Radius, Inc., *et. al*),[1] | Case No. 22-11051 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 16, 61 & 281** |

**FINAL ORDER (I) AUTHORIZING
THE USE OF CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] filed by the above-captioned debtors (the "Debtors") in these chapter 11 cases, pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 2015, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of a final order (this "Final Order"):

(i) Authorizing the Debtors' use of all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the Prepetition Lenders (as defined herein), effective as of the Petition Date (as defined herein), subject to the terms set forth herein;

(ii) Granting adequate protection to each of the Prepetition Lenders;

(iii) Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

(iv) Waiving, to the extent applicable, any stay of the immediate effectiveness of this Final Order imposed by the Bankruptcy Code, the Bankruptcy Rules, or the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Legacy FSRD, Inc. (2788), Legacy FSRD Operations, Inc. (5398), and Legacy FSRD PTE LTD (9511). The location of the Debtors' service address in these chapter 11 cases is 251 Little Falls Drive, Wilmington, Delaware 19808.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

Local Rules, such that this Final Order shall be immediately effective upon its entry on the docket of the United States Bankruptcy Court for the District of Delaware (the "Court");

(v)    Authorizing the Debtors to continue to use their existing credit cards (the "Credit Cards") issued by Silicon Valley Bank ("SVB") on a cash secured basis; and

(vi)    Granting related relief.

The Court having considered the Motion, the *Declaration of Louis Rassey in Support of Chapter 11 Petitions and First Day Pleadings* and the *Declaration of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings* (together, the "First Day Declarations"), the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on November 9, 2022 (the "Interim Hearing") on the *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 61] (the "Interim Order") and the final hearing on this Final Order, if necessary (the "Final Hearing," and together with the Interim Hearing, the "Hearings"); and the Court having entered the Interim Order; and notice of the Motion and the Hearings having been appropriate; and the Hearings having been held and concluded; and it appearing that granting the relief requested in the Motion on a final basis is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, and is essential for the preservation of the value of the Debtors' assets; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

EAST\198443728.9
10336766.v4

**IT IS FOUND AND DETERMINED THAT:**[3]

A.  **<u>Commencement of Chapter 11 Cases</u>**.  On November 7, 2022 (the "<u>Petition Date</u>"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing these chapter 11 cases.  The Debtors continue to operate their business and manage their property as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been appointed in these chapter 11 cases.  A meeting of creditors under section 341 of the Bankruptcy Code was held on December 7, 2022 [Docket No. 70].  On November 19, 2022, the United States Trustee for Region 3 (the "<u>U.S. Trustee</u>") appointed the Official Committee of Unsecured Creditors (the "<u>Committee</u>") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 83].  On November 21 and December 2, 2022, the U.S. Trustee amended its appointment of the Committee [Docket Nos. 90 and 116].

B.  **<u>Jurisdiction and Venue</u>**.  This Court has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.  Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      **Notice**.  Notice of the Hearings and the Motion has been provided by the Debtors to (i) the Office of the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) (a) each of the parties included on the Debtors' consolidated list of twenty largest unsecured creditors or (b) counsel to the Committee, as applicable; (iv) the Internal Revenue Service; (v) the Securities Exchange Commission; (vi) the Prepetition Lenders; (vii) the states attorneys general for each state in which the Debtors operate; (viii) the Banks; (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (x) all other parties that are entitled to notice under Local Rule 9013-1.  Such notice of the Hearings and the Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), (c), and (d), and the Local Rules.

D.      **Debtors' Stipulations**.  After consultation with their attorneys and professional advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 17 herein, the Debtors admit, stipulate, acknowledge, and agree as follows:

(i)      **SVB Secured Loan**.  As of the Petition Date, pursuant to that certain Loan and Security Agreement dated as of December 29, 2020 between Debtor Fast Radius Operations, Inc. (*f/k/a* Fast Radius, Inc.) (the "Borrower") and SVB (as amended, supplemented, or otherwise modified, the "SVB Loan Agreement" and, together with all other agreements, documents, and instruments executed and/or delivered in connection therewith, as all of the same have been amended, supplemented, or otherwise modified at any time prior to the Petition Date, the "SVB Loan Documents"), the Borrower was indebted and liable, without defense, counterclaim, or offset of any kind, to SVB in the aggregate principal amount of not less than $7,372,000 plus accrued and unpaid interest, fees, costs, and other reimbursable expenses to the extent permissible under the SVB Loan Documents.  All obligations of the Borrower arising under the SVB Loan

4

Agreement or any other SVB Loan Documents or the Credit Cards shall hereinafter be referred to collectively as the "SVB Loan Obligations."

(ii)    **SVB Liens**.  As set forth more fully in the SVB Loan Agreement and the Motion, prior to the Petition Date, to secure the SVB Loan Obligations, the Borrower granted to SVB first-priority liens (the "SVB Liens") in all Collateral (as defined in the SVB Loan Agreement, the "SVB Collateral").

(iii)    **SVB Additional Stipulations**.  As of the Petition Date, (a) the SVB Liens on the SVB Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, SVB for fair consideration and reasonably equivalent value; (b) the SVB Liens were senior in priority over any and all other liens on the SVB Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the SVB Loan Agreement (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the SVB Liens as of the Petition Date); (c) the SVB Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Borrower enforceable in accordance with the terms of the SVB Loan Agreement and the SVB Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the SVB Liens or SVB Loan Obligations exist, and no portion of the SVB Liens or SVB Loan Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against SVB or any of its affiliates, agents, attorneys, advisors,

5

professionals, officers, directors, and employees arising out of, based upon, or related to the SVB Loan Documents; (f) the Debtors have waived, discharged, and released any right to challenge any of the SVB Loan Obligations, the priority of the Borrower's obligations thereunder, and the validity, extent, and priority of the liens securing the SVB Loan Obligations; and (g) the SVB Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(iv)    **SVB Capital Secured Loan.**    As of the Petition Date, pursuant to that certain Loan and Security Agreement dated as of September 10, 2021 between the Borrower and SVB Innovation Credit Fund VIII, L.P. ("<u>SVB Capital</u>" and together with SVB, the "<u>Prepetition Lenders</u>") (as amended, supplemented, or otherwise modified, the "<u>SVB Capital Loan Agreement</u>" and, together with all other agreements, documents, and instruments executed and/or delivered in connection therewith, as all of the same have been amended, supplemented, or otherwise modified at any time prior to the Petition Date, the "<u>SVB Capital Loan Documents</u>"), the Borrower was indebted and liable, without defense, counterclaim, or offset of any kind, to SVB Capital in the aggregate principal amount of not less than $16,468,000 plus accrued and unpaid interest, fees, costs, and other reimbursable expenses to the extent permissible under the SVB Capital Loan Documents.  All obligations of the Borrower arising under the SVB Capital Loan Agreement or any other SVB Capital Loan Documents shall hereinafter be referred to collectively as the "<u>SVB Capital Loan Obligations,</u>" and together with the SVB Loan Obligations, the "<u>Prepetition Loan Obligations</u>").

(v)    **SVB Capital Liens**. As set forth more fully in the SVB Capital Loan Agreement and the Motion, prior to the Petition Date, to secure the SVB Capital Loan Obligations, the Borrower granted to SVB Capital those certain liens (the "<u>SVB Capital Liens</u>" and together

6

with the SVB Liens, the "<u>Prepetition Liens</u>") in all Collateral (as defined in the SVB Capital Loan Agreement, the "<u>SVB Capital Collateral</u>" and, together with the SVB Collateral, the "<u>Prepetition Collateral</u>").

      (vi)     **SVB Capital Additional Stipulations**.  As of the Petition Date, (a) the SVB Capital Liens on the SVB Capital Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, SVB Capital for fair consideration and reasonably equivalent value; (b) the SVB Capital Liens were senior in priority over any and all other liens on the SVB Capital Collateral, subject only to the SVB Liens (as and to the extent set forth in the Subordination Agreement (as defined below)) and certain liens senior by operation of law or otherwise permitted by the SVB Capital Loan Agreement (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the SVB Capital Liens as of the Petition Date); (c) the SVB Capital Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Borrower enforceable in accordance with the terms of the SVB Capital Loan Agreement and the SVB Capital Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the SVB Capital Liens or SVB Capital Loan Obligations exist, and no portion of the SVB Liens or SVB Loan Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against SVB Capital or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the SVB

Capital Loan Documents; (f) the Debtors have waived, discharged, and released any right to challenge any of the SVB Capital Loan Obligations, the priority of the Borrower's obligations thereunder, and the validity, extent, and priority of the liens securing the SVB Capital Loan Obligations; and (g) the SVB Capital Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(vii)        **[Reserved.]**

(viii)       **No Claims**.  The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Lenders with respect to the SVB Loan Documents, the SVB Loan Obligations, the SVB Liens, the SVB Capital Loan Documents, the SVB Capital Loan Obligations, the SVB Capital Liens, any prior financing transactions, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, 541, or 542 through 553, inclusive, of the Bankruptcy Code.

(ix)        **Release**.  The Debtors hereby stipulate and agree that they forever, unconditionally, and irrevocably release, discharge, and acquit the Prepetition Lenders and their successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every kind whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the SVB Loan Documents, the SVB Loan Obligations, the SVB Capital Loan Documents, the SVB Capital Loan Obligations, and/or the transactions contemplated hereunder or

8

thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition Lenders; *provided*, that the forgoing shall not release any claims against a Releasee that a court of competent jurisdiction determines results primarily from the bad faith, gross negligence, or willful misconduct of such Releasee. The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the SVB Loan Obligations and the SVB Capital Loan Obligations which the Debtors now have or may claim to have, directly or indirectly against the Releasees, arising out of, connected with or relating to any and all acts, omissions, or events occurring prior to the Court entering this Final Order.

(x)        **No Control**. The Prepetition Lenders do not control the Debtors or their properties or operations, do not have authority to determine the manner in which any of the Debtors' operations are conducted, and are not control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Order, this Final Order, the SVB Loan Documents, and/or the SVB Capital Loan Documents.

(xi)        **Cash Collateral**. Except for cash held in the Debtors' Bank of America checking account, with the last four digits of the account number being 2747 (the "BOA Account"), all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, whether subject to control agreements or otherwise, and any amount generated by the collection of accounts receivable or other disposition of the

9

Prepetition Collateral, and the proceeds of any of the foregoing, whether existing on the Petition Date or thereafter, constitute the Cash Collateral of the Prepetition Lenders.

E.        **Need for Use of Cash Collateral**.  An immediate need exists for the Debtors to obtain access to the Cash Collateral in order to administer and preserve the value of their estates.

F.        **Good Cause for Immediate Entry**.  Good cause has been shown for immediate entry of this Final Order.  Entry of this Final Order is in the best interest of the Debtors, their estates, and their creditors.  The terms of the Debtors' use of Cash Collateral as set forth in this Final Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

G.        **Arm's-Length Negotiation; Good Faith**.  The Debtors and the Prepetition Lenders have negotiated the terms and conditions of this Final Order in good faith and at arm's length.  The terms of the use of the Cash Collateral pursuant to this Final Order shall be, and hereby are, deemed to have been extended and made, as the case may be, in "good faith" and at arm's-length among the Debtors and the Prepetition Lenders, and, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Prepetition Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and are entitled to the fullest protection available under Bankruptcy Code section 363(m).

H.        **Good Cause**.  The ability of the Debtors to continue to use Cash Collateral is vital to the Debtors, their estates, their creditors, and other parties in interest.  The liquidity to be provided through the use of the Cash Collateral will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of their businesses.  The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors as its

10

implementation will, among other things, allow for the operation of the Debtors' existing business and further enhance the Debtors' prospects for a successful outcome in these chapter 11 cases.

I.      **Adequate Protection**.  The Prepetition Lenders are entitled to adequate protection provided in the Interim Order and this Final Order as and to the extent set forth herein pursuant to Bankruptcy Code sections 361 and 363 for any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, for any reason provided for under the Bankruptcy Code, including the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in the Prepetition Collateral by the Carve Out ("Diminution in Value").  Based on the Motion, the First Day Declarations, and the record presented to the Court at the Hearings, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided*, that nothing in the Interim Order or this Final Order shall prejudice, limit, or otherwise impair the rights of the Prepetition Lenders to seek new, different, or additional adequate protection.

J.      **Payment in Full of the SVB Loan Obligations**.  Pursuant to paragraph 34 of the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Approving the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 204] (the "Sale Order"), the SVB Loan Obligations were paid in full on December 16, 2022 (the "SVB Final Payment"); *provided that* (i) any amounts paid for the SVB Final Payment are subject to disgorgement to the extent that there is a successful Challenge (as defined below) that impacts SVB's collateral position; (ii) there are contingent,

11

unliquidated indemnification SVB Loan Obligations; and (iii) a cash collateralized letter of credit issued by SVB in favor of the Goose Island Landlord remains outstanding (the "<u>SVB Contingent Claims</u>").

K.      **Revised Plan**.   The Debtors, SVB Capital, and the Committee have negotiated terms of a proposed global settlement that are to be incorporated into a revised version of the *Combined Disclosure Statement and Joint Chapter 11 Plan* [D.I. 219] (as will be modified in accordance with the global settlement, the "<u>Revised Plan</u>").

**NOW, THEREFORE**, based upon the foregoing findings, and upon consideration of the Motion and the record made before this Court with respect to the Motion, including the First Day Declarations and the record created during the Hearings, and with the consent of the Debtors and the Prepetition Lenders to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND DECREED:**

1.      **<u>Motion Granted</u>**.   The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived, or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.      **<u>Authorization to Use Cash Collateral</u>**.   Subject to the terms of this Final Order, the Debtors are hereby authorized to continue to use Cash Collateral.  Any dispute in connection with the use of Cash Collateral shall be heard by the Court.  Upon the delivery of a Remedies Notice (as defined herein), the Debtors shall be immediately prohibited from using the Cash Collateral for any purpose other than to avoid immediate and irreparable harm (and solely to the extent provided in the Budget).  Nothing in this Final Order shall authorize the disposition of any

12

assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order and in accordance with the Budget (as defined herein).

3.        **Adequate Protection**.  In addition to all of the existing security interests and liens previously granted to the Prepetition Lenders, as adequate protection for, and to secure the payment of any Diminution in Value of their interests in the Prepetition Collateral, and as an inducement for the Prepetition Lenders to permit the Debtors' use of the Cash Collateral as provided for in this Final Order, the Prepetition Lenders are hereby granted, subject and subordinate to the Carve Out (as defined below), effective *nunc pro tunc* to the Petition Date, the following adequate protection (the "Adequate Protection Obligations"), pursuant to sections 361, 362, 363, and 507 of the Bankruptcy Code:

(i)        continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition senior security interests in and liens on (collectively, the "Adequate Protection Liens"), subject and subordinate to the Carve Out, all prepetition and postpetition tangible and intangible property and assets, whether real or personal, of the Debtors, including, without limitation, all assets and property pledged under the SVB Loan Documents and the SVB Capital Loan Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts, and all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, shares, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), books, records, plants, equipment, general intangibles, documents, instruments,

13

interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, and all proceeds, rents, profits, products, and substitutions, if any, of any of the foregoing (the "Adequate Protection Collateral"); *provided*, that the Adequate Protection Collateral shall not include the Debtors claims or causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of a debtor or the estate of a debtor under Chapter 5 of the Bankruptcy Code;

(ii)    an allowed superpriority administrative expense claim against each Debtor in these chapter 11 cases and any successor cases (the "Adequate Protection Superpriority Claim") with priority over all other administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, *provided* that the SVB Final Payment shall have been deemed to satisfy in full any Adequate Protection Superpriority Claim of SVB except to the extent of any SVB Contingent Claims;

(iii)    payment of interest on the SVB Loan Obligations and the SVB Capital Loan Obligations ("Adequate Protection Interest") at the non-default contractual rate specified in the SVB Loan Documents and the SVB Capital Loan Documents, respectively, which Adequate Protection Interest shall be payable monthly in cash and otherwise in accordance with the terms of the SVB Loan Documents and the SVB Capital Loan Documents, respectively; *provided*, that all such payments shall be treated in accordance with and shall be subject to the Subordination

14

Agreement (including Section 8 thereof), and *provided further* that the SVB Final Payment is deemed to have satisfied any obligation to SVB for Adequate Protection Interest except to the extent of any SVB Contingent Claims; and

(iv)        payment in cash within fourteen (14) calendar days of receipt of all reasonable and documented legal fees and out-of-pocket costs, expenses, disbursements, and other charges incurred by SVB and SVB Capital in connection with these chapter 11 cases, whether arising before or after the Petition Date (the "Prepetition Lender Fees"); *provided*, that SVB and SVB Capital (and their professionals) shall not be required to comply with U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any Prepetition Lender Fees; *provided*, *further*, that (a) any time any such professional seeks payment of Prepetition Lender Fees from the Debtors, such professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee (collectively, the "Fee Notice Parties"), and (b) if no objection to payment of the requested fees and expenses is made, in writing, by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "Fee Objection Period"), then such invoice shall be promptly paid, without further order of, or application to, this Court or notice to any other party, and, in any case, within four (4) calendar days following the expiration of the Fee Objection Period and shall not be subject to any further review, challenge, or disgorgement, and (c) if within the Fee Objection Period, a Fee Notice Party

15

sends to the affected professional a written objection to such invoice, then only the disputed portion of such Prepetition Lender Fees shall not be paid as set forth above until the objection is resolved by the applicable parties in good faith or by order of this Court; and *provided*, *further*, that the SVB Final Payment is deemed to have satisfied any obligation to SVB for its Prepetition Lender Fees except to the extent of Prepetition Lender Fees incurred on any SVB Contingent Claims.

4.  **Priority of Adequate Protection Liens and Superpriority Claims**.  The Adequate Protection Liens shall be first-priority perfected security interests, liens, and mortgages on all Adequate Protection Collateral, subject only to the Carve Out, the Prepetition Liens and valid, perfected, enforceable, and non-avoidable security interests, liens, or mortgages in existence on Petition Date (the "Prior Permitted Liens").  The Adequate Protection Liens shall be junior to the Carve Out and to any Prior Permitted Lien in existence on the Petition Date.  Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in these chapter 11 cases or any successor cases, and shall be valid and enforceable against any trustee appointed in these chapter 11 cases or any successor cases, or upon the dismissal or conversion of these chapter 11 cases or any successor case.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.  Notwithstanding anything to the contrary herein, (a) the Adequate Protection Liens of SVB Capital shall be subordinate to the Carve Out, Prepetition Liens and Adequate Protection Liens of SVB, (b) the Adequate Protection Superpriority Claim of SVB Capital shall be subordinate to the Carve Out, the SVB Loan Obligations and the Adequate Protection Claim of SVB, and (c) all payments, proceeds, or other rights associated with any

16

Diminution in Value arising in connection with the adequate protection granted to SVB or SVB Capital under this Final Order shall be subject in all respects to the Subordination Agreement, including Section 8 thereof.

5.      **Use of Cash Collateral**.  From and after the Petition Date, the Debtors shall use the Cash Collateral only for the purposes specifically set forth in this Final Order and in strict compliance with the Budget (subject to any variances thereto permitted by the Interim Order or this Final Order); <u>provided</u>, that up to $25,000 in the aggregate of proceeds of any Cash Collateral may be used to pay allowed fees of the Committee or professionals retained by the Committee and incurred in connection with investigating the matters covered by the stipulations contained in Paragraph D of this Final Order.

6.      **Postpetition Lien Perfection**.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, the Prepetition Lenders may, in their sole discretion, file such financing statements, mortgages, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these chapter 11 cases.  The Debtors shall execute and deliver to the Prepetition Lenders and the Committee all such financing statements, mortgages, notices, and

17

other documents as the Prepetition Lenders or the Committee may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the Adequate Protection Liens granted pursuant hereto.  Each of the Prepetition Lenders, in their sole discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file or record financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

7.    **Budget**.    The budget annexed hereto as **Exhibit A** (as it may be updated periodically in accordance with this Final Order, the "Budget") is hereby approved.  Beginning on the fourth Friday following the Petition Date, and then no later than every fourth Friday thereafter, the Debtors shall deliver to SVB Capital and the Committee an updated, proposed Budget (each, a "Proposed Budget") for the period from such date through the later of February 28, 2023 or 4 weeks from the date of submission, which shall be in form and substance satisfactory to SVB Capital.  A Proposed Budget shall become the new Budget upon approval by SVB Capital (which must be in writing, including via email).  If SVB Capital rejects or fails to approve a Proposed Budget, the prior approved budget shall continue in place and shall govern.  The Debtors shall not permit the percentage variance with respect to projected disbursements in each then-current Budget to exceed 10% in the aggregate for total actual disbursements excluding all professional fees (inclusive of professional fees of the Prepetition Lenders) on a weekly basis (the "Budget Variances"; all references in this Final Order to "Budget" shall mean the Budget as it is subject to the Budget Variances).  The Debtors shall also deliver on a weekly basis beginning on Friday November 18, 2022, a variance report reflecting, on a line item and an aggregate basis, the Debtors' actual unrestricted cash receipts and cash disbursements compared to the Budget for such

EAST\198443728.9
10336766.v4

immediately preceding week (*i.e.*, on Friday, November 18, 2022, the report would be for the week ending Friday November 11, 2022) and for the period commencing on the Petition Date through and including the end of the week immediately preceding the date of the variance report; and such variance report shall be in form and substance satisfactory to SVB Capital and certified as complete and accurate by a responsible officer to the responsible officer's reasonable belief.  For purposes of calculating the Budget Variances, any unused amounts set forth in the Budget for any period of determination may be carried forward and used during subsequent periods.

8.      **[Reserved**.]

9.      **Validity of Adequate Protection Obligations**.    The Adequate Protection Obligations shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms thereof.  The Adequate Protection Liens as approved under this Final Order shall become effective on a final basis upon entry of this Final Order.   No obligation, payment, transfer, or grant of security under the Interim Order or this Final Order shall be voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.  The Debtors shall not consent to relief from the automatic stay by any person other than the Prepetition Lenders to proceed against any Adequate Protection Collateral without the express written consent of SVB Capital.

10.      **Automatic Effectiveness of Liens**.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the Debtors to grant the liens and security interests to the Prepetition Lenders contemplated by this Final Order.

11.      **Definition of Termination Event**.  A "Termination Event" means: (i) any Debtor shall violate the terms of this Final Order; (ii) this Final Order ceasing to be in full force and effect

19

for any reason; (iii) any Debtor shall file, propose, or support a chapter 11 plan other than the Revised Plan or sale transaction that does not result in a good faith transaction that, if consummated, would result in the repayment of the SVB Loan Obligations and SVB Capital Loan Obligations in full in cash on the effective date or closing date, as applicable, without the prior written consent of SVB Capital; (iv) the Revised Plan is not filed on or before January 18, 2023; (v) the Debtors abandon confirmation of the Revised Plan; (vi) confirmation of the Revised Plan as drafted is denied or the confirmation hearing for the Revised Plan is not held on or before March 3, 2023; or (vii) any Debtor shall investigate, assert, or prosecute any claims or causes of action against a Prepetition Lender arising under or related to the SVB Loan Documents and/or the SVB Capital Loan Documents or raise any defenses to the SVB Loan Obligations or the SVB Capital Loan Documents.

12.      **[Reserved.]**

13.      **Additional Rights Upon Termination Event**.  Upon the occurrence and during the continuance of a Termination Event, SVB Capital may declare (a) all Adequate Protection Obligations and SVB Capital Loan Obligations immediately due and owing, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by the Debtors, whereupon all Adequate Protection Obligations and/or SVB Capital Loan Obligations shall be immediately due and payable; and (b) that the Debtors shall have no right to use any Cash Collateral, other than toward the satisfaction of the Adequate Protection Obligations, SVB Loan Obligations, and the SVB Capital Loan Obligations or to avoid immediate and irreparable harm (and solely to the extent provided in the Budget).

14.      **Remedies Notice**.  The automatic stay in the chapter 11 cases otherwise applicable to the Prepetition Lenders is hereby modified so that five (5) business days (the "Remedies Notice

Period") after the date a declaration of a Termination Event (the "<u>Remedies Notice</u>") is delivered to the Debtors, the U.S. Trustee, and the Committee (which may be via email to counsel), the applicable Prepetition Lender shall be entitled to exercise its rights and remedies in accordance with the applicable prepetition loan documents and this Final Order to satisfy the relevant Adequate Protection Obligations and the SVB Capital Loan Obligations, subject to the Carve Out. During the Remedies Notice Period, the Debtors, the Committee and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court. Unless the Court orders otherwise, the automatic stay as to the Prepetition Lenders shall automatically terminate at the end of the Remedies Notice Period without further notice or order.

15.       <u>**Waiver of Requirement to File Proofs of Claim**</u>.  The Prepetition Lenders shall not be required to file proofs of claim in these chapter 11 cases or any successor cases in order to maintain their claims for payment of the obligations under the SVB Loan Documents and the SVB Capital Loan Documents and with respect to the Adequate Protection Obligations.

16.       <u>**Payment of Compensation**</u>.  Nothing herein shall be construed to obligate the Prepetition Lenders to pay any professional fees or to assure that the Debtors have sufficient funds on hand to pay any professional fees.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors or shall affect the right of the Prepetition Lenders to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget.

17.       <u>**Effect of Stipulations**</u>.

(i)       **Generally**.  The admissions, stipulations, agreements, releases, and waivers set forth in Paragraph D of this Final Order (collectively, the "<u>Prepetition Lien and Claim Stipulations</u>") are and shall be binding on the Debtors.  In addition, the Prepetition Lien and Claim

EAST\198443728.9
10336766.v4

Stipulations shall be binding on the Debtors' estates, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including the Committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (a) has timely filed the appropriate pleadings and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph) challenging the Prepetition Lien and Claim Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge")[4] by no later than the date that is seventy-five (75) days following the entry of the Interim Order (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time with the consent of the Debtors and SVB Capital (which written consent may be via email); *provided that*, notwithstanding the foregoing, the Challenge Deadline with respect to SVB Capital only shall be tolled for the Committee until the effective date of the Revised Plan, at which point the Challenge period shall be deemed to have terminated, or, if confirmation of the Revised Plan is denied, the date that is seven (7) calendar days after the entry of the order denying confirmation; and (b) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  Notwithstanding the foregoing, if a chapter 11 trustee is

---

[4] For the avoidance of doubt, *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Standing and Otherwise Providing Authority to Commence, Prosecute and Settle Claims against SVB Innovation Credit Fund VIII, L.P.* [D.I. 240] shall constitute a Challenge.

EAST\198443728.9
10336766.v4

appointed or these chapter 11 cases is converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of these chapter 11 cases to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause, and (2) if the Committee has commenced a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

(ii)        **Binding Effect**.   To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Stipulations shall, pursuant to this Final Order, become binding, conclusive, and final on the Debtors' estates, any person, entity, or party in interest in these chapter 11 cases, and their successors and assigns, and in any successor cases for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (i) above except to the extent that any of such Prepetition Lien and Claim Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (i) above.  To the extent any such Challenge proceeding is timely and properly

23

commenced, the Prepetition Lenders shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the SVB Loan Documents and/or the SVB Capital Loan Documents in defending themselves in any such proceeding as additional adequate protection.  If any such Challenge is timely commenced and/or sustained, the stipulations contained in Paragraph D shall nonetheless remain binding on all parties in interest, except to the extent that such stipulations were expressly challenged in such Challenge.  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges, without prior express Court approval.

18.        **Limitation on Charging Expenses Against Collateral**.  Subject to the Challenge rights in paragraph 17, no costs or expenses of administration of these chapter 11 cases, any successor cases. or any other future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Adequate Protection Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, and the Debtors (and any successors thereto, including any representatives thereof, including any trustee appointed in these chapter 11 cases or any successor cases), shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may related to or be asserted against the Prepetition Lenders, the Adequate Protection Collateral, or the Prepetition Collateral.  Nothing contained in the Interim Order or this Final Order shall be deemed a consent by the Prepetition Lenders to any charge, lien, assessment, or claim against, or in respect of, the Adequate Protection Collateral or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise.

EAST\198443728.9
10336766.v4

19.      **Payments Free and Clear**.  Subject to the Challenge rights in paragraph 17, any and all payments or proceeds remitted to the Prepetition Lenders pursuant to the provisions of the Interim Order or this Final Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through, or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.  No payments authorized by the Interim Order or this Final Order shall be subject to recharacterization, avoidance, subordination, or disgorgement.

20.      **No Marshaling/Applications of Proceeds**.  Subject to the Challenge rights in paragraph 17, the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order, the SVB Loan Documents, and the SVB Capital Loan Documents notwithstanding any other agreement or provision to the contrary.

21.      **Section 552(b)**.  Subject to the Challenge rights in paragraph 17, the Prepetition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Lenders in any respect.

22.      **Limitation of Liability**.  Nothing in this Final Order, the SVB Loan Documents, or the SVB Capital Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Lenders, or any of their successors or predecessors, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any affiliate of the Debtors.

EAST\198443728.9
10336766.v4

23.        **Indemnification**.  The Debtors shall indemnify and hold harmless the Prepetition Lenders and their successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present, and future, and their respective heirs, predecessors, successors, and assigns in accordance with the SVB Loan Documents and the SVB Capital Loan Documents, which indemnification is hereby authorized and approved; *provided*, that the Debtors shall have no obligation to indemnify for any claim or expense that is judicially determined (the determination having become final) to have arisen from the indemnified person's bad faith, gross negligence, or willful misconduct.

24.        **[Reserved.]**

25.        **Monitoring of Collateral**.  During normal business hours and after advanced written notice to the Debtors' counsel (which may be via email), the Prepetition Lenders, and their representatives, consultants, and advisors, shall be given reasonable access to the Debtors' books, records, assets, and properties for purposes of monitoring the Debtors' business and the value of the Prepetition Collateral and Adequate Protection Collateral.  Notwithstanding the forgoing, no party shall be entitled to any records identified in this paragraph that are subject to legal privilege or that would or could trigger a breach of any obligations under any confidentiality provision to which the Debtors are subject.

26.        **No Third-Party Rights**.  This Final Order does not create any rights for the benefit of any party, creditor, equity holder, or other entity other than the Prepetition Lenders and the Debtors, and their respective successors and assigns.

27.        **Rights Preserved**.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly,

EAST\198443728.9
10336766.v4

the Prepetition Lenders' rights to seek any other or supplemental relief in respect of the Debtors, including the right to seek new, different, or additional adequate protection, as applicable.  Nothing contained in this Final Order shall be deemed a finding by the Court or an acknowledgement by the Prepetition Lenders that the adequate protection granted in this Final Order does in fact adequately protect the Prepetition Lenders against any Diminution in Value of the Prepetition Collateral.

28.      **Reversal or Modification on Appeal**.  The reversal or modification on appeal of a grant of priority claim or a lien under the Interim Order or this Final Order shall not affect the validity of any priority claim or lien so granted to the Prepetition Lenders under the Interim Order or this Final Order.

29.      **Binding Nature of Order**.  The provision**s** of this Final Order shall be binding upon the Debtors and their successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of the Debtors' estates or with respect to their property).

30.      **Survival of Order**.  Solely with respect to the Prepetition Lenders, the provisions of this Final Order and any actions taken pursuant hereto (a) shall survive the entry of any order: (i) confirming any plan of restructuring in any of the chapter 11 cases, (ii) converting any of the chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code, or (iii) dismissing any of the chapter 11 cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Final Order shall maintain their priority as provided by this Final Order until (x) all of the Adequate Protection Obligations are indefeasibly paid or otherwise satisfied in full and discharged in accordance with this Final Order and (y) the Prepetition Loan Obligations owed to the Prepetition Lenders are paid

EAST\198443728.9
10336766.v4

or otherwise satisfied in full.  The Adequate Protection Obligations shall not be discharged by the entry of any order confirming any plan, other than the Revised Plan, in any of the chapter 11 cases that does not provide for payment in full of the Adequate Protection Obligations unless otherwise agreed to by SVB Capital.

31.    **Priority of Terms**.  To the extent of any conflict between or among the Motion, the terms of any "first day" or "second day" orders (including without limitation any provisions contained in such orders authorizing the Debtors to make any payments), or the terms of the Interim Order, and this Final Order, the terms and provisions of this Final Order (including without limitation the provisions hereof relating to the Budget) shall govern.

32.    **[Reserved.]**

33.    **No Waivers or Modification of Final Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of SVB Capital, and no such consent shall be implied by any other action, inaction, or acquiescence of SVB Capital.  Notwithstanding anything herein to the contrary, the Termination Events set forth herein (and the other rights and remedies of the Prepetition Lenders granted hereunder) may be waived, modified, or extended with the express written consent of SVB Capital (which may be via email).

34.    **[Reserved.]**

35.    ***Nunc Pro Tunc* Effect**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

EAST\198443728.9
10336766.v4

36.      **Carve Out**.

(i)      **Carve Out**.  As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of this Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (in such amounts as determined in agreement with the United States Trustee or by final order of the Court) plus interest at the statutory rate (without regard to the Carve Out Trigger Notice (as defined below)); (ii) all reasonable fees and expenses up to $25,000 incurred under section 726(b) of the Bankruptcy Code by a trustee appointed in any chapter 7 cases of the Debtors (without regard to the Carve Out Trigger Notice); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, or otherwise, all unpaid monthly or hourly fees and expenses on account of services performed in connection with the chapter 11 cases by persons or firms retained by the Debtors and the Committee appointed in these chapter 11 cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "Estate Professionals"), incurred at any time before delivery by SVB Capital of a Carve Out Trigger Notice as described below whether allowed by this Court prior to or after the delivery of a Carve Out Trigger Notice (collectively, the "Pre-Carve Out Trigger Notice Allowed Professional Fees") in an aggregate amount not to exceed the amount allocated to monthly and hourly fees and expenses of Estate Professionals in the Budget through the date of delivery of such Carve Out Trigger Notice (without duplication of amounts previously disbursed by the Debtors on account of fees and expenses of Estate Professionals); and (iv) to the extent allowed by the Court by interim order, procedural order, or otherwise, all unpaid monthly or hourly fees and expenses on account of services performed by the Estate Professionals in connection with the chapter 11 cases at any time following delivery by SVB Capital of a Carve Out Trigger Notice (collectively, the "Post-Carve Out Trigger Notice Allowed Professional Fees"

29

and, together with the Pre-Carve Out Trigger Notice Allowed Professional Fees, the "Allowed Professional Fees") incurred by Estate Professionals in an aggregate amount not to exceed $150,000 (the amounts set forth in this clause (iv) being together the "Post-Carve Out Trigger Notice Cap"); provided, that, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in clauses (iii) and (iv) above on any grounds.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by SVB Capital or its counsel to the Debtors' counsel, with a copy to the U.S. Trustee and counsel to the Committee appointed in these cases, following the occurrence and during the continuation of a Termination Event and stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(ii) **Pre-Carve Out Trigger Notice Reserve**.  Not later than 7:00 p.m. New York time on the Wednesday of each week starting with the first full calendar week following the Petition Date, each Estate Professional shall deliver to the Debtors and the Prepetition Lenders a statement setting forth (i) a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Estate Professional (through Saturday of such week, the "Calculation Date") (collectively, "Estimated Fees and Expenses") and (ii) the total amount of fees and expenses that have been paid to date by the Debtors to such Estate Professional (each such statement, a "Weekly Statement"); provided, that within one business day of the occurrence of the Termination Declaration Date (as defined below), each Estate Professional shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  If any Estate Professional fails to deliver a Weekly Statement

30

within three calendar days after such Weekly Statement is due, such Estate Professional's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Estate Professional failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Budget for such period for such Estate Professional.  On a weekly basis, the Debtors shall deposit an amount equal to the Estimated Fees and Expenses set forth in the Weekly or Final Statement into a segregated escrow account (the "Pre-Carve Out Trigger Notice Reserve"); *provided*, that the amount held in the Pre-Carve Out Trigger Notice Reserve on any date shall not exceed the amount allocated to monthly and hourly fees and expenses of Estate Professionals in the Budget through such date (without duplication of amounts previously disbursed by the Debtors on account of fees and expenses of Estate Professionals).  The funds in the Pre-Carve Out Trigger Notice Reserve shall be held in trust to pay Pre-Carve Out Trigger Notice Allowed Professional Fees prior to payment of all other claims.

(iii)    **Post-Carve Out Trigger Notice Reserve**. On the day on which a Carve Out Trigger Notice is delivered by SVB Capital in accordance with this Final Order (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the unpaid amounts of the Pre-Carve Out Trigger Notice Allowed Professional Fees that have not already been funded into the Pre-Carve Out Trigger Notice Reserve.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such unpaid Pre-Carve Out Trigger Notice Allowed Professional Fees prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out

31

Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to the payment of any and all other claims.

(iv)    **Priority of Pre-Carve Out Trigger Notice Reserve**.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Lenders, unless the SVB Loan Obligations, SVB Capital Loan Obligations, and the Adequate Protection Obligations have been indefeasibly paid in full, in cash, in which case, any such excess shall be released from trust and returned to the Debtors and their estates.

(v)    **Priority of Post-Carve Out Trigger Notice Reserve**.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Lenders, unless the unless the SVB Loan Obligations, SVB Capital Loan Obligations, and the Adequate Protection Obligations have been indefeasibly paid in full, in cash, in which case, any such excess shall be released from trust and returned to the Debtors and their estates.

(vi)    **Notwithstanding anything to the contrary in this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth above, then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out**

32

**Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth above, prior to making any payments to the Prepetition Lenders or any other of the Debtors' creditors, as applicable.** Notwithstanding anything to the contrary in the SVB Loan Documents, the SVB Capital Loan Documents, or this Final Order, following delivery of a Carve Out Trigger Notice, so long as the funding of the Carve Out Reserves occurs promptly, neither of Prepetition Lenders shall sweep or foreclose on cash of the Debtors until the Carve Out Reserves have been fully funded. The Prepetition Lenders shall have a security interest in any residual interest in the Carve Out Reserves, if any, as additional security for the Prepetition Loan Obligations and the Adequate Protection Obligations. Furthermore, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not increase or reduce the SVB Loan Obligations or the SVB Capital Loan Obligations; (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out or the payment obligations by the Debtors of such unpaid Allowed Professional Fees, and (iii) in no way shall the Proposed Budget, the Budget, the Carve Out, the Post-Carve Out Trigger Notice Cap, the Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in the SVB Loan Documents or the SVB Capital Loan Documents, the Carve Out shall be senior to all Prepetition Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens.

37.     **Retention of Jurisdiction**. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

EAST\198443728.9
10336766.v4

38.     **Waiver of Stay of Effectiveness of the Final Order**.  Notwithstanding Bankruptcy Rules 6003 and 6004 or any other Bankruptcy Rule, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

39.     **Subordination Agreement**.  That certain Subordination Agreement dated as of September 10, 2019 between SVB and SVB Capital (the "Subordination Agreement"), which governs, among other things, the relative priorities of the SVB Liens and the SVB Capital Liens in respect of the Prepetition Collateral, among other things, is binding and enforceable against the Prepetition Lenders in accordance with its terms and the Prepetition Lenders are not entitled to take any action that would be contrary to the provisions thereof.  Nothing contained in this Final Order shall alter or modify, or be deemed to alter or modify, the rights of any party under the Subordination Agreement.  All payments received or obtained by SVB and SVB Capital in accordance with or pursuant to this Final Order shall be applied in accordance with the Subordination Agreement, including Section 8 thereof.

**Dated: January 19th, 2023**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**

34