# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Legacy FSRD, Inc. (f/k/a Fast Radius, Inc., *et. al*),[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11051 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. No. 299** |

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF DEBTORS' COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN AND RESPONSE TO UNITED STATES TRUSTEE'S LIMITED OBJECTION

R. Craig Martin (DE 5032)
**DLA PIPER LLP (US)**
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Craig.Martin@us.dlapiper.com

W. Benjamin Winger (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: Benjamin.Winger@us.dlapiper.com

Rachel Ehrlich Albanese (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: Rachel.Albanese@us.dlapiper.com

*Counsel for the Debtors*

February 17, 2023
Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Legacy FSRD, Inc. (2788), Legacy FSRD Operations, Inc. (5398), and Legacy FSRD PTE LTD (9511). The location of the Debtors' service address in these chapter 11 cases is 251 Little Falls Drive, Wilmington, Delaware 19808.

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

JURISDICTION AND VENUE .........................................................................................2

BACKGROUND .................................................................................................................3

I.     Procedural History .................................................................................................3

II.    Solicitation and Voting Results ............................................................................6

III.   Confirmation Objections.......................................................................................6

ARGUMENT .......................................................................................................................6

I.     Section 1129(a)(1): The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of the Bankruptcy Code....................................................7

    A.  The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code. ...................................................................................................7

    B.  The Plan Complies with Section 1123(a) of the Bankruptcy Code. ...........................10

        1.  Section 1123(a)(1): Designation of Classes of Claims and Interests....................10

        2.  Section 1123(a)(2): Specification of Unimpaired Classes.....................................10

        3.  Section 1123(a)(3): Specification of Treatment of Classes Impaired by the Plan.10

        4.  Section 1123(a)(4): Equal Treatment within Each Class.......................................10

        5.  Section 1123(a)(5): Adequate Means for Implementation ...................................11

        6.  Section 1123(a)(6): Prohibition on the Issuance of Non-Voting Securities ..........11

        7.  Section 1123(a)(7): Provisions Regarding Officers and Directors ........................12

    C.  The Plan Complies with Section 1123(b) of the Bankruptcy Code...........................12

        1.  Section 1123(b)(1): Impairment of Claims and Interests ......................................12

        2.  Section 1123(b)(2): Executory Contracts .............................................................13

        3.  Section 1123(b)(3): Global Settlement, UPS Settlement, Palantir Settlement ......13

        4.  Section 1123(b)(3): Retention of Claims or Equity Interests ................................16

        5.  The Releases, Exculpation, Section 1125(e), and Injunction Provisions Under the Combined Disclosure Statement and Plan are Appropriate Under Section 1123(b)(3) and (6)................................................................................................16

            a.  The Releases by the Debtors Are Appropriate Under Section 1123(b)(3) ......17

            b.  The Third-Party Release Is Wholly Consensual, Appropriate, and Complies with the Section 1123(b)(6) of the Bankruptcy Code ....................................22

            c.  The Exculpation under the Combined Disclosure Statement and Plan Is Appropriate under Section 1123(b)(6)............................................................26

i

        d.   The Section 1125(e) Provision Is Appropriate and Complies with the Bankruptcy Code ...................................................................................................28

        e.   The Injunction under the Combined Disclosure Statement and Plan Is Appropriate and Should be Approved ............................................................30

II.     The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code. ............................30

    A.  The Debtors Have Complied with Section 1125, and the Disclosure Statement Should be Approved on a Final Basis ......................................................................30

    B.  The Debtors' Solicitation Complies with Section 1126 of the Bankruptcy Code .......32

III.    Section 1129(a)(3): The Combined Disclosure Statement and Plan has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.....................................................33

IV.    Section 1129(a)(4): The Combined Disclosure Statement and Plan Provides for Court Approval of Certain Administrative Payments....................................................................34

V.     Section 1129(a)(5): The Combined Disclosure Statement and Plan Discloses Post-Effective Date Management ...............................................................................................35

VI.    Section 1129(a)(6): The Combined Disclosure Statement and Plan Does Not Require Governmental Approval of Rate Changes ..........................................................................35

VII.   Section 1129(a)(7): The Combined Disclosure Statement and Plan Is in the Best Interests of Creditors ......................................................................................................................35

VIII.  Section 1129(a)(8) Acceptance by Impaired Classes ........................................................37

IX.    Section 1129(a)(9): The Combined Disclosure Statement and Plan Complies with Statutorily Mandated Treatment of Administrative Claims and Priority Tax Claims .......38

X.     Section 1129(a)(10): The Combined Disclosure Statement and Plan Has Been Accepted by at Least One Impaired Class of Claims............................................................................38

XI.    Section 1129(a)(11): The Combined Disclosure Statement and Plan Is Feasible .............38

XII.   Section 1129(a)(12): The Combined Disclosure Statement and Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 ...................................................................................40

XIII.  Sections 1129(a)(13)-(16) Are Inapplicable .....................................................................40

XIV.  Section 1129(b): The Combined Disclosure Statement and Plan Satisfies the "Cramdown" Requirements ...............................................................................................40

    A.  Section 1129(b)(1): The Plan Does Not Unfairly Discriminate .................................41

    B.  Section 1129(b)(2): The Plan Is Fair and Equitable ..................................................42

XV.   Section 1129(c): Only One Combined Disclosure Statement and Plan.............................42

XVI.  Section 1129(d): The Principal Purpose of the Combined Disclosure Statement and Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act ..........................................43

XVII. Section 1129(e): The Debtors' Chapter 11 Cases are Not a Small Business Case...........43

THE UST'S LIMITED OBJECTION SHOULD BE OVERRULLED .......................................44

THE DEBTORS' DISCLOSURE STATEMENT, SOLICITATION AND VOTING PROCEDURES SHOULD BE APPROVED ON A FINAL BASIS ...........................................48

CAUSE EXISTS TO WAVE A STAY OF THE CONFIRMATION ORDER ............................49

CONCLUSION.................................................................................................................49

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abeinsa Holding, Inc.*,
    562 B.R. 265 (Bankr. D. Del. 2016) ...................................................................19

*In re Alpha Latam Management, LLC, et al.*,
    Case No. 21-11109 (JKS) (Bankr. D. Del. March 16, 2022) ...........................47, 49

*In re Alpha Latam Mgmt., LLC*,
    21-11109 (JKS) (Bankr. D. Del. Mar. 14, 2022) ............................................23, 25

*In re Am. Capital Equip. LLC*,
    688 F.3d 145 (3d. Cir. 2012) ...............................................................................33

*In re Armstrong World Indus., Inc.*,
    348 B.R. 111 (D. Del. 2006) ..................................................................................6

*Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 North LaSalle St. P'ship*,
    526 U.S. 415 (1999) ............................................................................................36

*In re Beach*,
    731 F. App'x 322 (5th Cir. 2018) .........................................................................14

*In re Blackhawk Mining LLC*,
    No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019) ............................................22

*In re Bluestem Brands, Inc., et al.*,
    Case No. 20-10566 (MFW) (Bankr. D. Del. Aug. 21, 2020) .................................48

*In re Caribbean Petroleum Corp.*,
    512 B.R. 774 (Bankr. D. Del. 2014) ......................................................................19

*In re Chaparral Energy, Inc.*,
    Case No. 20-11947 (MFW) (Bankr. D. Del. Oct. 1, 2020) ....................................49

*In re Chapel Gate Apartments, Ltd.*,
    64 B.R. 569 (Bankr. N.D. Tex. 1986) ...................................................................34

*In re Checkout Holding Corp.*,
    No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) ..............................................22

*In re Chisholm Oil and Gas Operating, LLC*,
    Case No. 20-11593 (BLS) (Bankr. D. Del. Sept. 23, 2020) ...................................49

*In re DBSD N. Am., Inc.*,
419 B.R. 179 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 CIV. 10156 (LAK), 2010
WL 1223109 (S.D.N.Y. Mar. 24, 2010), *aff'd in part, rev'd in part on other
grounds*, 627 F.3d 496 (2d Cir. 2010) ................................................................24

*In re Enron Corp.*,
326 B.R. 497 (S.D.N.Y. 2005)..............................................................................26

*In re Future Energy Corp.*,
83 B.R. 470 (Bankr. S.D. Ohio 1988)...................................................................34

*In re Global Eagle Entertainment Inc., et al..*,
Case No. 20-11835 (JTD) (Bankr. D. Del. Jan. 29, 2021).....................................47

*In re Greate Bay Hotel & Casino, Inc.*,
251 B.R. 213 (Bankr. D.N.J. 2000) ........................................................................8

*Grogan v. Garner*,
498 U.S. 279 (1991).................................................................................................6

*Heroes World Dist., Inc. v. MAFCO Holdings, Inc. (In re Marvel Entm't Grp.,
Inc.)*,
273 B.R. 58 (D. Del. 2002)....................................................................................18

*In re Horsehead Holding Corp.*,
Case No. 16-10287 (CSS) (Bankr. D. Del. Sep. 9, 2016).....................................22

*In re Hygea Holdings Corp., et al.*,
Case No. 20-10361 (KBO) (Bankr. D. Del. June 15, 2020) ..................................47

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ................................................19, 23, 24, 25

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987)..................................................................................8

*Key3media Grp., Inc. v. Pulver.Com, Inc. (In re Key3media Grp., Inc.)*,
336 B.R. 87 (Bankr. D. Del. 2005) .......................................................................14

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
337 F.3d 314 (3d Cir. 2003)...................................................................................31

*In re Mallinckrodt PLC*,
2022 Bankr. LEXIS 273 .......................................................................................41

*In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930 (Bankr. W.D. Mo. 1994)..................................................................18

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
   25 F.3d 1132 (2d Cir. 1994) ..................................................................................31

*Myers v. Martin* (*In re Martin*),
   91 F.3d 389 (3d Cir. 1996) ....................................................................................14

*In re Northwestern Corp.*,
   Case No. 03-12872 (KJC), 2008 WL 2704341 (Bankr. D. Del. Jul. 10, 2008) ......................14

*In re One Aviation Corp.*,
   No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) ............................................22

*In re Premier Int'l Holdings, Inc.*,
   2010 WL 2745964 (CSS) (Bankr. D. Del. Apr. 29, 2010) ....................................26

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000) ......................................................26, 33, 44, 45, 46, 48

*In re Pyxus Int'l, Inc.*,
   Case No. 20-11570 (LSS) (Bankr. D. Del. Aug. 21, 2020) ..................................49

*In re S & W Enter.*,
   37 B.R. 153 (Bankr. N.D. Ill. 1984) .......................................................................7

*In re Samson Resources Corp.*,
   No. 14-11934 (CSS) (Bankr. D.Del. Feb. 13, 2017) ...........................................22

*In re Skillsoft Corp.*,
   Case No. 20-11532 (MFW) (Bankr. D. Del. Aug. 6, 2020) ..................................49

*In re Smith*,
   357 B.R. 60 (Bankr. M.D.N.C. 2006), *appeal dismissed*, No. 1:07CV30, 2007
   WL 1087575 (M.D.N.C. Apr. 4, 2007) .................................................................36

*In re Spansion*,
   2010 WL 2905001 (Bankr. D. Del. April 16, 2010) .............................................26

*In re Sun Country Dev., Inc.*,
   764 F.2d 406 (5th Cir. 1985) .................................................................................33

*In re TK Holdings Inc., et al.*,
   Case No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) ..............................22, 47

*In re TPC Group Inc., et al..*,
   Case No. 22-10493 (CTG) (Bankr. D. Del. Dec. 1, 2022) ...................................47

*In re Tribune Co.*,
   464 B.R. 1262 (Bankr. D. Del. 2011) ..............................................................6, 20

*In re Tribune Co.*,
    476 B.R. 843 (Bankr. D. Del. 2012) ..............................................................8

*U.S. Bank. Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion)*,
    426 B.R. 114 (Bankr. D. Del. 2010) ..............................................18, 19, 24, 25

*United States v. Reorganized CF&I Fabricators of Utah, Inc.*,
    518 U.S. 213 (1996) ....................................................................................36

*In re Wash. Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) .........................................................20, 26

*In re World Health Alts, Inc.*,
    344 B.R. 291 (Bankr. D. Del. 2006) ............................................................14

*In re Zenith Elec. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ..........................................18, 19, 20, 21, 22

**Statutes**

11 U.S.C. § 1123(b)(3)(B) ..............................................................................16

11 U.S.C § 1125(b) .......................................................................................31

11 U.S.C. § 1126(f) ......................................................................................32

11 U.S.C. § 1126(g) ......................................................................................32

28 U.S.C. §§ 157 ...........................................................................................2

28 U.S.C. § 157(b) .........................................................................................3

28 U.S.C. § 1408 ............................................................................................2

28 U.S.C. § 1409 ............................................................................................2

28 U.S.C. § 1930 ..........................................................................................40

Bankruptcy Code § 365 ................................................................................13

Bankruptcy Code § 365(f) ............................................................................49

Bankruptcy Code § 503(b) ............................................................................38

Bankruptcy Code § 507 ................................................................................40

Bankruptcy Code § 1107(a) ...........................................................................3

Bankruptcy Code § 1108 ................................................................................3

Bankruptcy Code § 1114 ................................................................................40

Bankruptcy Code § 1122 .......................................................................3, 7, 8, 10

Bankruptcy Code § 1123(a) ..........................................................................10

Bankruptcy Code § 1123(a)(1) .....................................................................10

Bankruptcy Code § 1123(a)(3) .....................................................................10

Bankruptcy Code § 1123(a)(4) .................................................................10, 11

Bankruptcy Code § 1123(a)(5) .....................................................................11

Bankruptcy Code § 1123(a)(6) .....................................................................11

Bankruptcy Code § 1123(a)(7) .....................................................................12

Bankruptcy Code § 1123(b) ....................................................................12, 17

Bankruptcy Code § 1123(b)(1) .....................................................................12

Bankruptcy Code § 1123(b)(2) .....................................................................13

Bankruptcy Code § 1123(b)(3) ......................................................13, 15, 16, 17

Bankruptcy Code § 1123(b)(3)(A) .................................................................18

Bankruptcy Code § 1123(b)(6) ..........................................................16, 22, 26

Bankruptcy Code § 1124 .............................................................................3

Bankruptcy Code § 1125 ......................................................2, 5, 30, 31, 32, 49

Bankruptcy Code § 1125(a)(1) ................................................................31, 48

Bankruptcy Code § 1125(a) ..........................................................................31

Bankruptcy Code § 1125(b) ..........................................................................31

Bankruptcy Code § 1125(c) ..........................................................................32

Bankruptcy Code § 1125(e) ...........................................................16, 17, 28, 29

Bankruptcy Code § 1126 .............................................................................32

Bankruptcy Code § 1129 ........................................................................2, 5, 6

Bankruptcy Code § 1129(a) ........................................................................................................40

Bankruptcy Code § 1129(a)(1) ....................................................................................................7

Bankruptcy Code § 1129(a)(2) ..................................................................................................30

Bankruptcy Code § 1129(a)(3) .............................................................................................33, 34

Bankruptcy Code § 1129(a)(5) ..................................................................................................35

Bankruptcy Code § 1129(a)(7) ........................................................................................35, 36, 37

Bankruptcy Code § 1129(a)(8) ........................................................................................37, 40, 41

Bankruptcy Code § 1129(a)(9) ..................................................................................................38

Bankruptcy Code § 1129(a)(11) ...........................................................................................38, 39

Bankruptcy Code § 1129(a)(12) ................................................................................................40

Bankruptcy Code § 1129(b) ............................................................................................37, 40, 41

Bankruptcy Code § 1129(b)(1) ........................................................................................40, 41, 42

Bankruptcy Code § 1129(b)(2) ..................................................................................................42

Bankruptcy Code § 1129(b)(2)(C) .............................................................................................42

Bankruptcy Code § 1129(c) ......................................................................................................42

Bankruptcy Code § 1129(d) ........................................................................................................3

Bankruptcy Code § 1129(e) ......................................................................................................43

Securities Act § 5 ....................................................................................................................43

**Other Authorities**

Bankruptcy Rule 3020(b)(2) ......................................................................................................34

Bankruptcy Rule 3020(e) .....................................................................................................49, 50

Bankruptcy Rule 9019 .....................................................................................................13, 15, 16

Bankruptcy Rule 6004(h)...........................................................................................................49

Bankruptcy Rule 6006(d)...........................................................................................................49

Federal Rules of Bankruptcy Procedure Rule 3017 ..........................................................................3

Federal Rules of Bankruptcy Procedure Rule 3018 ..........................................................................3

Federal Rules of Bankruptcy Procedure Rule 3020 ..........................................................................3

Federal Rules of Bankruptcy Procedure Rule 6004 ..........................................................................3

Federal Rules of Bankruptcy Procedure Rule 9019 ..........................................................................3

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977) .................................................................7

Local Rules of Bankruptcy Rule 3017-1 ..........................................................................................3

Local Rules of Bankruptcy Rule 3017-3 ..........................................................................................3

S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978) ......................................................................7

The debtors and debtors in possession in the above-captioned cases (collectively, the Debtors"), by and through their undersigned counsel, DLA Piper LLP (US), hereby submit this memorandum of law (this "Memorandum") in support of confirmation of the *Combined Disclosure Statement and Joint Chapter 11 Plan (With Technical Modifications)*[2] (as may be further amended, supplemented, or otherwise modified from time to time, the "Combined Disclosure Statement and Plan")[3] under sections 1125, 1126, 1129, 1145 and 1146 respectively, of title 11 of the United States Code (the "Bankruptcy Code").

In support of confirmation of the Combined Disclosure Statement and Plan, the Debtors are also submitting the *Certification of Stretto Regarding Tabulation of Ballots in Connection With the Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan*[4] (the "Voting Report"), and the *Declaration of Brian Whittman in Support of Confirmation of the Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan* (the "Whittman Declaration"), which is being filed contemporaneously herewith, and are incorporated fully by reference into this Memorandum. In further support of confirmation of the Combined Disclosure Statement and Plan, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

The Debtors commenced these chapter 11 cases with the goal of completing their sale process and realizing a value-maximizing transaction that is in the best interests of all stakeholders. Despite challenging circumstances, the Debtors administered a highly competitive auction. On December 16, 2022, the Debtors closed a going-concern transaction that preserves the vast majority of all jobs, delivers substantial recoveries to creditors—both in terms of cash to the estate

---

[2]    *See* Docket No 299-1.
[3]    Capitalized terms used but not defined in this notice shall have the meanings given to them in the Combined Disclosure Statement and Plan.
[4]    *See* Docket No. 307.

and assumed liabilities—and otherwise positions the business for future success.  Since closing

that successful transaction, the Debtors actively engaged in good faith, hard-fought, negotiations

with the Official Committee of Unsecured Creditors (the "Committee"), their secured lenders,

SVB and SVB Capital, and other parties in interest regarding the best possible vehicle to make

distributions to creditors and otherwise conclude the chapter 11 process as efficiently as possible—

consummating the Sale Transaction *and* potentially the Plan in less than 4 months since the

Petition Date.

Those efforts have succeeded.  The results of such consensus are embodied in the Plan and

the various settlements implemented therein.  The Plan enjoys overwhelming support: ***creditors***

***holding more than 99.8% of all Claims, in amount, that voted on the Plan have voted to accept***

***the Plan***.  Each Voting Class against each Debtor has voted to accept the Plan.  No economic party

in interest opposes the Plan.  In fact, the Plan is consensual among all parties except the United

States Trustee—who raises one limited issue regarding the breadth of the definition of exculpated

parties, which, as shown below (p. 44-48), is fully justified by the facts of this case, is consistent

with standard applied in the Third Circuit, and is consistent with precedent in this jurisdiction.

The Debtors submit this Memorandum and the Declarations to establish that the Combined

Disclosure Statement and Plan is in the best interests of the Debtors' estates and creditors and

meets the requirements for final approval of the Disclosure Statement under section 1125 of the

Bankruptcy Code as well as confirmation of the Plan under section 1129 of the Bankruptcy Code.

For the reasons detailed herein, the Debtors respectfully submit that the Court should approve the

Disclosure Statement on a final basis and confirm the Plan.

## JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider confirmation of the Plan under

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these chapter 11 cases is proper before the Court under 28 U.S.C. §§ 1408 and 1409.

2.      The Debtors consent to the entry of an order or judgment by the Court in connection with confirmation of the Plan if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

3.      The statutory predicates for confirmation of the Plan are sections 1122, 1123, 1124, 1125, 1126, and 1129 of the Bankruptcy Code, Rules 3017, 3018, 3020, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 3017-1 and 3017-3 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

## <u>BACKGROUND</u>[5]

### I.      Procedural History

4.      On November 7, 2022, (the "<u>Petition Date</u>"), the Debtors commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      To date, no request has been made for the appointment of a trustee or examiner. On November 18, 2022, the U.S. Trustee appointed the Committee to represent the interests of the unsecured creditors of the Debtors in the chapter 11 cases.[6]

---

[5]      In addition to the facts set forth in this Memorandum, the factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of these chapter 11 cases, and other pertinent facts relating to these chapter 11 cases are set forth in the Combined Disclosure Statement and Plan and the Whittman Declaration.  Such facts are incorporated into this Memorandum by reference as though set forth fully.

[6]      *See, e.g.*, Docket No. 83.

6.      The factual background regarding the Debtors, including their business operations and the events leading to the filing of the chapter 11 cases, is set forth in detail in the *Declaration of Louis Rassey, Co-Founder and CEO of Fast Radius Inc., in Support of Chapter 11 Petitions and First Day Pleadings*[7] and the *Declaration of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings*.[8]

7.      On December 19, 2022, the Debtors filed an initial version of the Combined Disclosure Statement and Plan.[9]  Contemporaneously therewith, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II)  Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and Plan; and (VI) Granting Related Relief* (the "Solicitation Motion").[10]

8.      On January 12, 2023, the Debtors filed a revised version of the Combined Disclosure Statement and Plan.[11]   The revisions contained within the Combined Disclosure Statement and Plan implemented, among other things, the terms of the Global Settlement and resolved certain informal comments raised by the U.S. Trustee.

9.      On January 13, 2023, the Court entered an order (the "Solicitation Order"),[12] granting the Solicitation Motion on an uncontested basis.  The Solicitation Order approved the

---

[7]      *See* Docket No. 14.
[8]      *See* Docket No. 15.
[9]      *See* Docket No. 219.
[10]     *See* Docket No. 221.
[11]     *See* Docket No. 265.
[12]     *See* Docket No. 275.

Disclosure Statement on a conditional basis for solicitation purposes only, which, among other things, established procedures to solicit and tabulate votes to accept or reject the Plan (the "Solicitation Procedures") and the notices, forms, and ballots used in connection therewith.

10.     Following the entry of the Solicitation Order, Stretto, Inc., the Debtors' claims and noticing agent and administrative advisor (the "Claims and Noticing Agent"), distributed the solicitation packages containing, among other things, the Combined Disclosure Statement and Plan and the applicable ballots to all members of the Voting Classes (as defined below) entitled to vote to accept or reject the Plan in accordance with the Solicitation Procedures.[13]

11.     On January 19, 2023, the Debtors published the notice of the Confirmation Hearing[14] (the "Confirmation Hearing Notice") in the *New York Times.*[15]

12.     On February 7, 2023, the Debtors filed and served the *Notice of Filing of Plan Supplement* (as amended, the "Plan Supplement").[16]

[*Remainder of page intentionally left blank*]

---

[13]     *See* Docket No. 583 (the "Solicitation Affidavit").
[14]     "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider (i) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.
[15]     *See* Docket No. 292.
[16]     *See* Docket No. 298.

## II.    Solicitation and Voting Results

13.    On February 14, 2023, the Debtors completed solicitation on the Plan.    The consolidated voting results are set forth below.

| Total Ballots Counted | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Voting Class | Debtor | Voting Class Description | Accepting | | | Rejecting | | | Class Voting Result |
| | | | Number | Amount | # of Opt Outs | Number | Amount | # of Opt Outs | |
| 4 | All Debtors Consolidated | SVB Capital Secured Claims | 1 100.0% | $5,100,000.00 100.0% | 0 | 0 0.0% | $0.00 0.0% | 0 | Accepts |
| 5 | All Debtors Consolidated | General Unsecured Claims | 30 90.9% | $30,419,877.13 99.8% | 5 | 3 9.1% | $47,532.46 0.2% | 1 | Accepts |

## III.    Objections to Confirmation and Final Approval of Disclosure Statement

14.    On February 14, 2023, the United States Trustee filed the *United States Trustee's Limited Objection to Revised Combined Disclosure Statement and Joint Chapter 11 Plan (With Technical Modifications)* (the "UST's Limited Objection") with regard to the scope of the exculpation provision.[17]  The UST's Limited Objection  is addressed below.

15.    No other objections were filed in response to the Combined Disclosure Statement and Plan.

## ARGUMENT

16.    To confirm the Combined Disclosure Statement and Plan, the Court must find that the Debtors have satisfied the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[18]    Moreover, the Disclosure Statement contains adequate

---

[17]    *See* Docket No. 304.
[18]    *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In re Tribune Co.*, 464 B.R. 126, 15152 (Bankr. D. Del. 2011).  Preponderance of the evidence has been described as just enough evidence to make it more likely than not that the fact the claimant seeks to prove is true.  *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("The preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants.") (citations omitted).

information and should be approved on a final basis.  Based on the record of the chapter 11 cases, the Declarations, and the Debtors' arguments set forth herein, the applicable burden is clearly satisfied and the Combined Disclosure Statement and Plan complies with all relevant sections of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and applicable non-bankruptcy law. In particular, the Combined Disclosure Statement and Plan fully complies with the requirements of sections 1122, 1123, 1125, and 1129 of the Bankruptcy Code.  This Memorandum addresses each requirement individually below.

## I.  Section 1129(a)(1): The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of the Bankruptcy Code

17.  Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code.  The principal objective of section 1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan.  The determination of whether the Plan complies with section 1129(a)(1) of the Bankruptcy Code, thus, requires an analysis of sections 1122 and 1123 of the Bankruptcy Code.[19]

### A.  The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

18.  Section 1122 of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  The Third Circuit "permits the grouping of similar claims in different

---

[19]     The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision is intended to draw in the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively.  S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); *In re S & W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were Sections 1122 and 1123.").

classes" as long as those classifications are reasonable.[20]   Courts have recognized that section 1122, thus, gives both debtors and the bankruptcy court considerable discretion in determining whether similar claims may be separately classified.[21]

19.    The Combined Disclosure Statement and Plan provides for separate classification of Claims and Interests based on differences in the legal nature and/or priority of such Claims and Interests.   The Combined Disclosure Statement and Plan designates the following classes of Claims and Interests as follows:

| CLASS | DESIGNATION | IMPAIRMENT | VOTING RIGHTS |
|-------|-------------|------------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote / Deemed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote / Deemed to Accept |
| Class 3 | SVB Secured Claims | Unimpaired | Not Entitled to Vote / Deemed to Accept |
| Class 4 | SVB Capital Secured Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims & Interests | Unimpaired / Impaired | Not Entitled to Vote |
| Class 7A | Fast Radius Interests | Impaired | Not Entitled to Vote / Deemed to Reject |
| Class 7B | Section 510(b) Claims | Impaired | Not Entitled to Vote / Deemed to Reject |

20.    Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims and Interests in such Class.[22]   In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Combined Disclosure Statement and Plan, and no unfair

---

[20]    *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987); s*ee also In re Tribune Co.*, 476 B.R. 843, 854–55 (Bankr. D. Del. 2012) (holding that plan proponents have discretion to classify claims so long as the classification scheme is reasonable).
[21]    *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 224 (Bankr. D.N.J. 2000).
[22]    *See* Whittman Decl. ¶ 16.

discrimination exists between or among Holders of Claims and Interests.[23]  Namely, the Combined Disclosure Statement and Plan separately classifies the Claims because each Holder of such Claims or Interests may hold (or may have held) rights in the estates legally dissimilar to the Claims or Interests in other Classes or because substantial administrative convenience resulted from such classification.

21.     For example, the classification scheme distinguishes Holders of SVB Secured Claims (Class 3) from Holders of SVB Capital Secured Claims (Class 4), because of the relative priorities between each Class.  Other Secured Claims (Class 1) and Other Priority Claims (Class 2) are classified separately due to their required treatment under the Bankruptcy Code.  General Unsecured Claims (Class 5) are classified separately from Secured Claims (Classes 1, 3, and 4) and Fast Radius Interests (Class 7A).

22.     Valid business, legal, and factual reasons justify the separate classification of the particular Claims and Equity Interests into the Classes created under the Combined Disclosure Statement and Plan.  Accordingly, the Combined Disclosure Statement and Plan's classification of Claims and Equity Interests is consistent with the requirements of the Bankruptcy Code and, thus, is appropriate.

23.     Accordingly, the Debtors submit that the Combined Disclosure Statement and Plan's classification scheme is necessary, reasonable, and appropriate under the facts and circumstances of the chapter 11 cases and should be approved.

---

[23]     *See id.* ¶ 56.

**B.**     **The Plan Complies with Section 1123(a) of the Bankruptcy Code.**

24.     Section 1123(a) of the Bankruptcy Code sets forth several requirements with which a chapter 11 plan must comply.  The Combined Disclosure Statement and Plan complies with each such requirement:

**1.**     **Section 1123(a)(1): Designation of Classes of Claims and Interests**

25.     Section 1123(a)(1) provides that a plan must designate, subject to section 1122, classes of claims and interests.  As discussed above, the Combined Disclosure Statement and Plan clearly designates 8 separate classes of Claims and/or Interests.[24]   Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(1) of the Bankruptcy Code.

**2.**     **Section 1123(a)(2): Specification of Unimpaired Classes**

26.     1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan."  The Combined Disclosure Statement and Plan meets this requirement by identifying each Class in Article III that is Unimpaired.

**3.**     **Section 1123(a)(3): Specification of Treatment of Classes Impaired by the Plan**

27.     Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan."  The Combined Disclosure Statement and Plan meets this requirement by setting forth the treatment of each Class in Article III that is Impaired.

**4.**     **Section 1123(a)(4): Equal Treatment within Each Class**

28.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or equity interest within a particular class unless any claim or equity

---

[24]     *See* Combined Disclosure Statement and Plan, Art. III.

interest holder agrees to receive less favorable treatment than other class members.  Pursuant to the Combined Disclosure Statement and Plan, the treatment of each Claim against or Interest in the Debtors, in each respective Class, is the same as the treatment of each other Claim or Equity Interest in such Class.  Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### 5.    Section 1123(a)(5): Adequate Means for Implementation

29.    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means for the plan's implementation."  Article VII of the Combined Disclosure Statement and Plan provides adequate and proper means for implementation of the Combined Disclosure Statement and Plan, including, without limitation: (a) funding of distributions under the Plan, (b) cancellation of existing securities and agreements, (c) entry into certain settlement agreements, (d) preservation of Causes of Action that vest in the Wind-Down Debtor, (e) the authorization for the Wind-Down Debtor  to take corporate actions necessary to effectuate the Combined Disclosure Statement and Plan, and (f) the ability for the Debtors and Plan Administrator, as applicable, to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.  As such, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

### 6.    Section 1123(a)(6): Prohibition on the Issuance of Non-Voting Securities

30.    Section 1123(a)(6) of the Bankruptcy Code requires that the charter of the debtor, or the surviving corporation if the debtor is transferring all of its property or merging or consolidating with another entity, contain a prohibition against issuing nonvoting equity securities. Section 1123(a)(6) is not relevant to these chapter 11 cases as the Debtors are not issuing any equity securities under the Combined Disclosure Statement and Plan.

### 7.      Section 1123(a)(7): Provisions Regarding Officers and Directors

31.      Section 1123(a)(7) requires that the Combined Disclosure Statement and Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." The Debtors have disclosed in the Plan Supplement that Patrick McCusker is proposed to serve as Plan Administrator after the Effective Date and will oversee the wind-down of the Debtors' estates.  The foregoing party was selected by the Debtors in a manner consistent with the interests of creditors and with public policy.   Accordingly, the Combined Disclosure Statement and Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### C.      The Plan Complies with Section 1123(b) of the Bankruptcy Code.

32.      Section 1123(b) of the Bankruptcy Code sets forth certain provisions that may be incorporated into a plan, although they are not required.  As set forth below, the Combined Disclosure Statement and Plan includes certain of these discretionary provisions, such as releases. The contents of the Combined Disclosure Statement and Plan are consistent with these provisions.

### 1.      Section 1123(b)(1): Impairment of Claims and Interests

33.      In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan provides that certain Classes of Claims and Interests are impaired while certain other Classes of Claims are Unimpaired.  In particular, the Deemed Accepting Classes are Unimpaired, and both the Voting Classes and Deemed Rejecting Classes are Impaired.[25]

---

[25]      *See* Combined Disclosure Statement and Plan, Art. III.

### 2.    Section 1123(b)(2): Executory Contracts

34.    Section 1123(b)(2) of the Bankruptcy Code allows a plan to provide for the assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code.  Section 9.1 of the Combined Disclosure Statement and Plan provides that all executory contracts and unexpired leases of the Debtors that are (i) not assumed or rejected before the Effective Date (excluding, for the avoidance of doubt, insurance policies) or (ii) not subject to a pending motion to assume or reject as of the Effective Date will be deemed rejected.  Accordingly, the Combined Disclosure Statement and Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

### 3.    Section 1123(b)(3): Global Settlement, UPS Settlement, Palantir Settlement

35.    Section 1123(b)(3) of the Bankruptcy Code permits a plan to provide for the settlement of claims belonging to the debtor or its estate or the retention and enforcement by the debtor or an appointed representative of any such claim or interest.[26]  Under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Combined Disclosure Statement and Plan incorporates the terms of significant integrated compromises and settlements designed to achieve a favorable resolution of these chapter 11 cases for all parties in interest—the Combined Disclosure Statement and Plan refers to these compromises and settlements as the Global Settlement.

36.    The Combined Disclosure Statement and Plan incorporates the Global Settlement which provides for the compromise and settlement of numerous Claims, Interests, Causes of Action, and controversies designed to achieve a beneficial and efficient resolution of the chapter 11 cases for all parties in interest.  Through the Global Settlement, the Combined Disclosure

---

[26]    11 U.S.C. § 1123(b)(3).

Statement and Plan resolves a host of alleged Claims and Causes of Actions, which are all highly uncertain to succeed and could cause extensive delay, cost, and uncertainty in these chapter 11 cases and otherwise if pursued.  Each component of the Global Settlement is an integral, integrated, and inextricably linked part of the Global Settlement.[27]

37.     Compromises are favored, and in fact encouraged, in bankruptcy proceedings "[t]o minimize litigation and expedite the administration of a bankruptcy estate."[28]   The decision whether to approve or reject a settlement lies within the sound discretion of the Court.[29]   To make this determination, a court must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal to ensure that the settlement is fair and equitable and in the best interest of the estate.[30]

38.     The compromises set forth in the Combined Disclosure Statement and Plan are critical to bringing closure to these and other matters addressed in the Plan and will allow the Debtors to maximize the value of the Estates for the benefit of all parties in interest and maximize recoveries for all Holders of Claims and Interests.[31]

39.     The Global Settlement constitutes a good faith compromise after considerable arms'-length negotiations and extensive efforts on behalf of the Debtors, the Committee, SVB Capital, and certain other parties in interest who have agreed to the Global Settlement to provide a beneficial and fair resolution of disputes among numerous parties.  The Debtors have examined the factual bases and arguments underlying the disputes among the parties and have determined

---

[27]     *See* Whittman Decl. ¶27.
[28]     *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alts, Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006).
[29]     *See In re Northwestern Corp.*, Case No. 03-12872 (KJC), 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (quoting *Key3media Grp., Inc. v. Pulver.Com, Inc.* (*In re Key3media Grp., Inc.*), 336 B.R. 87, 92 (Bankr. D. Del. 2005)).
[30]     *In re Beach*, 731 F. App'x 322, 325 (5th Cir. 2018).
[31]     *See* Whittman Decl. ¶ 27.

that the resolution embodied in the Global Settlement is fair and reasonable and is eminently in the best interest of creditors and the Debtors' Estates.

40.     Simply put, the Global Settlement is fair and reasonable, is in the best interests of the Debtors' Estates and creditors, maximizes recoveries, and should be approved under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

41.     In addition to the Global Settlement, the Combined Disclosure Statement and Plan includes two settlements between the Debtors and (a) Palantir Technologies, Inc. (the "Palantir Settlement") and (b) United Parcel Service General Services Co., UPS Supply Chain Solutions, Inc., United Parcel Service Singapore Pte Ltd, and United Parcel Service, Inc. (the "UPS Settlement").

42.     The Palantir Settlement relates to contested matters, including the quantum of Claims in respect of a Master Subscription Agreement between the parties, and is the result of arms'-length, good faith, hard-fought negotiations.[32] The Debtors have examined the factual bases and arguments underlying the dispute and have unequivocally determined that the value, if any, of such potential claims does not exceed the benefits from the settlement embodied in the Palantir Settlement.  The Debtors maintain that the Palantir Settlement is fair and reasonable, is in the best interests of the Debtors' Estates and creditors, maximizes recoveries, and should be approved under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

43.     The UPS Settlement relates to contested matters, including the quantum of Claims, in respect of various UPS agreements and is the result of arms'-length, good faith, hard-fought negotiations between the parties.[33] The Debtors have examined the factual bases and arguments underlying the dispute and have unequivocally determined that the, if any, of such potential claims

---

[32]     *See* Whittman Decl. ¶ 30.
[33]     *See* Whittman Decl. ¶ 31.

does not exceed the benefits from the settlement embodied in the UPS Settlement.  The Debtors maintain that the UPS Settlement is fair and reasonable, is in the best interests of the Debtors' Estates and creditors, maximizes recoveries, and should be approved under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

### 4.  Section 1123(b)(3): Retention of Claims or Equity Interests

44.    Section 1123(b)(3) also provides that a plan may "provide for the retention and enforcement by the debtor" of claims or interests belonging to the debtors.[34]  Section 7.10 of the Combined Disclosure Statement and Plan preserves and vests any and all Causes of Action that are not expressly released or waived under the Combined Disclosure Statement and Plan or any Final Order in the Wind-Down Debtor on the Effective Date.  The Debtors and the Plan Administrator expressly reserve those certain claims or Causes of Action as and to the extent set forth in the Plan, including those identified in <u>Exhibit B</u> of the Plan Supplement.[35]  Accordingly, the Combined Disclosure Statement and Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

### 5.  The Releases, Exculpation, Section 1125(e), and Injunction Provisions Under the Combined Disclosure Statement and Plan are Appropriate Under Section 1123(b)(3) and (6)

45.    Section 1123(b)(6) of the Bankruptcy Code permits a plan to include, as a catchall, any appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code. In accordance with section 1123(b)(6) of the Bankruptcy Code, Article VIII of the Combined Disclosure Statement and Plan provides for (a) the Debtors' release of certain parties, (b) consensual releases to the Debtors and certain other parties in interest, (c) a provision granting all protections and benefits afforded by section 1125(e) of the Bankruptcy Code, and

---

[34]    11 U.S.C. § 1123(b)(3)(B).
[35]    *See* Combined Disclosure Statement and Plan, Art. VII.

(d) exculpation and injunction provisions prohibiting parties from pursuing Claims and Causes of Action released under the Combined Disclosure Statement and Plan.

46.    These provisions are proper because, among other things, they are the product of arm's-length negotiations, are supported by substantial consideration provided by the beneficiaries thereof, have been critical to obtaining the support of the various constituencies for the Combined Disclosure Statement and Plan, and, as part of the Combined Disclosure Statement and Plan, have received overwhelming support from the creditors that voted for the Combined Disclosure Statement and Plan.[36]   In particular, the Committee is supportive of the Combined Disclosure Statement and Plan, including the releases embodied therein.[37]   The releases, exculpation, and injunction provisions of the Combined Disclosure Statement and Plan are fair and equitable, given for valuable consideration, and in the best interests of the Debtors and the chapter 11 cases.  None of these provisions are inconsistent with the Bankruptcy Code, and therefore, the requirements of section 1123(b) of the Bankruptcy Code are satisfied.  The principal terms of these provisions of the Combined Disclosure Statement and Plan are discussed below.

### a.    The Releases by the Debtors Are Appropriate Under Section 1123(b)(3)

47.    The Combined Disclosure Statement and Plan provides for the Debtor Release (a release by the Debtors of the Released Parties),[38] as more fully set forth in Section 8.3 of the Combined Disclosure Statement and Plan (the "Debtor Release").  Section 1123(b)(3)(A) of the

---

[36]     *See* Whittman Decl. ¶ 23.
[37]     *See id.*
[38]     Under the Combined Disclosure Statement and Plan, the term "Released Parties" means "collectively, and in each case in its capacity as such:  (a) the Plan Administrator; (b) the Committee and each of its members; (c) all Holders of Claims or Interests that (i) vote to accept the Plan, or (ii) abstain from voting on the Plan and do not affirmatively opt out of the releases provided under, or object to, the Plan; and (d) with respect to each of the Debtors, the Wind-Down Debtor, and each of the foregoing Entities in clauses (a) through (c), the Related Parties of such Entities; *provided*, that any Holder of a Claim or Interest that opts out of the releases or objects to the Plan shall not be a "Released Party."  For the avoidance of doubt, after the Effective Date, SVB Capital shall be a Released Party.

Bankruptcy Code states that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[39] The Bankruptcy Code thus clearly contemplates that the Debtors are permitted to settle or release any claim or cause of action that they might otherwise have against a third party. When considering releases by a debtor of non-debtor third parties pursuant to section 1123(b)(3)(A), the appropriate standard is whether "the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[40] As an exercise of its business judgment, a debtor's decision to release claims against third parties under a plan is afforded deference.[41]

48.     Additionally, some courts in this District have identified the following list of non-exhaustive factors in determining the propriety of a debtor release, commonly known as the *Zenith* or *Master Mortgage* factors (the "*Zenith* Factors"):[42]

> (1)     an identity of interest between the debtor and the non-debtor such that a suit against the non-debtor will deplete the estate's resources;
>
> (2)     a substantial contribution to the plan by the non-debtor;
>
> (3)     the necessity of the release to the reorganization;
>
> (4)     the overwhelming acceptance of the plan and release by creditors and interest holders; and

[39]     11 U.S.C. § 1123(b)(3)(A).

[40]     *U.S. Bank. Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010).

[41]     *See, e.g., In re Spansion*, 426 B.R. at 140 ("It is not appropriate to substitute the judgment of the objecting creditors over the business judgment of the Debtors."); *Heroes World Dist., Inc. v. MAFCO Holdings, Inc. (In re Marvel Entm't Grp., Inc.)*, 273 B.R. 58, 78 (D. Del. 2002) ("[U]nder the business judgment rule. a court will not interfere with the judgment of a board of directors unless there is a showing of gross and palpable overreaching. Thus, under the business judgment rule, a board's decisions will not be disturbed if they can be attributed to any rational purpose and a court will not substitute its own notions of what is or is not sound business judgment.") (internal quotation marks and citations omitted).

[42]     The *Zenith* factors were first articulated as the standard for approving a third-party release (*i.e.*, a provision releasing a non-debtor's claim against another non-debtor.) *See In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994). Later, in *Zenith*, this Court applied the *Master Mortgage* factors to a debtor release. *See In re Zenith Elec. Corp.*, 241 B.R. 92, 110–11 (Bankr. D. Del. 1999) (citing *Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994)). As such, the Debtors have applied the *Zenith* Factors to the Debtor Release and, for the reasons set forth herein, submits that the Debtor Release in this case satisfy the *Zenith* Factors and should be approved.

(5)    the payment of all or substantially all of the claims of the creditors and interest holders under the plan.

49.    As a list of nonconjunctive factors, these factors provide a way of "weighing the equities of the particular case after a fact-specific review."[43]  Importantly, not each factor is relevant in every case and consensual releases may be approved where only one or two factors are present.[44]

50.    The Debtor Release was the product of good faith, arm's-length negotiations throughout the course of the plan process by the Debtors, the Prepetition Lenders, the Committee, and various other parties in interest.[45]  Additionally, the Debtor Release meets the *Zenith* Factors and should be approved.

51.    *First*, each of the Released Parties, as a stakeholder and critical participant in the plan process, shares a common goal with the Debtors in seeing the Combined Disclosure Statement and Plan succeed and would have been unlikely to participate in the negotiations and compromises that led to the ultimate formation of the Combined Disclosure Statement and Plan, the Global Settlement, the UPS Settlement, the Palantir Settlement, the Purchase Agreement, and Sale Order without the Debtor Release.  Like the Debtors, these parties support confirmation of the Combined Disclosure Statement and Plan.[46]  All of the Released Parties have played an instrumental role in facilitating a value-maximizing sale of the Debtors' business and subsequent wind-down.[47]  In

---

[43]    *Indianapolis Downs*, 486 B.R. at 303.

[44]    *See, e.g., In re Caribbean Petroleum Corp.*, 512 B.R. 774, 778 (Bankr. D. Del. 2014) (finding "no question" that release of debtor's claims was proper because non-debtor "provided Debtors with substantial consideration in exchange for the releases, providing the justification for the Court approving the releases"); *In re Spansion*, 426 B.R. at 143 (approving release where releasees were actively involved in negotiating the plan and four of five creditor classes voted overwhelmingly in favor).

[45]    *See* Whittman Decl. ¶ 23.

[46]    *See In re Abeinsa Holding, Inc.,* 562 B.R. 265, 284 (Bankr. D. Del. 2016) (finding that "there is an identity of interest between the Debtors and the released parties arising out the shared common goal of confirming and implementing the Plan."); *see also Zenith,* 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed and the company reorganize").

[47]    *See* Whittman Decl. ¶ 25.

particular, the directors and officers of the Debtors that are Released Parties were heavily involved in the Debtors' process leading up to the filing of the chapter 11 cases and continued to support and facilitate the Debtors' efforts during these chapter 11 cases.[48]  Without such contributions, the value-maximizing transactions embodied in the Sale Transaction and the Plan would not have been achieved.  Furthermore, such Debtor Release is being given in exchange for their efforts to develop and implement a restructuring strategy that facilitated the Debtors' smooth transition into chapter 11 as well as their management of operations throughout the pendency of these chapter 11 cases, which also preserved and maximized the value of the Debtors' estates.[49]

52.     *Second,* the substantial contributions are clear.  As set forth in the Combined Plan and Disclosure Statement, Released Parties will make meaningful financial contributions—whether in the form of cash, claims waivers, or otherwise—that enhance creditor recoveries.  In addition, Released Parties played an integral role in the formation of the Combined Disclosure Statement and Plan and have expended significant time and resources analyzing and negotiating the issues present in these chapter 11 cases to reach a value-maximizing outcome.  As Delaware bankruptcy courts have recognized, a wide variety of acts may illustrate a substantial contribution to a debtor's reorganization.[50]  Here, the value contributed by the Released Parties is certainly substantial.  The Debtor Release is narrowly tailored to estate fiduciaries in these chapter 11 cases and those parties whose contributions have been critical to facilitate and implement the highly consensual Combined Disclosure Statement and Plan.

---

[48]     *Id.*

[49]     *Id.*; *see, e.g., In re Tribune Co.*, 464 B.R. at 187.

[50]     *See Id.* at 304 (finding that the non-debtor party had substantially contributed by performing services for the debtors post-petition without receiving compensation); *In re Wash. Mut., Inc.*, 442 B.R. 314, 347 (Bankr. D. Del. 2011) (finding substantial contribution required the contribution of "cash or anything else of a tangible value to the [plan of reorganization] or to creditors"); *In re Zenith Elecs. Corp.,* 241 B.R. at 111 (finding that prepetition contribution of work in negotiating a plan constituted adequate consideration for debtor's release).

53.     *Third,* the Debtor Release is essential because it constitutes an integral term of the Combined Disclosure Statement and Plan.  Indeed, absent the Debtor Release, it is highly unlikely the Released Parties would have agreed to support the Combined Disclosure Statement and Plan.  As described above, each of the Released Parties contributed substantial value to these chapter 11 cases and did so with the understanding that they would receive releases from the Debtors.[51]  In the absence of these parties' support, the Debtors would not be in a position to confirm the Combined Disclosure Statement and Plan and expeditiously conclude these chapter 11 cases.  The Debtor Release, therefore, is essential to the Plan and these chapter 11 cases.

54.     *Fourth,* as evidenced by the Voting Report and noted herein, in the aggregate, support for the Combined Disclosure Statement and Plan is nearly unanimous—save one limited objection from the U.S. Trustee to the exculpation.[52]  No party in interest opposes the Debtor Release.  By Class, creditors in Class 4 representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Combined Disclosure Statement and Plan.  Creditors in Class 5 representing 99.8 percent by amount of voted claims and 90.9 percent by number in the aggregate voted to accept the Combined Disclosure Statement and Plan[53]  Given the critical nature of the Debtor Release, these figures evidence the Debtors' key stakeholders' support for the Debtor Release and the Combined Disclosure Statement and Plan.

55.     *Fifth,* the Combined Disclosure Statement and Plan provides for meaningful recoveries under the circumstances for all creditors potentially giving up colorable claims under the releases.  As shown in the Liquidation Analysis annexed to the Combined Disclosure Statement and Plan, the ranges of recoveries for Holders of Claims are materially higher under the Combined

---

[51]     *See* Whittman Decl. ¶ 25.
[52]     *See* Voting Report, Ex. A.
[53]     *See id.*

Disclosure Statement and Plan than they would have been in a chapter 7 liquidation scenario.[54] The Combined Disclosure Statement and Plan maximizes value and provides meaningful recoveries for all stakeholders under the circumstances.

56.    For the reasons set forth above, and as supported by the Whittman Declaration, the *Zenith* factors support approval of the Debtor Release.  Moreover, the breadth of the Debtor Release is consistent with those regularly approved in this jurisdiction and others.[55]  The Debtors have satisfied the business judgment standard in granting the Debtor Release under the Combined Disclosure Statement and Plan.  The Debtor Release easily meets the applicable standard.  It is fair, reasonable, and in the best interests of the Debtors' Estates.  The Court should approve the Debtor Release.

> **b.    The Third-Party Release Is Consensual, Appropriate, and Complies with Section 1123(b)(6) of the Bankruptcy Code**

57.    Section 8.4 of the Combined Disclosure Statement and Plan of the Combined Disclosure Statement and Plan contains an appropriately tailored consensual third-party release by the Releasing Parties[56] (the "Third-Party Release") of the Released Parties.  The Third-Party

---

[54]    *See* Combined Disclosure Statement and Plan, Ex. A.

[55]    *See, e.g., In re One Aviation Corp.,* No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) (approving Plan providing for definition of Released Parties including, among others, the Debtors' directors and officers); *In re Blackhawk Mining LLC,* No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019) (same); *In re Checkout Holding Corp.,* No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) (same); *In re TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) (same); *In re Samson Resources Corp.,* No. 14-11934 (CSS) (Bankr. D.Del. Feb. 13, 2017) (same); *In re Horsehead Holding Corp.,* Case No. 16-10287 (CSS) (Bankr. D. Del. Sep. 9, 2016) (same).

[56]    Under the Combined Disclosure Statement and Plan, the term "Releasing Parties" means "collectively, and in each in case in its capacity as such:  (a) the Debtors; (b) the Committee and each of its members; (c) each Holder of a Claim or Interest that (x) votes to accept or reject, or are deemed to accept, the Plan, or (y) abstains from voting on the Plan, and, in the case of either (x) or (y), does not opt out of the voluntary release contained in Section 8.4 hereof by checking the opt out box on the ballot, and returning it in accordance with the instructions set forth thereon, or file an objection to the Plan, indicating that they opt not to grant the releases provided in the Plan; and (d) the Related Parties of the foregoing but only to the extent such Related Party would be obligated to release under principles of agency if it were so directed by the applicable Person or Entity in clauses (a) through (c).  For the avoidance of doubt, after the Effective Date, SVB Capital shall be a Releasing Party."

Release is an integral part of the Combined Disclosure Statement and Plan and should be approved given that it is fully consensual.

> i.   *The Third-Party Release Is Consensual Because the Releasing Parties Had a Right to Opt Out of or Object to the Third-Party Release*

58.   Third-party releases are consensual as applied to holders of claims deemed to accept a plan.[57]   Moreover, where parties receive sufficient notice of a plan's release provisions and have an opportunity to object to or opt out of the release and fail to do so, the releases are consensual.[58]   Specifically, in cases in which holders of claims or equity interests had an opportunity, but chose not, to opt out of third-party releases, courts have approved third-party releases as consensual.   For example, in *Indianapolis Downs*, the court, approving an opt out release, found that:

> As for those impaired creditors who abstained from voting on the [p]lan, or who voted to reject the [p]lan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots.[59]

59.   Each of the Releasing Parties has consented to the Third-Party Release by choosing not to opt out of the Third-Party Release despite being provided with the opportunity to do so.

---

[57]   *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 304-05 (Bankr. D. Del. 2013) (approving third-party release that applied to unimpaired holders of claims deemed to accept the plan as consensual).

[58]   *See id.* at 306 ("As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots.  Under these circumstances, the Third-Party Releases may be properly characterized as consensual and will be approved."); *see also In re Alpha Latam Mgmt., LLC*, 21-11109 (JKS) (Bankr. D. Del. Mar. 14, 2022) [Docket No. 651 at 11:6–22] ("Importantly, I find the third-party releases are consensual. . . The ballot contained an opt out election box and holders had the right to opt out of the releases.  Unimpaired holders in non-voting classes were provided with a notice of non-voting status that included the proposed third-party releases, prominent instructions on the right to object to the releases, and conspicuous disclaimers that the releases would be binding on holders if they did not timely object to the plan.  As I have previously ruled, an opt-out mechanism is a valid means of obtaining consent.  The court can imply consent from a creditor, not opting out or objecting to releases contained in a plan.").

[59]   *See* 486 B.R. at 306.

60.     *First,* a holder of a claim, including a claim that is impaired under a plan, may be deemed to consent to a third-party release if the holder is provided with ample notice of the third-party release and is provided with an opportunity to opt out of the third-party release—even if a creditor abstains from voting.[60] Here, Holders of Claims in Classes 4 and 5 are Impaired and entitled to vote to accept or reject the Combined Disclosure Statement and Plan.  Each such Holder was provided with ample notice and had an opportunity to affirmatively opt out of the Third-Party Release by checking the opt out box on the ballot sent to each holder.  Moreover, the Debtors provided every known holder of a Claim with an opportunity to opt out of the Third-Party Release and made every effort to ensure that each holder of a Claim had notice of the Third-Party Release and the consequences of failing to opt out of the Third-Party Release.  The Debtors also published the Confirmation Hearing Notice in the *New York Times*, which clearly and conspicuously advised all parties in interest to carefully review and consider the Combined Disclosure Statement and Plan, including the Third-Party Release.

61.     *Second,* unimpaired creditors—who are being paid in full—can be bound to third-party releases when they have not objected to the Plan.  Furthermore, the Combined Disclosure Statement and Plan is clear that:

> **. . . notwithstanding anything to the contrary herein, the provisions of this Section 8.4 shall not apply with respect to any unimpaired Claim until such unimpaired Claim has been paid in full in the Allowed amount of such Claim determined in accordance with applicable law, or on terms agreed to between the holder of such Claim and the Plan Administrator or the**

---

[60]     *See Indianapolis Downs*, 486 B.R. at 306; *see also Spansion, Inc.* 426 B.R. at 144 (finding that returning a ballot is not essential to demonstrating consent to a release by unimpaired class); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 218 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 CIV. 10156 (LAK), 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *aff'd in part, rev'd in part on other grounds*, 627 F.3d 496 (2d Cir. 2010) (determining that adequate notice of the proposed release was given to impaired creditors, and the ballots set forth the effect of abstaining without opting out of the release).

> **Debtors, at which time this Section 8.4 shall apply in all respects as to the applicable unimpaired Claim. . . . .**[61]

Courts in this District have routinely recognized that third-party releases are consensual and appropriate where holders of unimpaired claims or interests are provided with detailed instructions on how to opt out of releases, including by interposing an objection to a plan, but nevertheless do not do so.[62]

62.    The Holders of Claims in Unimpaired Classes (Classes 1, 2, and 3) are being paid in full and are deemed to have accepted the Third-Party Release.  The Unimpaired Classes received (a) the Confirmation Hearing Notice, and (b) an Unimpaired Non-Voting Status Notice, each of which included the Third-Party Release and prominent instructions on how to object to the Combined Disclosure Statement and Plan, including the releases therein.  Thus, affected parties were on notice of the Third-Party Release and of their ability to opt out.

63.    Tellingly, six parties in interest have opted out of the Third-Party Release, illustrating that Holders were in fact adequately put on notice of their ability to opt out.[63]  Not one party opposes the Plan on the basis of the Third-Party Release.  The Third-Party Release is consensual as to all Claims Holders who affirmatively consented to the Third-Party Release.  The Court should approve the Third-Party Release.

---

[61]    *See* Combined Disclosure Statement and Plan, Art. VIII.

[62]    *See, e.g., In re Spansion, Inc.,* 426 B.R. at 144 (finding that a release was not overreaching to the extent it bound unimpaired classes deemed to have accepted the plan as those creditors had not objected to the release, were being paid in full, and had received adequate consideration for the release); *see also In re Indianapolis Downs, LLC,* 486 B.R. at 306 ("In this case, the third-party releases in question bind certain unimpaired creditors who are deemed to accept the Plan: these creditors are being paid in full and therefore received consideration for the releases."); *see also In In re Alpha Latam Mgmt., LLC,* 21-11109 (JKS) (Bankr. D. Del. Mar. 14, 2022) [Docket No. 651 at 11:22–24] ("The court can imply consent from a creditor, not opting out or objecting to releases contained in a plan.  Creditors have an obligation to read their mail and respond if appropriate.  This procedure is not unique and it's routinely utilized in the law.").

[63]    *See* Voting Report, Ex. B.

c.    **The Exculpation under the Combined Disclosure Statement and Plan Is Appropriate under Section 1123(b)(6)**

64.    Section 8.5 of the Combined Disclosure Statement and Plan should also be approved under the standards established by the Third Circuit.  Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and whether the exculpation provision was necessary for plan negotiations.[64]

65.    Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and whether the exculpation provision was necessary for plan negotiations.[65]  Exculpation provisions that are limited to claims not involving actual fraud, willful misconduct, or gross negligence, are customary and generally approved in this District under appropriate circumstances.[66]  Unlike third-party releases, exculpation provisions do not affect the liability of third parties *per se*, but rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an "Exculpated Party" for acts arising out of the Debtors' restructuring.[67]

---

[64]    *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (observing that the debtors and certain other parties, such as the unsecured creditors' committee members and the professionals retained by such committee, who provided services to assist in the reorganization, are entitled to a "limited grant of immunity . . . for actions within the scope of their duties").

[65]    *See, e.g., In re Enron Corp.,* 326 B.R. 497, 503 (S.D.N.Y. 2005) (evaluating the exculpation clause based on the manner in which the clause was made a part of the agreement, the necessity of the limited liability to the plan negotiations, and that those who participated in proposing the plan did so in good faith).

[66]    *See Wash. Mut.,* 442 B.R. at 350-51 (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate).

[67]    *See In re PWS Holding Corp.,* 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l Holdings, Inc.,* 2010 WL 2745964, at *10 (CSS) (Bankr. D. Del. Apr. 29, 2010) (approving a similar exculpation provision as that provided for under the Plan); *In re Spansion,* 2010 WL 2905001, at *16 (Bankr. D. Del. April 16, 2010) (same).

66.     Here, the Exculpation Provision is appropriate under applicable law because it is part of a Combined Disclosure Statement and Plan proposed in good faith, is appropriately limited in scope, and is being granted only to the Exculpated Parties.[68]  Furthermore, the Exculpation Provision is limited to estate fiduciaries and acts or omissions taken in furtherance of these chapter 11 cases.  No Exculpated Party is being exculpated for acts or omissions that constitute actual fraud, willful misconduct or gross negligence.  The protection from liability that the Exculpation Provision provides to these parties is appropriate given their efforts in the chapter 11 cases and the plan process.

67.     The Debtors and their officers, directors, and professionals, actively negotiated with Holders of Claims and Interests across the Debtors' capital structure in connection with the Combined Disclosure Statement and Plan and these chapter 11 cases.  Such negotiations were extensive and the resulting agreements were implemented in good faith with a high degree of transparency, and as a result, the Plan enjoys nearly unanimous support.[69]  The Exculpated Parties played a critical role in negotiating, formulating, and implementing the Disclosure Statement, the Combined Disclosure Statement and Plan, the Global Settlement, the UPS Settlement, the Palantir Settlement, the Purchase Agreement, the Sale Order, and related documents in furtherance of the Sale Transaction and other transactions contemplated by the Combined Disclosure Statement and Plan.[70]  Accordingly, the Court's findings of good faith vis-à-vis these chapter 11 cases should also extend to the Exculpated Parties.

68.     Significantly, the Combined Disclosure Statement and Plan has received overwhelming support from creditors.  The U.S. Trustee is the one and only party-in-interest that

---

[68]     The revised definition of "Exculpated Parties" is set forth below in the response to the UST's Limited Objection.
[69]     *See, e.g.*, Voting Report, Ex. A.
[70]     *See* Whittman Decl. ¶ 23.

has raised an issue with the scope of the Exculpation Provision, particularly as it relates to so-called "related parties". The Debtors respond to such limited objection below. For the reasons set forth herein, the Exculpation Provision provides reasonable and appropriate protections and should be approved.

### d. The Section 1125(e) Provision Is Appropriate and Complies with the Bankruptcy Code

69. Section 8.6 of the Combined Disclosure Statement and Plan provides that each of the 1125(e) Parties are entitled to all of the protections and benefits provide by section 1125(e) of the Bankruptcy Code in connection with the 1125(e) Parties' solicitation and participation in relation to the Plan (the "Section 1125(e) Provision").[71] Section 1125(e) of the Bankruptcy Code provides, in relevant part, that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title. . . is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities." These protections are fair and appropriate under both applicable law[72] and the facts and circumstances of these chapter 11 cases. The Section 1125(e) Provision is the product of arm's-length negotiations, was critical to obtaining the support of various constituencies for the Plan, and, as part of the Combined Disclosure Statement and Plan, has received support from the Debtors' major stakeholders.[73] The Section 1125(e) Provision was important to the development

---

[71]    "1125(e) Parties" means "collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Committee and each of its members; (c) SVB Capital; (d) SVB; (e) Palantir; (f) UPS; (g) the Global Settlement Parties; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), the Related Parties of such Entities.financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such."

[72]    11 U.S.C. § 1125(e).

[73]    *See* Whittman Decl. ¶ 24.

of a feasible, confirmable plan, and the 1125(e) Parties participated in these chapter 11 cases in reliance upon the protections afforded to those constituents by the Section 1125(e) Provision.[74]

70.    The 1125(e) Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in solicitation and participation in relation to the Combined Disclosure Statement and Plan as it relates to the Debtors, and they should be entitled to protection from exposure to any lawsuits filed by disgruntled creditors or other unsatisfied parties.[75]  Here, the Debtors and their officers, directors, and professionals, actively negotiated with the Debtors' stakeholders in connection the solicitation and participation in relation to the Combined Disclosure Statement and Plan and these chapter 11 cases.[76]  Such negotiations were extensive and the resulting agreements were implemented in good faith with a high degree of transparency, and as a result, the Plan enjoys near unanimous support from creditors.[77]  The 1125(e) Parties played a critical role in the solicitation and participation in the Plan.  Furthermore, the Section 1125(e) Provision is limited to acts during these chapter 11 cases and does not extend beyond such time period, and is tailored to only provide such protections for acts or omissions in connection with the solicitation and participation in the Plan to the extent permissible by section 1125(e) of the Bankruptcy Code.  Accordingly, the Court's findings of good faith vis-à-vis the Debtors' chapter 11 cases should also extend to the 1125(e) Parties.

71.    Under the circumstances, it is appropriate for the Court to approve the Section 1125(e) Provision, and to find that the 1125(e) Parties have acted in good faith and in compliance with the law.

---

[74]    *Id.*
[75]    *See* Whittman Decl. ¶ 23.
[76]    *Id.*
[77]    *See* Voting Report.

e.    **The Injunction under the Combined Disclosure Statement and Plan Is Appropriate and Should Be Approved**

72.    Section 8.7 of the Combined Disclosure Statement and Plan (the "Injunction") merely implements the Combined Disclosure Statement and Plan's release and exculpation provisions, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors, the Wind-Down Debtor, the Released Parties, the 1125(e) Parties, the Plan Administrator, or the Exculpated Parties on account of or in connection with or with respect to any such claims or interests released, discharged, or subject to exculpation.  Thus, the Injunction is a key provision of the Combined Disclosure Statement and Plan because it enforces the Exculpation Provision that is centrally important to the Combined Disclosure Statement and Plan.

73.    In addition, each Holder of a Claim or Interest was provided with a notice that contained the express language of the Debtor Release, the Third-Party Release, the Exculpation Provision, the 1125(e) Provision, and the Injunction, all in bold font.  No party in interest opposes the Injunction.

74.    Accordingly, the Debtors respectfully submit that the Injunction is appropriate, narrowly tailored to achieve its purpose, and should be approved.

II.    **The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code.**

75.    The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code—here, sections 1125 and 1126.

A.    **The Debtors Have Complied with Section 1125, and the Disclosure Statement Should be Approved on a Final Basis**

76.    The cases and legislative history discussing section 1129(a)(2) indicate that this section principally embodies the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code.  Section 1125 prohibits the solicitation of acceptances or rejections of a plan

"unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[78] Section 1125 ensures that parties in interest are adequately informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan.[79]

77.     On December 19, 2022, the Debtors filed the Solicitation Motion, which described in detail the legal and factual bases supporting a finding that the Disclosure Statement contains "adequate information" as defined in section 1125(a)(1) of the Bankruptcy Code.[80]  The Debtors hereby incorporate the Debtors' arguments contained in the Solicitation Motion by reference as if fully set forth herein.

78.     On January 13, 2023, the Court approved the Combined Disclosure Statement and Plan on a conditional basis for solicitation purposes in accordance with section 1125(a)(1) of the Bankruptcy Code.[81]

79.     The Court also approved the contents of the Solicitation Packages provided to Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan, the nonvoting materials provided to creditors and equity holders not entitled to vote on the Combined Disclosure Statement and Plan, and the relevant dates for voting and objecting to the Combined Disclosure Statement and Plan.[82] The Debtors, through its Claims and Noticing Agent, complied with the content and delivery requirements of the Solicitation Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code.

---

[78]     11 U.S.C § 1125(b).
[79]     *See Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003).
[80]     *See* Solicitation Motion, ¶¶ 15-18.
[81]     *See* Solicitation Order.
[82]     *Id.*

80.     The Debtors have also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each Holder of a Claim or Interest in a particular Class.  The Debtors transmitted the Combined Disclosure Statement and Plan to all parties entitled to vote on the Combined Disclosure Statement and Plan.

81.     For the reasons set forth herein and in the Solicitation Motion, the Debtors believe the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125.  Accordingly, the Debtors submit that the Debtors have complied with section 1125 and the Court should approve the Disclosure Statement on a final basis.

**B.      The Debtors' Solicitation Complies with Section 1126 of the Bankruptcy Code**

82.     Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan.  Specifically, only Holders of Allowed Claims and Interests in Impaired classes of Claims or Interests that will receive or retain property under a plan on account of such Claims or Interests may vote to accept or reject such plan.  Classes that are Unimpaired under the Combined Disclosure Statement and Plan are conclusively deemed to accept.[83]  Conversely, classes that are entitled to nothing under the Combined Disclosure Statement and Plan are conclusively deemed to reject.[84]

83.     In accordance with section 1126 of the Bankruptcy Code, the Debtors solicited acceptances or rejections of the Combined Disclosure Statement and Plan from the Holders of Claims in Classes 4 and 5, which are the only Classes entitled to vote on the Combined Disclosure Statement and Plan.  As provided in the Voting Report, Classes 4 and 5 voted to accept the Combined Disclosure Statement and Plan.[85]

---

[83]     11 U.S.C. § 1126(f).
[84]     11 U.S.C. § 1126(g).
[85]     *See* Voting Report, Ex.A.

### III.    Section 1129(a)(3): The Combined Disclosure Statement and Plan has Been Proposed in Good Faith and Not by Any Means Forbidden by Law

84.     Section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  The Third Circuit has found that "[f]or purposes of determining good faith under section 1129(a)(3) the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."[86]  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan.[87]

85.     The Debtors have met their good faith obligation under the Bankruptcy Code. Throughout these cases, the Debtors have focused on maximizing value for their various stakeholders.  The Combined Disclosure Statement and Plan, Plan Supplement, and all documents necessary to effect the Combined Disclosure Statement and Plan were developed after substantial analysis and negotiations between the Debtors and other key constituents, including the Committee and the Prepetition Lenders, and were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful and speedy wind-down of the Debtors' operations after the sale of substantially all of the Debtors' assets.  Moreover, the Combined Disclosure Statement and Plan is the product of arm's-length negotiations among the Debtors and various parties-in-interest, including the Committee.  It is clear that the Combined Disclosure Statement and Plan has been proposed in good faith as interpreted under the Bankruptcy Code in that the Combined Disclosure Statement and Plan will achieve a result consistent with the overall objectives and purposes of the Bankruptcy Code.[88]

---

[86]     *PWS*, 228 F.3d at 242 (internal quotations, citations, and modifications omitted).

[87]     *In re Sun Country Dev., Inc*., 764 F.2d 406, 408 (5th Cir. 1985).

[88]     *See In re Am. Capital Equip. LLC*, 688 F.3d 145 (3d. Cir. 2012) (internal quotations omitted) (court noting that the important point of a good faith inquiry is whether the plan itself will achieve a result consistent with objectives and purposes of the bankruptcy code.

86.     Based on the foregoing, the facts and record of these chapter 11 cases and the record

to be made at the Confirmation Hearing, the Combined Disclosure Statement and Plan and related

documents have been proposed in good faith and not by any means forbidden by law, thereby

satisfying section 1129(a)(3) of the Bankruptcy Code.  Indeed, no party has asserted otherwise.[89]

## IV.     Section 1129(a)(4): The Combined Disclosure Statement and Plan Provides for Court Approval of Certain Administrative Payments

87.     Section 1129(a)(4) requires that certain professional fees and expenses paid by the

plan proponent, by the debtor, or by a person issuing securities or acquiring property under the

plan, be subject to approval of the Court as reasonable.[90]

88.     Here, all payments made or to be made by the Debtors for services or for costs or

expenses in connection with these chapter 11 cases prior to the Effective Date, including all

Professional Fee Claims, have been approved by, or are subject to approval of, the Court.  Section

2.2 of the Combined Disclosure Statement and Plan provides that all final requests for payment of

Professional Fee Claims for services rendered through the Effective Date shall be filed and no later

than thirty (30) days after the Effective Date and all such final requests will be subject to approval

by the Bankruptcy Court in accordance with the procedures established by the Bankruptcy Code,

the Bankruptcy Rules, and prior Bankruptcy Court orders.  Accordingly, the Combined Disclosure

Statement and Plan fully complies with the requirements of section 1129(a)(4).

---

[89]     *See* Bankruptcy Rule 3020(b)(2) ("The court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002.  If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.").

[90]     *See In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

**V.      Section 1129(a)(5): The Combined Disclosure Statement and Plan Discloses Post-Effective Date Management**

89.      Section 1129(a)(5) of the Bankruptcy Code requires: (i) that the proponent of a plan disclose the identity of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (ii) that the appointment of such individuals be consistent with the interests of creditors and shareholders and with public policy; and (iii) that the proponent disclose the identity of any insider that will be employed by the reorganized debtor and the nature of the compensation to be provided to such insider.

90.      The Debtors have satisfied the foregoing requirements to the extent applicable.  As noted, the Debtors have disclosed in the Plan Supplement that Patrick McCusker is proposed to serve as Plan Administrator after the Effective Date.  The appointment of Mr. McCusker to the role of Plan Administrator is consistent with the interests of creditors.  Mr. McCusker, as disclosed in the Plan Supplement, will not be paid any compensation from the Wind-Down Debtor separate and apart from that to which he is entitled by the Purchaser.

**VI.     Section 1129(a)(6): The Combined Disclosure Statement and Plan Does Not Require Governmental Approval of Rate Changes**

91.      Section 1129(a)(6) permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan.  As the Combined Disclosure Statement and Plan does not provide for any rate changes, section 1129(a)(6) is inapplicable here.

**VII.    Section 1129(a)(7): The Combined Disclosure Statement and Plan Is in the Best Interests of Creditors**

92.      Section 1129(a)(7) is often referred to as the "best interests test" or the "liquidation test," and provides:

With respect to each impaired class of claims or interests –

(A) each holder of a claim or interest of such class –

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date...

93.    The best interests test focuses on individual dissenting creditors or equity interest holders rather than classes of claims or equity interests.[91]    Under the best interests test, each non-accepting creditor or equity holder must "receive . . . on account of such claim . . . property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive. . . if the debtor were liquidated under chapter 7. . . on such date."[92]    The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation.[93]

94.    The Combined Disclosure Statement and Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Debtors, with the assistance of their financial advisors, have prepared a liquidation analysis comparing the range of recoveries generated under the Combined Disclosure Statement and Plan with a hypothetical chapter 7 liquidation (the "Liquidation Analysis").[94]

95.    As set forth in the Liquidation Analysis and the Whittman Declaration, confirmation of the Combined Disclosure Statement and Plan will provide each holder of an Allowed Claim with an equal or greater recovery than the value of any distributions if the chapter

---

[91]    *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 North LaSalle St. P'ship*, 526 U.S. 415, 434 (1999).
[92]    *Id.* at 442 n. 13, citing section 1129(a)(7); *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 228 (1996).
[93]    *See In re Smith*, 357 B.R. 60, 67 (Bankr. M.D.N.C. 2006), *appeal dismissed*, No. 1:07CV30, 2007 WL 1087575 (M.D.N.C. Apr. 4, 2007) ("In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions.") (citations omitted).
[94]    *See* Combined Disclosure Statement and Plan, Ex. A.

11 cases were converted to cases under chapter 7 of the Bankruptcy Code.[95]  If converted under chapter 7, the Debtors would incur the additional costs of a Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the Chapter 7 trustee.[96]  These costs would reduce potential distribution to Allowed Claims on a dollar-for-dollar basis.[97]  Conversion also would likely delay the liquidation process and the ultimate distribution, if any, to unsecured creditors.[98]

96.     Accordingly, because the recoveries provided under the Combined Disclosure Statement and Plan would exceed the recoveries that would be available in a chapter 7 liquidation, the Combined Disclosure Statement and Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

## VIII.   Section 1129(a)(8) Acceptance by Impaired Classes

97.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either vote to accept a plan or be unimpaired under that plan.[99]  As evidenced by the Voting Report, Classes 4 and 5 against each Debtor voted to accept the Combined Disclosure Statement and Plan.

98.     As discussed above, Classes 1 and 2 are deemed to have accepted the Combined Disclosure Statement and Plan.  Holders of Claims and Interests in Classes 7A and 7B are deemed to reject the Combined Disclosure Statement and Plan; however, the Combined Disclosure Statement and Plan may still be confirmed over the dissent of Classes 7A and 7B because, as set forth below, the Debtors have satisfied the requirements for cramdown under section 1129(b) of the Bankruptcy Code.

---

95      *See* Whittman Decl. ¶ 44.
96      *Id.*
97      *Id.*
98      *Id.*
99      11 U.S.C. § 1129(a)(8).

IX. **Section 1129(a)(9): The Combined Disclosure Statement and Plan Complies with Statutorily Mandated Treatment of Administrative Claims and Priority Tax Claims**

99.    Section 1129(a)(9) of the Bankruptcy Code requires that holders of claims for administrative expenses allowed under section 503(b) of the Bankruptcy Code must receive on the effective date cash equal to the allowed amount of such claims.  The treatment of Administrative Claims and Priority Tax Claims, as set forth in Section 2.1 of the Combined Disclosure Statement and Plan and in the proposed form of Confirmation Order, is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the Combined Disclosure Statement and Plan complies with section 1129(a)(9) of the Bankruptcy Code.

X. **Section 1129(a)(10): The Combined Disclosure Statement and Plan Has Been Accepted by at Least One Impaired Class of Claims**

100.    Section 1129(a)(10) provides that if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. Classes 4 and 5 have accepted the Combined Disclosure Statement and Plan regardless of the votes of any insider(s).  Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(10).

XI. **Section 1129(a)(11): The Combined Disclosure Statement and Plan Is Feasible**

101.    Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition to confirmation, the Bankruptcy Court determine that a plan is feasible.  Specifically, the Bankruptcy Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  As described below, the Combined Disclosure Statement and Plan is feasible within the meaning of this provision.

102.    The feasibility test set forth in section 1129(a)(11) requires the Bankruptcy Court to determine whether a plan is workable and has a reasonable likelihood of success.  Moreover, "the feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed."

103.    Applying the foregoing legal standards, the Combined Disclosure Statement and Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.  The Combined Disclosure Statement and Plan provides for the completion of the Debtors' liquidation and the distribution of their assets in accordance with the priority scheme set forth in the Bankruptcy Code and the terms of the Combined Disclosure Statement and Plan.  Therefore, confirmation of the Combined Disclosure Statement and Plan will not be followed by the need for further financial reorganization of the Debtors, thereby satisfying (or eliminating the need to consider) section 1129(a)(11) of the Bankruptcy Code.

104.    In any event, the Combined Disclosure Statement and Plan is feasible.  The Plan Administrator will have sufficient assets to make distributions on account of Allowed Claims and accomplish its task under the Combined Disclosure Statement and Plan pursuant to the Wind-Down Budget and consideration made available to the Wind-Down Debtor from the Purchaser as part of the Purchase Agreement and Plan.  Moreover, the Debtors have already taken significant steps to wind down in an orderly fashion during the chapter 11 cases, including, without limitation, selling substantially all of the Debtors' assets with the Sale Transaction and, thereafter, advancing the process to finally wind down their estates.

105.    Based upon the foregoing, the Combined Disclosure Statement and Plan has more than a reasonable likelihood of success and satisfies the feasibility standard of section 1129(a)(11).

**XII.   Section 1129(a)(12): The Combined Disclosure Statement and Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930**

106.   Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under [28 U.S.C. § 1930], as determined by the court at the hearing on confirmation of the plan."  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [28 U.S.C. § 1930]" are afforded priority as administrative expenses.  In accordance with these provisions, Section 2.1 of the Combined Disclosure Statement and Plan provides that the Wind-Down Debtor shall be liable to pay any and all U.S. Trustee Fees when due and payable until the earliest of each particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.   Accordingly, the Combined Disclosure Statement and Plan complies with section 1129(a)(12).

**XIII.   Sections 1129(a)(13)-(16) Are Inapplicable**

107.   The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code and, as such, section 1129(a)(13) does not apply to the Combined Disclosure Statement and Plan.

108.   The Debtors are not required to pay domestic support obligations.  Accordingly, section 1129(a)(14) does not apply.

109.   The Debtors are not individuals.  Thus, section 1129(a)(15) does not apply.

110.   The Debtors are a moneyed, business, or commercial corporation.  Therefore, section 1129(a)(15), which applies only to debtors that are nonprofit entities or trusts, does not apply.

**XIV.   Section 1129(b): The Combined Disclosure Statement and Plan Satisfies the "Cramdown" Requirements**

111.   Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a

plan may be confirmed so long as the requirements set forth by section 1129(b) of the Bankruptcy Code are satisfied.[100]  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[101]

### A.    Section 1129(b)(1): The Plan Does Not Unfairly Discriminate

112.    Because Class 7A and Class 7B (the "Deemed Rejecting Classes") are deemed to have rejected the Combined Disclosure Statement and Plan, the requirements of Bankruptcy Code section 1129(a)(8) are not satisfied.  The Debtors therefore request confirmation of the Combined Disclosure Statement and Plan under section 1129(b) of the Bankruptcy Code, the "cramdown" provision, with respect to Class 7A (Fast Radius Interests) and Class 7B (Section 510(b) Claims).

113.    The Combined Disclosure Statement and Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes.[102]  Here, the Combined Disclosure Statement and Plan's treatment of the Deemed Rejecting Classes is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment and the Combined Disclosure Statement and Plan's classification scheme rests on a legally acceptable rationale.[103]  Claims and Interests in the Deemed Rejecting Classes are not similarly situated to any other Classes, given their distinctly different legal character from all other Claims and Interests.  The Combined Disclosure Statement and Plan's treatment of the Deemed Rejecting Classes is proper because no similarly situated class will receive more favorable treatment.  Furthermore, where the Combined

---

[100]        *See* 11 U.S.C. § 1129(b).
[101]        *See* 11 U.S.C. § 1129(b)(1); *In re Mallinckrodt PLC*, 2022 Bankr. LEXIS 273 (stating that a debtor must show no unfair discrimination and that the recovery is fair and equitable to each class of claims to confirm a cramdown plan).
[102]        *See* Whittman Decl.¶ 57.
[103]        *See* Whittman Decl. ¶ 57.

Disclosure Statement and Plan provides differing treatment for certain Classes of Claims or Interests, the Debtors have a rational basis for doing so.

114.    For the reasons set forth above, the Combined Disclosure Statement and Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code and the Combined Disclosure Statement and Plan may be confirmed notwithstanding the deemed rejection by the Deemed Rejecting Classes.

### B.    Section 1129(b)(2): The Plan Is Fair and Equitable

115.    The Combined Disclosure Statement and Plan is also "fair and equitable" with respect to the Deemed Rejecting Classes because the Combined Disclosure Statement and Plan complies with the "absolute priority" rule.    Section 1129(b)(2)(C) of the Bankruptcy Code provides, among other things, that a plan is fair and equitable with respect to a class of interests if the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.    The Combined Disclosure Statement and Plan satisfies section 1129(b)(2)(C) for the Deemed Rejecting Classes, because no Class junior to the Deemed Rejecting Classes will receive or retain property under the Combined Disclosure Statement and Plan on account of such junior interest.

116.    Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(b)(2) of the Bankruptcy Code.

### XV.    Section 1129(c): Only One Combined Disclosure Statement and Plan

117.    Only one Combined Disclosure Statement and Plan is before the Court.    Therefore, section 1129(c) of the Bankruptcy Code is satisfied or otherwise inapplicable.

**XVI.    Section 1129(d): The Principal Purpose of the Combined Disclosure Statement and Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act**

118.    Section 1129(d) provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[104]    The Debtors commenced these chapter 11 cases with a bona fide business need, and business objective, to maximize the value of its assets–which they have accomplished–and not to avoid taxes or the application of section 5 of the Securities Act.[105] Specifically, the Debtors commenced these chapter 11 cases after concluding in November 2022 that they lacked sufficient capital to satisfy their ongoing expenses and that these chapter 11 cases were necessary to preserve liquidity, complete their marketing process, maximize the value of the enterprise, and otherwise wind-down operations in the most responsible and efficient manner.[106]

119.    The Debtors took several affirmative steps in furtherance of these objectives, including by engaging appropriate restructuring advisors and conducting a prepetition marketing effort to explore the potential sale of their assets.  The Debtors successfully consummated the sale to the highest and best bidder for the Debtors' assets, and such sale proceeds (and other assets) are now proposed to be distributed to creditors in accordance with the Combined Disclosure Statement and Plan.  Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(d).

**XVII.    Section 1129(e): The Debtors' Chapter 11 Cases Are Not Small Business Cases**

120.    Finally, section 1129(e) of the Bankruptcy Code is inapplicable because none of the Debtors' chapter 11 cases is a "small business case."  A "small business debtor" cannot be a member "of a group of affiliated debtors that has aggregate noncontingent liquidated secured and

---

[104]     *See* 11 U.S.C. § 1129(d).
[105]     *See* Whittman Decl. ¶ 60.
[106]     *Id.*

unsecured debts in an amount greater than $2,490,925[] (excluding debt owed to 1 or more affiliates or insiders)."   Thus, the Combined Disclosure Statement and Plan satisfies the Bankruptcy Code's mandatory confirmation requirements.

## **THE UST'S LIMITED OBJECTION SHOULD BE OVERRULLED**

121.    The U.S. Trustee takes issue with the definition of 'Exculpated Parties' in the Combined Disclosure Statement and Plan, arguing that it proposes to exculpate parties that are neither estate fiduciaries nor otherwise eligible for an exculpation.  The UST's Limited Objection lacks merit and should be overruled.

122.    The Plan defines Exculpated Parties as follows:

"Exculpated Parties" shall mean, ***each in their respective capacities as such***, (a) the Debtors; (b) the Committee and its members; (c) the Debtors' officers, directors, and any employee who ***served in a fiduciary capacity during these chapter 11 cases***, (d) with respect to each of the foregoing in clauses (a) through (c), each of their respective financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other professionals, including the Professionals, ***who served in such capacities during these chapter 11 cases***; and (e) with respect to each of the foregoing in clauses (a) through (d), such Person's or Entity's successors and assigns, ***solely to the extent such Person or Entity acted as a fiduciary of any of the Estates and served in such capacities during these chapter 11 cases***.[107] (emphasis added)

123.    It is black letter law in the Third Circuit that estate fiduciaries are entitled to an exculpation for acts and omissions taken in furtherance of the chapter 11 process.[108]  The U.S. Trustee does not contend otherwise.  Indeed, there is no dispute as to exculpations for the Debtors, their officers and directors, the Committee and its members, and the retained professionals representing the foregoing in connection with these chapter 11 cases.

---

[107]    *See* Proposed Confirmation Order ¶ 108.  The Debtors, after consulting with the U.S. Trustee regarding the use of "Related Parties" to in lieu of subparts (c), (d), and (e), agreed to this revise the definition in an effort to provide further clarity as to the scope of parties intended to be "Exculpated Parties" under the Plan.  In addition, the Debtors have clarified that the proposed exculpation be limited to acts or omissions after the Petition Date.  *See id.*

[108]    *See In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000).

124.    The proposed exculpation satisfies *PWS* and its progeny because, contrary to the UST's Limited Objection, the exculpation is, by definition, limited by reference to:  (a) estate fiduciaries, (b) acts or omissions taken in furtherance of the chapter 11 process, and (c) with regard to representatives or agents of subpart (a) providing support in relation to subpart (b), solely in their respective capacities as such.

125.    What remains in dispute, however, is whether the following categories are entitled, by definition, to an exculpation and should be included as an "Exculpated Party":

- employees, who do not hold the title of "officer," that acted in a fiduciary capacity during these chapter 11 cases, and

- successors and assigns of an "Exculpated Party".

For the reasons set forth herein, the Debtors respectfully submit that such parties can and should be exculpated under the Plan in accordance with applicable Third Circuit law and Delaware bankruptcy court precedent.

126.    ***Employees***.  Employees are the heartbeat of any company, without which no value-maximizing transaction could be achieved for the benefit of all stakeholders.  That is equally true for the Debtors.  For example, during the 36-hour auction, approximately two dozen employees attended the sale process, in person, on their own initiative.  Several of these employees arguably acted in a fiduciary capacity by providing crucial support, for the benefit of all estate stakeholders, during that auction in an effort to realize the best possible outcome for the estate.  These employees should not, by definition, be rendered ineligible from the exculpation simply because they lack the title "officer"—as the U.S. Trustee's proposed formulation would accomplish.  Furthermore, employees, as agents of the Debtors, should be entitled to an exculpation to the same extent as the Debtors, solely in their capacity as such.  The Court should not open the door to potential

arguments that end-run the Plan's exculpation by structuring litigation against employee representatives of the Debtors that do not hold the title "officer".

127.    ***Successors and Assigns.***    A successor or assign to an Exculpated Party should be entitled to the exculpation coterminous with the exculpation afforded to the predecessor.  For example, if "Retained Professional Firm," two years after the Effective Date and final chapter 11 case closure, merges with, or is acquired by, some other entity, the surviving entity, "Successor Professional Firm," should be entitled to the Plan's exculpation to the same extent as Retained Professional Firm.  The Debtors do not believe the U.S. Trustee even disagrees with this substantive point.  Instead, the U.S. Trustee struggles with the notion that the identity of Successor Professional Firm necessarily cannot be disclosed, by name, today because it is contingent on unknowable future events.  So, it asks Retained Professional Firm ***and*** Successor Professional Firm to assume the risk that future litigants will try to end-run the exculpation against them because "successors and assigns" would, by the U.S. Trustee's proposed definition, be excluded from the scope of the exculpation.  Much like the employee point, the Court need not, and should not, go there.

128.    In *PWS*, the seminal case on exculpation within this circuit, the Third Circuit approved an exculpation that extended to "the Debtors, ***the Reorganized Debtors*** … the Committee or any of their respective members, officers, directors, ***employees, advisors, professionals or agents***"[109]  (emphasis added).  Since *PWS*, every sitting bankruptcy court judge in this District has approved a definition of "Exculpated Parties" that is substantially similar to the one here—inclusive of employees and successors and assigns.  A few illustrative formulations follow.

---

[109]    *In re PWS*, 228 F.3d at 246.

| Case | Approved Definition of 'Exculpated Parties' |
|---|---|
| *In re Alpha Latam Management, LLC, et al.,* Case No. 21-11109 (JKS) [D.I. 652] (Bankr. D. Del. March 16, 2022) | "*Exculpated Parties*" means all Persons that are or were at any time on or after the Petition Date (solely in such capacity or position and whether or not any such Person currently retains such capacity or position): (i) the Debtors; (ii) the Special Committee and all current and former members of the Special Committee; (iii) to the extent they are or are acting as Estate fiduciaries, the directors, officers, ***agents, members of management and other employees*** of the Debtors, respectively; and (iv) to the extent they are Estate fiduciaries, ***the predecessors, successors and assigns***, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, to the extent such parties are or were acting in such capacity of any of the Persons identified in (i) through (iii) above on or after the Petition Date; *provided, however*, that for the avoidance of doubt, none of the Exculpated Parties shall be entitled to exculpation in respect to any Preserved Estate Claim or Preserved Noteholder Claim. (emphasis added) |
| *In re TK Holdings Inc., et al.,* Case No. 17-11375 (BLS) [D.I. 2120] (Bankr. D. Del. Feb. 21, 2018) | "*Exculpated Parties*" means, collectively, (i) the Debtors, (ii) the Committees and their respective members, solely in their capacity as such, (iii) the Future Claims Representative, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' predecessors, ***successors, assigns***, subsidiaries, affiliates, current and former officers, directors, principals, equity holders, members, partners, managers, ***employees***, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees. (emphasis added) |
| *In re Global Eagle Entertainment Inc., et al.,* Case No. 20-11835 (JTD) [D.I. 753] (Bankr. D. Del. Jan. 29, 2021) | "*Exculpated Parties*" means collectively: (a) the Debtors; (b) the Debtors' Estates; (c) the Committee and each of the members of the Committee; and (d) with respect to each of the foregoing entities in clauses (a) through (c), such entities' predecessors, ***successors and assigns***, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, ***employees***, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, Representatives, management companies, and other professionals, and such Persons' respective heirs, executors, estates, servants and nominees, in each case in their capacity as such. (emphasis added) |
| *In re TPC Group Inc., et al.,* Case No. 22-10493 (CTG) [D.I. 1281] (Bankr. D. Del. Dec. 1, 2022) | "*Exculpated Parties*" means, collectively, (i) the Debtors, (ii) the Reorganized Debtors … and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), such Persons' predecessors, ***successors, assigns***, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, ***employees***, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, affiliated investment funds or investment vehicles, managed accounts or funds, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such. (emphasis added) |
| *In re Everyware Global, Inc., et al.,* Case No. 15-10743 (LSS) [D.I. 189] (Bankr. D. Del. May 22, 2015) | "*Exculpated Parties*" means each of the following in its capacity as such:  (a) the Debtors … (m) with respect to each of the foregoing entities in clauses (a) through (l), such Entity's ***successors and assigns*** and current and former Affiliates and its and their subsidiaries, shareholders, members, limited partners, general partners, other equity holders, officers, directors, managers, trustees, principals, ***employees***, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.  (emphasis added) |
| *In re Hygea Holdings Corp., et al.,* Case No. 20-10361 (KBO) [D.I. 576] (Bankr. D. Del. June 15, 2020) | "*Exculpated Parties*" means, collectively, and in each case in their capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Committee; and (iv) with respect to each of the foregoing Entities, each of their respective Related Persons that served in such capacity |

|  | "*Related Persons*" means, with respect to any Person, such Person's predecessors, ***successors, assigns***, and present and former Affiliates (whether by operation of law or otherwise) and each of their respective subsidiaries, and each of their respective current and former officers, directors, principals, ***employees***, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, participants, management companies, fund advisors, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, and any Person claiming by or through any of them, including such Related Persons' heirs, executors, estates, servants, and nominees; provided, however, that no insurer of any Debtors shall constitute a Related Person of any Debtors or Reorganized Debtors.  (emphasis added) |
|---|---|
| *In re Bluestem Brands, Inc., et al..*, Case No. 20-10566 (MFW) [D.I. 744] (Bankr. D. Del. Aug. 21, 2020) | "*Exculpated Parties*" means collectively, and in each case in its capacity as such: (a) the Debtors and Reorganized Debtors; (b) the Creditors' Committee and its members; and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, ***successors, assigns***, subsidiaries, principals, members, ***employees***, agents, managed accounts or funds, management companies, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. (emphasis added) |

129.     Because the Combined Disclosure Statement and Plan contemplates a legally permissible formulation of "Exculpated Parties"—one that not only comports with the parameters of *PWS*, but also countless other confirmed chapter 11 plans in this District—the Court should overrule the UST's Limited Objection and confirm the Plan.

### THE DEBTORS' DISCLOSURE STATEMENT, SOLICITATION AND VOTING PROCEDURES SHOULD BE APPROVED ON A FINAL BASIS

130.     On January 13, 2023, the Court approved the Combined Disclosure Statement and Plan on a conditional basis for solicitation purposes in accordance with section 1125(a)(1) of the Bankruptcy Code.  For the reasons discussed in section II.A above, the Debtors submit that the Combined Disclosure Statement and Plan contains adequate information necessary to enable all parties in interest entitled to vote on the Combined Disclosure Statement and Plan to make an informed judgment with respect to the Combined Disclosure Statement and Plan, as required by the Bankruptcy Code and the Bankruptcy Rules.

131.    For the reasons set forth herein and in the Solicitation Motion, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125. Accordingly, the Court should approve the Disclosure Statement on a final basis.

### CAUSE EXISTS TO WAVE A STAY OF THE CONFIRMATION ORDER

132.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and to orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

133.    The Debtors respectfully submit that cause exists for waiving the stay of the entry of the Confirmation Order such that the Confirmation Order will be effective immediately upon its entry.[110]  The Debtors believe that an expeditious effectuation of the Combined Disclosure Statement and Plan will reduce costs and maximize the value of the Estates.  Thus, the Debtors respectfully request a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

### CONCLUSION

For all of the reasons set forth herein, the Debtors respectfully request that the Court overrule the UST's Limited Objection and approve the Disclosure Statement on a final basis and confirm the Combined Disclosure Statement and Plan as fully satisfying all of the applicable

---

[110]    *See, e.g., Alpha Latam Management, LLC,* Case No. 21-11109 (JKS) (Bankr. D. Del. Mar. 16, 2022) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re Chaparral Energy, Inc.*, Case No. 20-11947 (MFW) (Bankr. D. Del. Oct. 1, 2020) (same); *In re Chisholm Oil and Gas Operating, LLC*, Case No. 20-11593 (BLS) (Bankr. D. Del. Sept. 23, 2020) (same); *In re Pyxus Int'l, Inc.*, Case No. 20-11570 (LSS) (Bankr. D. Del. Aug. 21, 2020) (same); *In re Skillsoft Corp.*, Case No. 20-11532 (MFW) (Bankr. D. Del. Aug. 6, 2020) (same).

requirements of the Bankruptcy Code by entering the Confirmation Order, waiving the stay imposed by Bankruptcy Rule 3020(e), and granting such other and further relief as may be appropriate under the circumstances.

Dated: February 17, 2023
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 */s/ R. Craig Martin*
R. Craig Martin (DE 5032)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@us.dlapiper.com

-and-

Rachel Ehrlich Albanese (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com

-and-

W. Benjamin Winger (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: benjamin.winger@us.dlapiper.com

*Counsel for the Debtors*