# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Legacy FSRD, Inc. (f/k/a Fast Radius, Inc., *et. al*),[1] | Case No. 22-11051 (JKS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. Nos. 299 & 310 |

## DECLARATION OF BRIAN WHITTMAN
## IN SUPPORT OF CONFIRMATION OF THE DEBTORS'
## COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN

I, Brian Whittman, hereby declare as follows:

1.  I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a limited liability corporation, which has served as financial advisor to Fast Radius, Inc., a Delaware corporation, and its debtor affiliates (each, a "Debtor" and, collectively, the "Debtors," "Fast Radius," or the "Company") since June 2022. I am over the age of eighteen and am authorized to make this declaration (the "Declaration") on behalf of the Debtors. If called as a witness, I would testify competently to the facts set forth in this Declaration.

2.  A&M was engaged by Fast Radius on June 29, 2022, to assist the Company with a review of its liquidity position and this engagement was subsequently expanded on September 12, 2022, to more broadly assist with its restructuring efforts. I have led the A&M team since the inception of the engagement. In this capacity, I have familiarized myself with a range of matters

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Legacy FSRD, Inc. (2788), Legacy FSRD Operations, Inc. (5398), and Legacy FSRD PTE LTD (9511). The location of the Debtors' service address in these chapter 11 cases is 251 Little Falls Drive, Wilmington, Delaware 19808.

concerning the Debtors' finances and capital structure, the Debtors' projected financial performance, the Debtors' liquidity and the Debtors' motions and other matters described herein.

3. I am a Managing Director in the Restructuring & Turnaround group at A&M and I am based in A&M's office at 540 West Madison Street, Suite 1800, Chicago, Illinois 60661. I have held the position of Managing Director at A&M since 2008, and additionally have served as the group's co-head of the Midwest region since 2019. During my tenure at A&M I also served as interim chief financial officer of Horizon Global in 2018–19, chief restructuring officer of UCI International in 2016, and interim chief financial officer of PSAV, Inc. in 2014. I joined A&M in 2002, prior to which I spent seven years working in the restructuring group at Arthur Andersen, with my final position as a Director.

4. A&M is a leading independent global professional services firm with significant experience in advising debtors in complex bankruptcy cases. A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing and validating forecasts, business plans, and related assessments of a business's strategic position; monitoring and managing cash flow and supplier relationships; and designing and negotiating financial restructuring packages.

5. I have over twenty-five years of financial restructuring and bankruptcy experience. I have advised companies requiring performance improvement or financial restructuring across a wide range of industries, including automotive, communications, distribution, media, mining, manufacturing, foodservice, retail, and not-for-profit. I have also led complex engagements for companies, secured lenders, and creditors, serving in both interim management and advisory roles.

My restructuring engagements include SLI, Appleton Coated, Coriant, Drug Emporium, Edison Brothers Stores, Electro Motive Diesel, EveryWare Global, Horizon Global, UCI International, Tribune Company, Heartland Automotive Services, Murray Energy, Paddock Enterprises, and Boy Scouts of America, among others.

6. I have bachelor's degrees in finance and accountancy from the University of Illinois. I am a Certified Insolvency and Restructuring Advisor and a Certified Public Accountant.

7. Except as otherwise indicated herein, all statements set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' management team and the Debtors' advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.

8. I submit this Declaration in support of the approval and confirmation of the *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan (With Technical Modifications)* [Docket No. 299] (as may be further amended, supplemented, or otherwise modified from time to time, the "Combined Disclosure Statement and Plan").

## THE COMBINED DISCLOSURE STATEMENT AND PLAN

9. I have reviewed and am generally familiar with the terms and provisions of the Combined Disclosure Statement and Plan. With the Debtors' bankruptcy counsel, I was personally involved in the development and negotiation of the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors and key stakeholders, including SVB Capital and the Committee.[2]

---

[2] Capitalized terms not defined herein shall have the meanings provided to them in the Combined Disclosure Statement and Plan.

EAST\200250181.6

10. On January 13, 2023, the Court entered the order approving the Combined Disclosure Statement and Plan on an interim basis for solicitation purposes only (the "<u>Solicitation Order</u>") [Docket No. 275]. To the best of my knowledge, with the assistance of Stretto, Inc., the Debtors' claims and noticing agent and voting agent (the "<u>Claims and Noticing Agent</u>"), the Debtors have complied with the solicitation and noticing procedures approved through the Solicitation Order, as well as the applicable provisions of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>") and the Federal Rules of Bankruptcy Procedure, as evidenced by the certificate of service filed by the Claims and Noticing Agent. *See* Docket Nos. 289, 301.

## SATISFACTION OF PLAN REQUIREMENTS

11. For the reasons detailed below and with the assistance of the Debtors' advisors and legal counsel, I believe the Combined Disclosure Statement and Plan satisfies the applicable Bankruptcy Code requirements for confirmation of a chapter 11 plan.

12. I believe that the Debtors, as proponents of the Combined Disclosure Statement and Plan, have complied with the applicable provisions of the Bankruptcy Code as required by sections 1129(a)(1) and 1129(a)(2) of the Bankruptcy Code, respectively.

  **A.**   **The Plan Fully Complies with Sections 1129(a)(1) and Sections 1122 and 1123 of the Bankruptcy Code.**

*Section 1129(a)(1)*

13. I understand that section 1129(a)(1) of the Bankruptcy Code requires a chapter 11 plan to comply with all applicable provisions of the Bankruptcy Code. As explained below, I believe that the Combined Disclosure Statement and Plan complies with the requirements of the Bankruptcy Code, as explained to me.

4

*Section 1122*

14. It is my understanding that section 1122 of the Bankruptcy Code requires that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class" provided that there is a "rational basis" to do so. I understand that "substantially similar" does not require similar claims be grouped together but merely that the class be homogenous.

15. The Debtors exercised their reasonable business judgment in creating the classification scheme under the Combined Disclosure Statement and Plan, and I believe there are valid business, legal, and factual reasons that justify the separate classification of the particular Claims and Interests into the Classes created under the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan provides for separate classification of Claims and Interests based on differences in the legal nature and/or priority of such Claims and Interests. The Combined Disclosure Statement and Plan designates the following classes of Claims and Interests as follows:

| CLASS | DESIGNATION | IMPAIRMENT | VOTING RIGHTS |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote/Deemed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote/Deemed to Accept |
| Class 3 | SVB Secured Claims | Unimpaired | Not Entitled to Vote/Deemed to Accept |
| Class 4 | SVB Capital Secured Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims & Interests | Unimpaired / Impaired | Not Entitled to Vote |
| Class 7A | Fast Radius Interests | Impaired | Not Entitled to Vote /Deemed to Reject |
| Class 7B | Section 510(b) Claims | Impaired | Not Entitled to Vote/Deemed to Reject |

EAST\200250181.6

16. I believe that the classification scheme satisfies section 1122 of the Bankruptcy Code because each Class is composed of substantially similar Claims or Interests, respectively, and each instance of separate classification of similar Claims and Interests reflects valid factual or legal reasons. The Debtors' proposed classification system follows the Debtors' capital and corporate structure and the relative priority of the Claims and Interests.

*Specification of Classes, Impairment, and Treatment—Sections 1123(a)(1)-(3).*

17. In addition to Administrative Claims, Priority Tax Claims, U.S. Trustee Fees, and Professional Fee Claims, Article III of the Combined Disclosure Statement and Plan designates eight Classes of Claims and Interests and the treatment that each Class will receive under the Combined Disclosure Statement and Plan. Accordingly, I believe that the Combined Disclosure Statement and Plan satisfies each of the requirements pursuant to section 1123(a)(1)-(3) of the Bankruptcy Code.

*Equal Treatment within Classes—Section 1123(a)(4)*

18. It is my understanding that section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest within a particular class, unless such holder of a particular claim or interest agrees to less favorable treatment. The Combined Disclosure Statement and Plan provides that all Holders of Allowed Claims or Interests will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such holders' respective class. Accordingly, I believe that the Combined Disclosure Statement and Plan satisfies each of the requirements pursuant to section 1123(a)(4) of the Bankruptcy Code.

*Means for Implementation—Section 1123(a)(5)*

19. I believe that the Combined Disclosure Statement and Plan provides for adequate means for implementation of the Combined Disclosure Statement and Plan, including, without limitation: (i) funding of distributions under the Plan, (ii) cancellation of existing securities and

agreements, (iii) entry into certain settlement agreements, (iv) reservation and preservation of Causes of Action that vest in the Wind-Down Debtor, (v) the authorization for the Wind-Down Debtor to take corporate actions necessary to effectuate the Combined Disclosure Statement and Plan, (vi) the Global Settlement, and (vii) the ability for the Debtors and Plan Administrator, as applicable, to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

*Issuance of Non-Voting Securities—Section 1123(a)(6)*

20.     I understand that section 1123(a)(6) of the Bankruptcy Code requires that a corporate debtor's chapter 11 plan provide that a reorganized debtor's charter is to include a prohibition against issuing non-voting equity securities and related protections for preferred shareholders. I believe that this provision is inapplicable to these chapter 11 cases as the Debtors are not issuing any equity securities under the Combined Disclosure Statement and Plan.

*Provisions Regarding Officers and Directors —Section 1123(a)(7)*

21.     I understand that section 1123(a)(7) of the Bankruptcy Code requires that a chapter 11 plan contain only provisions related to selecting directors and officers that are consistent with the interests of creditors and equity security holders and with public policy. The Debtors have chosen Patrick McCusker to serve as Plan Administrator after the Effective Date and oversee the wind-down of the Debtors' estates. I believe Mr. McCusker was selected by the Debtors in a manner consistent with the interests of creditors and with public policy. Additionally, the Debtors have disclosed in advance of the Confirmation Hearing the identity and affiliations of the Plan Administrator. Thus, I believe the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

*Section 1123(b)*

22. The Combined Disclosure Statement and Plan impairs certain Classes of Claims and Interests and leaves others Unimpaired, proposes treatment for executory contracts and unexpired leases, provides a structure for Claim allowance and disallowance, and establishes a distribution process for the satisfaction of Allowed Claims entitled to distributions under the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan also contains provisions implementing certain releases and exculpations, compromising claims and interests, and permanently enjoining certain causes of action. Thus, I believe the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.

        **a.    Exculpation, Release, 1125(e) and Injunction Provisions**

23. Article VIII of the Combined Disclosure Statement and Plan provides for (a) the Debtors' release of certain parties, (b) releases to the Debtors and certain other parties in interest, (c) a provision granting all protections and benefits afforded by section 1125(e) of the Bankruptcy Code, and (d) exculpation and injunction provisions prohibiting parties from pursuing Claims and Causes of Action released under the Combined Disclosure Statement and Plan. I believe these provisions are proper because, among other things, they are the product of arm's-length negotiations amongst parties represented by sophisticated counsel, are supported by substantial consideration provided by the beneficiaries thereof, have been critical to obtaining the support of the various constituencies for the Combined Disclosure Statement and Plan, and, as part of the Combined Disclosure Statement and Plan, have received overwhelming support from the creditors that voted for the Combined Disclosure Statement and Plan, as well as receiving support from the Committee.

24. The Exculpated Parties and 1125(e) Parties have participated in good faith and in compliance with the Bankruptcy Code and have played a critical role in negotiating, formulating,

and implementing the Combined Disclosure Statement and Plan. The 1125(e) Parties and Exculpated Parties actively participated in these chapter 11 cases and were actively involved in negotiations and discussions throughout the course of the chapter 11 cases, contributing substantially to issues such as the Global Settlement, the UPS Settlement, the Palantir Settlement, the Purchase Agreement, the Sale Order, and related documents in furtherance of the Sale Transaction and other transactions contemplated by the Combined Disclosure Statement and Plan.

25. Additionally, the Released Parties have played an instrumental role in facilitating a value-maximizing sale of the Debtors' business and subsequent wind-down. In particular, the directors and officers of the Debtors that are Released Parties were heavily involved in the Debtors' marketing process and cash conservation efforts leading up to the filing of the chapter 11 cases and continued to support and facilitate the Debtors' efforts during these chapter 11 cases. Accordingly, the releases are being given in exchange for the Released Parties' efforts to develop a restructuring strategy and ensure the Debtors' smooth transition into chapter 11 as well as their management of operations throughout the pendency of the chapter 11 cases and the consummation of the sale of the Debtors' assets, which ultimately preserved and maximized the value of the Debtors' estates.

26. I submit that each of these provisions is appropriate because, among other things, they (a) are the product of arm's-length negotiations amongst parties represented by sophisticated counsel, (b) have been critical to obtaining the support of the various constituencies for the Combined Disclosure and Plan, (c) are given for valuable consideration, (d) are fair and equitable and in the best interests of the Debtors, their estates, and these chapter 11 cases, and (e) are consistent with the relevant provisions of the Bankruptcy Code and Third Circuit law as explained to me.

### b. Global Settlement

27. The Combined Disclosure Statement and Plan incorporates the Global Settlement, which provides for the compromise and settlement of numerous Claims, Interests, Causes of Action, and controversies designed to achieve a beneficial and efficient resolution of these chapter 11 cases for all parties in interest. Through the Global Settlement, the Plan resolves a host of alleged Claims and Causes of Action, which were all highly uncertain to succeed and could cause extensive delay, cost, and uncertainty in these chapter 11 cases and otherwise if pursued. Accordingly, in consideration for the distribution and other benefits provided under the Combined Disclosure Statement and Plan, including the release, exculpation, section 1125(e) protections, and injunction provisions, I believe that the Combined Disclosure Statement and Plan constitutes a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan that will allow the Debtors to maximize the value of the Estate for the benefit of all parties in interest and maximize recoveries for all Holders of Claims and Interests. I believe each component of the Global Settlement is an integral, integrated, and inextricably linked part of the Global Settlement.

28. I believe that the compromises and releases set forth in the Combined Disclosure Statement and Plan are critical to bringing closure to these and other matters addressed in the Combined Disclosure Statement and Plan and permitting the Debtors to bring these chapter 11 cases to a successful conclusion. Without the compromises and releases set forth in the Combined Disclosure Statement and Plan, the various stakeholders would not have agreed to provide the consideration that they are providing under the Global Settlement, which consideration is integral to the Combined Disclosure Statement and Plan. Accordingly, I believe that the Debtors' entry into the Global Settlement is an exercise of the Debtors' sound business judgment, as corroborated by the support of the Debtors' key constituents, and that the certainty, swiftness, and consensual

nature of the restructuring to be effectuated pursuant to the Global Settlement greatly outweighs any potential additional value available following a protracted, expensive, and uncertain litigation.

### c. Palantir and UPS Settlements

29. In addition to the Global Settlement, the Combined Disclosure Statement and Plan includes two settlements between the Debtors and (i) Palantir Technologies, Inc. (the "Palantir Settlement") and (ii) United Parcel Service General Services Co., UPS Supply Chain Solutions, Inc., United Parcel Service Singapore Pte Ltd, and United Parcel Service, Inc. (the "UPS Settlement"), respectively.

30. The Palantir Settlement relates to contested matters, including the quantum of Claims in respect of a Master Subscription Agreement between the parties, and is the result of arms'-length, good faith, hard-fought negotiation. I believe that the Palantir Settlement is fair and reasonable, is in the best interests of the Debtors' Estates and creditors, maximizes recoveries, and should be approved.

31. The UPS Settlement relates to contested matters, including the quantum of Claims in respect of various UPS agreements, and is the result of arms'-length, good faith, hard-fought negotiations between the parties. I believe that the UPS Settlement is fair and reasonable, is in the best interests of the Debtors' Estates and creditors, maximizes recoveries, and should be approved.

### B. The Combined Disclosure Statement and Plan Complies with Sections 1129(a)(2)-(16) of the Bankruptcy Code

*Section 1129(a)(2)*

32. It is my understanding that section 1129(a)(2) of the Bankruptcy Code requires that a party in interest receive the plan or a summary of the plan and a court approved disclosure statement prior to or at the time of the solicitation period.

33.  I understand that, on January 13, 2023, the Court approved the Disclosure Statement on a conditional basis and the solicitation package was approved as containing adequate information (the "Solicitation Order"). In addition, I understand the Debtors mailed notices and ballots to the relevant interested parties in accordance with the Solicitation Order.

34.  Additionally, I understand that section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan. The Debtors did not solicit votes from holders of Claims in Class 1, Class 2, and Class 3 (collectively, the "Non-Voting Classes") which are Unimpaired, and conclusively presumed to have accepted the Combined Disclosure Statement and Plan. The Debtors likewise did not solicit votes from Holders of Claims or Interests in Class 6, Class 7A, or Class which are Unimpaired/Impaired or Impaired under the Combined Disclosure Statement and Plan and are deemed to reject the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code.

35.  The Debtors only solicited votes from holders of Claims in Class 4 (SVB Capital Secured Claims) and Class 5 (General Unsecured Claims) (collectively, the "Voting Classes") because each of the Voting Classes is Impaired and entitled to vote under the Combined Disclosure Statement and Plan.

36.  I understand that no party has objected that any of the Voting Classes was not entitled to vote or that any of the Non-Voting Classes was entitled to do so. Further, I understand that solicitation of the Combined Disclosure Statement and Plan was conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and applicable law.

37. I believe that the Combined Disclosure Statement and Plan satisfies section 1129(a)(2) of the Bankruptcy Code, which requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126. I believe that the Debtors have satisfied sections 1125(g) and 1126(b) of the Bankruptcy Code, as applicable.

*Section 1129(a)(3)*

38. I believe that the Debtors have proposed the Plan in good faith and with honesty and good intentions. Throughout these cases, the Debtors have focused on maximizing value for their various stakeholders. The Combined Disclosure Statement and Plan, Plan Supplement, and all documents necessary to effect the Combined Disclosure Statement and Plan were developed after several weeks of analysis and negotiations between the Debtors and other key constituents and were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful and speedy wind-down of the Debtors' operations after the sale of substantially all of the Debtors' assets. Moreover, the Combined Disclosure Statement and Plan is the product of arm's-length negotiations among the Debtors and various parties-in-interest, including the Committee.

*Section 1129(a)(4)*

39. I believe payments made or to be made by the Debtors for services or for costs or expenses in connection with these chapter 11 cases prior to the Effective Date, including all Professional Fee Claims, have been approved by, or are subject to approval of, the Court. I also believe that all of the payments to be made under the Combined Disclosure Statement and Plan are reasonable and appropriate in the chapter 11 cases.

*Section 1129(a)(5)*

40.     The Debtors have disclosed in the Plan Supplement that Mr. McCusker is proposed to serve as Plan Administrator after the Effective Date. The appointment of Mr. McCusker to the role of Plan Administrator is consistent with the interests of creditors.

41.     I believe that the Combined Disclosure Statement and Plan and the Plan Supplement satisfy the requirements of section 1129(a)(5) of the Bankruptcy Code, to the extent applicable, as the Debtors disclosed the identity, compensation, and affiliations of the Plan Administrator.

*Section 1129(a)(6)*

42.     The Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, and, as a result, the Combined Disclosure Statement and Plan does not propose the change of any such rates. As such, I understand that section 1129(a)(6) is inapplicable.

*Section 1129(a)(7)*

43.     I oversaw the Debtors' hypothetical, reasonable and good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code (the "Liquidation Analysis"), which is attached as Exhibit A to the Combined Disclosure Statement and Plan. As shown in the Liquidation Analysis, the ranges of recoveries for Holders of Claims are materially higher under the Combined Disclosure Statement and Plan than they would have been in a chapter 7 liquidation scenario.

44.     I understand from the Debtors' counsel that in order to satisfy the "best interests" test under section 1129(a)(7) of the Bankruptcy Code, a debtor must demonstrate that each holder of a claim or equity interest in an impaired class has either (i) accepted the proposed plan or (ii) is receiving at least as much value under the proposed plan as they would receive in a hypothetical

chapter 7 liquidation. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, I believe that the Debtors have satisfied this requirement. I believe that the Debtors would incur the additional costs of a Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the Chapter 7 trustee, were the case to be converted to a chapter 7. These costs would reduce potential distribution to Allowed Impaired Claims on a dollar for dollar basis. Conversion also would likely delay the liquidation process and the ultimate distribution, if any, to unsecured creditors.

45. Based on the foregoing, I believe that the Combined Disclosure Statement and Plan satisfies the "best interests test" because confirmation of the Combined Disclosure Statement and Plan will provide each holder of an Allowed Claim with an equal or greater recovery than the value of any distributions if the chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code.

*Sections 1129(a)(8)*

46. Classes 1, 2 and 3 are deemed to have accepted the Combined Disclosure Statement and Plan. Holders of Claims in Class 7A and Class 7B are deemed to reject the Combined Disclosure Statement and Plan. Holders of Claims in Class 6 are deemed to either accept or reject the Disclosure Statement and Plan. As such, I understand that the Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code, but that the Combined Disclosure Statement and Plan can still be confirmed if the Combined Disclosure Statement and Plan satisfies the "cramdown" provisions of 1129(b) of the Bankruptcy Code, as discussed below.

*Section 1129(a)(9)*

47. I believe that the Combined Disclosure Statement and Plan's treatment of Administrative Claims and Priority Tax Claims satisfies section 1129(a)(9) of the Bankruptcy Code.

15

*Section 1129(a)(10)*

48. Classes 4 and 5, which are Impaired, have accepted the Combined Disclosure Statement and Plan, regardless of the votes of any insider(s).

*Section 1129(a)(11)*

49. The Combined Disclosure Statement and Plan provides for the completion of the Debtors' liquidation and the distribution of its remaining property in accordance with the priority scheme set forth in the Bankruptcy Code and the terms of the Combined Disclosure Statement and Plan. I believe confirmation of the Combined Disclosure Statement and Plan will not be followed by the need for further financial reorganization of the Debtors, thereby satisfying (or eliminating the need to consider) section 1129(a)(11) of the Bankruptcy Code.

50. I believe the Plan Administrator will have sufficient assets to accomplish its tasks under the Combined Disclosure Statement and Plan. Moreover, the Debtors have already taken significant steps to wind down in an orderly fashion during the chapter 11 cases, including, without limitation, selling substantially all of the Debtors' assets through the Court-approved Sale Transaction. Therefore, I believe that confirmation of the Combined Disclosure Statement and Plan is not likely to be followed by the need for further financial reorganization of the Debtors, and the Combined Disclosure Statement and Plan provides for adequate means for its implementation.

*Section 1129(a)(12)*

51. Section 2.1 of the Combined Disclosure Statement and Plan provides that the Wind-Down Debtor shall be liable to pay any and all U.S. Trustee Fees when due and payable until the earliest of each particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. I believe the Debtors have adequate means to make such payments.

*Section 1129(a)(13)*

52. The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code. Therefore, I understand that Section 1129(a)(13) is inapplicable.

*Section 1129(a)(14)*

53. The Debtors are not required to pay a domestic support obligation. Therefore, I understand that Section 1129(a)(14) is inapplicable.

*Section 1129(a)(15)*

54. The Debtors are not individuals. Therefore, I understand that Section 1129(a)(15) is inapplicable.

*Section 1129(a)(16)*

55. The Debtors are a moneyed, business, or commercial corporation. Therefore, I understand that Section 1129(a)(16) is inapplicable.

**C. The Combined Disclosure Statement and Plan Complies with Sections 1129(b)-(e) of the Bankruptcy Code**

*Section 1129(b)*

56. I understand that in the event that less than all classes of claims or interests either accept a plan or are unimpaired, section 1129(b) of the Bankruptcy Code provides that a court may confirm a plan if it does not discriminate unfairly and provides fair and equitable treatment to each rejecting impaired class.

57. The Combined Disclosure Statement and Plan does not discriminate unfairly with respect to Classes 6, 7A, and 7B. Here, the Combined Disclosure Statement and Plan's treatment of Classes 6, 7A, and 7B is proper because all similarly-situated Holders of Claims and Interests in Classes 6, 7A, and 7B will receive the same treatment and the Combined Disclosure Statement and Plan's classification scheme rests on a legally acceptable rationale. Class 6 constitutes all

17

intercompany Claims and Interests, Class 7A constitutes all Interests in Debtor Fast Radius, Inc and Class 7B constitutes consist of all Section 510(b) Claims, none of which are similarly situated—legally or otherwise—to any other Class.

58.     The Combined Disclosure Statement and Plan is also "fair and equitable" with respect to Classes 6, 7A, and 7B because the Combined Disclosure Statement and Plan complies with the "absolute priority" rule. I understand that the absolute priority rule requires that any class junior to Classes 6, 7A, and 7B not receive any distribution under a plan on account of its junior interest. The Combined Disclosure Statement and Plan satisfies that rule because no Class junior to Classes 6, 7A, and 7B will receive or retain property under the Combined Disclosure Statement and Plan on account of such junior interest.

*Section 1129(c)*

59.     The Combined Disclosure Statement and Plan is the only chapter 11 plan that has been proposed in these chapter 11 cases.

*Section 1129(d)*

60.     I understand from the Debtors' counsel that section 1129(d) of the Bankruptcy Code provides that a plan of reorganization may not be confirmed if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. I believe that the purpose of the Combined Disclosure Statement and Plan is not to avoid taxes or the application of section 5 of the Securities Act. The Debtors commenced these chapter 11 cases with a bona fide business need, and business objective, to maximize the value of its assets–which it has accomplished–and not to avoid taxes or the application of section 5 of the Securities Act. Specifically, the Debtors commenced these chapter 11 cases after concluding in November 2022 that they lacked sufficient capital to satisfy their ongoing expenses and that restructuring initiatives were necessary to preserve their liquidity and maintain operations. The Debtors successfully

consummated the sale to the highest and best bidder for the Debtors' assets, and such sale proceeds (and other assets) are now proposed to be distributed to creditors in accordance with the Combined Disclosure Statement and Plan.

*Section 1129(e)*

61. Finally, section 1129(e) of the Bankruptcy Code is inapplicable because none of the Debtors' chapter 11 cases are a "small business case."

## CONCLUSION

62. I believe that the Combined Disclosure Statement and Plan will enable the Holders of Allowed Claims to realize the highest possible recoveries under the circumstances of the chapter 11 cases. I therefore conclude that the Combined Disclosure Statement and Plan is in the best interests of all creditors and respectfully request that the Court enter an order confirming the Combined Disclosure Statement and Plan.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 17, 2023

*/s/ Brian Whittman*
Brian Whittman