### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Legacy FSRD, Inc. (f/k/a Fast Radius, Inc., *et. al*),[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11051 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. No. 299** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTORS' COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN

**WHEREAS**, the above-captioned debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") have, among other things:

a. commenced the above-captioned chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 7, 2022 (the "Petition Date") with the Bankruptcy Court for the District of Delaware (the "Court");

b. continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on December 19, 2022, (i) the *Combined Disclosure Statement and Joint Chapter 11 Plan* [Docket No. 219] (as amended, supplemented, or otherwise modified from time to time, the "Combined Disclosure Statement and Plan"),[2] (ii) the *Motion of the Debtors for Entry of an Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Legacy FSRD, Inc. (2788), Legacy FSRD Operations, Inc. (5398), and Legacy FSRD PTE LTD (9511).  The location of the Debtors' service address in these chapter 11 cases is 251 Little Falls Drive, Wilmington, Delaware 19808.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan or, if not defined therein, the Solicitation Order.  As used herein, the term "Disclosure Statement" means the disclosure statement that is embodied in the Combined Disclosure Statement and Plan, and the term "Plan" means the chapter 11 plan that is embodied in the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan is attached hereto as **Exhibit A**.

*Disclosure Statement and Plan; and (VI) Granting Related Relief* (the "<u>Solicitation Motion</u>") [Docket No 220]; and (iii) *Motion of Debtors for Entry of an Order (I) Shortening Notice Period and For Expedited Hearing to Consider the Motion of the Debtors for Entry of an Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and Plan; and (VI) Granting Related Relief* (the "<u>Motion to Shorten Notice</u>") [Docket No 221];

d.  filed, on January 12, 2023, (i) a revised version of the Combined Disclosure Statement and Plan [Docket No. 265];

e.  obtained, on January 13, 2023, entry of the *Order (I) Approving the Debtors' Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and Plan; and (VI) Granting Related Relief* [Docket No. 275] (the "<u>Solicitation Order</u>") approving the solicitation procedures (the "<u>Solicitation Procedures</u>"), and related notices, forms, and ballots (collectively, the "<u>Solicitation Packages</u>");

f.  filed, on January 17, 2023, the solicitation version of the Combined Disclosure Statement and Plan [Docket No. 278];

g.  commenced service of the Solicitation Packages and notice of the hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "<u>Confirmation Hearing</u>") and the deadline for objecting to confirmation of the Plan to be distributed on or about January 17, 2023, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Solicitation Order, and the Solicitation Procedures, as evidenced by, among other things, the Affidavits of Service of Solicitation Materials [Docket No. 289, 301], and the Affidavit of Service for the Plan Supplement [Docket No. 301];

h.  caused notice of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>") to be published on January 19, 2023, in The New York Times (national edition), as evidenced by the Certificate of Publication [Docket No. 292];

i.  filed, on February 7, 2023, the Plan Supplement [Docket No. 298] (together with the exhibits attached thereto, each as amended, supplemented, or otherwise modified from time to time, the "<u>Plan Supplement</u>");

2

j.   filed, on February 7, 2023, a revised version, with technical modifications, of the Combined Disclosure Statement and Plan [Docket No. 299];

k.   filed, on February 15, 2023, the *Certification of Stretto Regarding Tabulation of Ballots in Connection with the Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan* [Docket No. 307] (the "Voting Report");

l.   filed, on February 17, 2023, the *Memorandum of Law in Support of Confirmation of Debtors' Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 310] (the "Confirmation Brief"); and

m.  filed, on February 17, 2023, the *Declaration of Brian Whittman in Support of Confirmation of the Debtors' Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 311] (the "Whittman Declaration").

This Court having:

a.   entered the Solicitation Order on January 13, 2023;

b.   set February 14, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections in opposition to the Combined Disclosure Statement and Plan;

c.   set February 14, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Combined Disclosure Statement and Plan;

d.   set February 22, 2023, at 10:30 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.   reviewed the Combined Disclosure Statement and Plan, the Plan Supplement, the Confirmation Brief, the Whittman Declaration, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the chapter 11 cases;

f.   held the Confirmation Hearing;

g.   heard the statements, arguments, and objections made by counsel with respect to final approval of the Combined Disclosure Statement and Plan;

h.   considered all testimony, documents, filings, and other evidence presented or admitted at the Confirmation Hearing;

i.   overruled any and all objections to final approval of the Disclosure Statement, to the Plan, and to confirmation and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated;

3

j.   entered rulings on the record at the Confirmation Hearing held on February 22, 2023 (the "Confirmation Ruling"); and

k.   took judicial notice of all papers and pleadings filed in the chapter 11 cases and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these chapter 11 cases.

**NOW, THEREFORE**, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Court having found that the record of these chapter 11 cases and the legal and factual bases set forth in the documents filed in support of confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order (this "Confirmation Order"):

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))**

1.    The Court has jurisdiction over the chapter 11 cases pursuant to 28 U.S.C. § 1334. Final approval of the Disclosure Statement and confirmation of the Plan are each a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction to enter a Final Order finally approving the Disclosure Statement and determining that the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and approved.  Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

**B.    Eligibility for Relief**

2.    Each Debtor is and continues to be, under section 109 of the Bankruptcy Code, a person eligible to be a debtor under chapter 11 of the Bankruptcy Code.

**C.    Commencement and Joint Administration of these Chapter 11 Cases**

3.    On the Petition Date, the Debtors commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On November 9, 2022,

the Court entered an order [Docket No. 46] authorizing the joint administration of the chapter 11 cases in accordance with Bankruptcy Rule 1015(b).  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the chapter 11 cases.

**D.      Appointment of the Committee**

4.      On November 18, 2022, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the interests of the unsecured creditors of the Debtors in the chapter 11 cases [Docket No. 83].

**E.      Plan Supplement**

5.      The Plan Supplement complies with the terms of the Plan, and the Debtors provided good and proper notice of filing thereof in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and the facts and circumstances of these chapter 11 cases.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors have reserved the right to alter, amend, update, or modify the Plan Supplement prior to the Effective Date, in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**F.      Judicial Notice**

6.      The Court takes judicial notice of the docket of the chapter 11 cases maintained by the Clerk of the Court or its duly-appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these chapter 11 cases, including, without limitation, the Confirmation Hearing.

**G.      Solicitation Order**

7.      On January 13, 2023, the Court entered the Solicitation Order, which, among other things, fixed February 14, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for objecting to the Plan (the "Plan Objection Deadline") and as the deadline for voting to accept or

EAST\200470911.4

reject the Plan (the "Voting Deadline"), and February 22, 2023, at 10:30 a.m. (prevailing Eastern Time) as the scheduled date and time for the Confirmation Hearing.  The Debtors have complied with the Solicitation Order in all respects.

**H.    Transmittal and Mailing of Materials; Notice**

8.    The Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Solicitation Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3018, 3019, and 3020(c), the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), and the procedures set forth in the Solicitation Order.  The Debtors provided due, adequate, and sufficient notice of the Voting Deadline and the Plan Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Solicitation Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation Order.  No other or further notice is or shall be required.

**I.    Solicitation**

9.    The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Solicitation Order, the Local Rules, and all other applicable rules, laws, and regulations.

**J.    Voting Report**

10.    On February 15, 2023, the Debtors filed the Voting Report.  As evidenced thereby, the procedures used to tabulate ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

11.    As set forth in the Plan, Holders of Claims in Class 4 and Class 5 (the "Voting Classes") were eligible to vote on the Plan in accordance with the Solicitation Procedures.  Holders

of Claims in Class 1, Class 2, and Class 3 (the "Deemed Accepting Class") are Unimpaired and conclusively presumed to accept the Plan. Holders of Claims and Interests in Class 7A and Class 7B (the "Deemed Rejecting Classes") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan. Holders of Claims and Interests in Class 6 are either Impaired or Unimpaired under the Plan and are therefore either deemed to have accepted or rejected the Plan.

12.    As evidenced by the Voting Report, creditors in Class 4 representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan and creditors in Class 5 representing 99.8 percent by amount of voted claims and 90.9 percent by number in the aggregate voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

13.    Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124, 1126(c), and 1129(a)(10) of the Bankruptcy Code.

**K.    Burden of Proof**

14.    The Debtors, as proponents of the Plan, have met their burden of proving each required element of section 1129 of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for confirmation. Further, the Debtors have proven each required element of section 1129 of the Bankruptcy Code by clear and convincing evidence. Each witness who provided testimony on behalf of the Debtors in connection with confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**L.    Adequacy of the Disclosure Statement**

15.    The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of the

7

Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law.  The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Combined Disclosure Statement and Plan and the other materials in the Solicitation Packages was authorized by and complied with the Solicitation Order and was appropriate under the circumstances.

**M.      Bankruptcy Rule 3016**

16.      The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

17.      The injunction, release, 1125(e), and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**N.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

18.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

19.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**i.      Sections 1122 and 1123(a)(1)—Proper Classification**

20.      The Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Claims, Priority Tax Claims, U.S. Trustee Fees, and Professional Fee Claims, Article III of the Plan designates eight Classes of Claims and Interests.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class.  Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests, such

classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, holders of Claims and Interests.

### ii.    Section 1123(a)(2)—Specification of Unimpaired Classes

21.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Class 1, Class 2, and Class 3 are Unimpaired under the Plan.

### iii.    Section 1123(a)(3)—Specification of Treatment of Impaired Classes

22.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Class 4, Class 5, Class 7A, and Class 7B are Impaired under the Plan, and that Claims in Class 6 are either deemed Unimpaired or Impaired under the Plan.

### iv.    Section 1123(a)(4)—No Discrimination

23.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides for the same treatment for each Claim or Interest in any particular Class, as the case may be, except to the extent the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### v.    Section 1123(a)(5)—Adequate Means for Plan Implementation

24.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the various documents included in the Plan Supplement provide adequate and proper means for execution and implementation of the Plan, including: (a) the Purchase Agreement; (b) the Global Settlement, the Palantir Settlement, and the UPS Settlement; (c) the Schedule of Retained Causes of Action; (d) the identity and terms of compensation of the Plan Administrator; and (e) the Wind-Down Budget.

### vi.    Section 1123(a)(6)—Non-Voting Equity Securities

25.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of equity or other securities of the Debtors, including nonvoting equity securities.

### vii.    Section 1123(a)(7)—Directors, Officers, and Trustees

26.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Section 7.4 of the Plan deems all of the Debtors' officers and managers resigned from their duties effective as of the Effective Date without any further action.  In addition, section 7.5 of the Plan provides that the Plan Administrator shall act for the Wind-Down Debtor in the same fiduciary capacity as applicable to a board of directors and officers.

27.    The manner for selection of the Plan Administrator is set forth in the Plan.  The selection of Patrick McCusker as the Plan Administrator and the process therefor is consistent with the interests of Holders of Claims and Interests and public policy.

### b.    Section 1123(b)—Discretionary Contents of the Plan

28.    The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are consistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

### i.    Impairment / Unimpairment of Any Class of Claims or Interests

29.    Pursuant to the Plan, Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123 (b)(1) of the Bankruptcy Code.

### ii.    Assumption and Rejection of Executory Contracts and Unexpired Leases

30.    Article IX of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases that are (i) not assumed or rejected before the Effective Date (excluding, for the avoidance of doubt, insurance policies), or (ii) not subject to a pending motion to assume or reject as of the Effective Date.  Entry of this Confirmation Order shall constitute approval of such assumptions, assumptions and assignments, and rejections of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### iii.    Compromise and Settlement

31.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and/or Bankruptcy Rule 9019, where and as applicable, and in consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the settling parties to the Global Settlement, the UPS Settlement, and the Palantir Settlement, and those parties in interest providing a consensual Third-Party Release, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  Those settlements and compromises are fair, equitable, and reasonable and approved as being in the best interests of the Debtors and their Estates.

### iv.    Debtor Release

32.    The releases of Claims and Causes of Action by the Debtors described in Section 8.3 of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtors' or the Wind-Down Debtor's pursuit of any such claims against the Released Parties would not in the best interest of the Estates' various constituencies because, among other things, the costs involved would likely outweigh any potential benefit from pursuing such Claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

33.    The Debtor Release is an integral part of the Plan and is in the best interests of the Debtors' Estates as a component of the comprehensive settlement implemented under the Plan. The low probability of success in litigation with respect to the released Causes of Action supports the Debtor Release.  The Plan, including the Debtor Release, was negotiated by sophisticated parties represented by able counsel and financial advisors.  The Debtor Release is therefore the result of an arm's-length negotiation process.

34.    The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Specifically, the Released Parties under the Plan made significant concessions and contributions to the chapter 11 cases, including, as applicable, actively

supporting the Plan and these chapter 11 cases and waiving substantial rights and Claims against the Debtors under the Plan. The Debtor Release for the Debtors' directors, managers, and officers is appropriate because, among other things, the Debtors' directors, managers, and officers share an identity of interest with the Debtors, supported the Plan and these chapter 11 cases, actively participated in meetings, negotiations, and implementation during these chapter 11 cases, and have provided other valuable consideration to the Debtors to facilitate the value-maximizing transactions during these chapter 11 cases.

35.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these chapter 11 cases. The Debtor Release, which includes by reference each related provision and definition contained in the Plan, is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by such releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such Debtor Release. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate. For the avoidance of doubt, SVB shall be deemed a "Released Party" for purposes of the Debtor Release, and a "Releasing Party" with respect to the Debtors and their respective directors, officers, and other "Related Parties" for purposes of the "Third-Party Release".

**v.    Release by Holders of Claims and Interests**

36.    The release by the Releasing Parties set forth in Section 8.4 of the Plan (the "Third-Party Release") is an essential provision of the Plan. The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of these chapter 11 cases and the Releasing Parties received due and adequate notice of the Third-Party Release. The Third-Party Release is: (a) consensual; (b) essential to the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the

Claims and Causes of Action released pursuant to the Third-Party Release; (e) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders; (f) important to the overall objectives of the Plan; (g) fair, equitable, and reasonable; (h) given and made after due notice and opportunity for a hearing, as well as a clear opportunity to manifest consent to such Third-Party Release; (i) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties; and (j) consistent with sections 105, 524, 1123, 1129, and 1141 of the Bankruptcy Code, other applicable provisions of the Bankruptcy Code, and applicable law.  For the avoidance of doubt, except as expressly provided in the Plan, each Holder of a Claim or Interest that (x) votes to accept or reject, or are deemed to accept, the Plan, or (y) abstains from voting on the Plan, and, in the case of either (x) or (y), does not opt out of the voluntary release contained in Section 8.4 by checking the opt out box on the ballot, and returning it in accordance with the instructions set forth thereon, or file an objection to the Plan, indicating that they opt not to grant the releases provided in the Plan, shall be deemed a "Releasing Party."

37.     The Third-Party Release is an integral part of the Plan.  The Third-Party Release facilitated participation of the Released Parties in the Plan, the Global Settlement, the UPS Settlement, the Palantir Settlement, and the successful path of these chapter 11 cases generally. The Third-Party Release is instrumental to the Plan and was critical in incentivizing the Released Parties to support the Plan, enter into the Global Settlement, the UPS Settlement, and the Palantir Settlement, and preventing potentially significant, time-consuming and costly litigation regarding the parties' respective rights and interests.

38.     The Third-Party Release is consensual, as the Releasing Parties were provided adequate notice of the chapter 11 cases and related proceedings, the Plan, and the deadline to object to confirmation of the Plan, and all Holders of Claims and Interests, as applicable, were given the opportunity to manifest consent to the Third-Party Release in accordance with the Solicitation Order.  The release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Confirmation Hearing Notice, the notices of non-voting

status, and the ballots.  Among other things, the Plan provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary or shall be required.  The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.  In light of the foregoing, the Third-Party Release is approved.

### vi.   Exculpation and 1125(e) Provisions

39.    The exculpation provision set forth in Section 8.5 of the Plan (the "Exculpation Provision") and the section 1125(e) provision set forth in Section 8.6 of the Plan (the "1125(e) Provision") are essential to the Plan.  The Exculpation Provision and the 1125(e) Provision are consistent with established practice in this jurisdiction and appropriately afford protection to certain parties who constructively participated in and contributed to the Debtors' chapter 11 process, including the formulation and solicitation of the Plan.  The record in the chapter 11 cases fully supports the Exculpation Provision and the 1125(e) Provision, which is appropriately tailored to protect the Exculpated Parties and the 1125(e) Parties from inappropriate litigation.

### vii.   Injunction

40.    The injunction provision set forth in Section 8.7 of the Plan (the "Injunction Provision"):  (a) is within the jurisdiction of this Court; (b) is an essential means of implementing the Plan; (c) is an integral element of the transactions incorporated in the Plan; (d) confers material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors and other stakeholders; (e) is important to the overall objections of the Plan, the intent of which is to finally resolve all claims or causes of action among or against the parties in interest in the chapter 11 cases with respect to the Debtors; (f) is consistent with sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law; and (g) is necessary to implement the Plan and the Debtors' discharge under the Bankruptcy Code and to preserve and enforce the Debtor Release, the Third-Party Release, the Exculpation Provision, and the 1125(e) Provision.  The Injunction Provision is appropriately tailored to achieve those purposes.

### viii.   Preservation of Claims and Causes of Action

41.     Section 7.10 of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.

42.     The Plan is specific with respect to the Causes of Action to be retained by the Debtors, and the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Wind-Down Debtor may retain, and all parties in interest received adequate notice with respect to such Causes of Action.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.  For the avoidance of doubt, unless a Retained Action against any Entity is expressly waived, relinquished, released, compromised, exculpated, or settled pursuant to the Plan or any Final Order (including the Confirmation Order, the Final Cash Collateral Order, and the Sale Order), the Debtors expressly reserve such Retained Action to be vested in the Wind-Down Debtor for possible prosecution by the Plan Administrator, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Actions upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Retained Actions have been waived, relinquished, released, compromised, exculpated, or settled pursuant to the Plan or any Final Order (including the Confirmation Order and the Sale Order).

### ix.   Release of Liens

43.     The lien release provisions of Section 8.2 of the Plan are appropriate, fair, equitable and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and are approved.

### x.   Additional Plan Provisions

44.     The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without

limitation, provisions for treatment of indemnification obligations, setoffs, and the retention of jurisdiction by the Court.

      **c.**      **Section 1129(a)(2)—Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code**

45.      The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

46.      The Debtors and their agents solicited votes to accept or reject the Plan after the Court entered the Solicitation Order approving the Solicitation Packages and Solicitation Procedures.

47.      The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith (as such term is used in section 1125(e) of the Bankruptcy Code), and in a manner consistent with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation and 1125(e) Provisions set forth in Article VIII of the Plan.

48.      The Debtors, their agents, and, to the extent applicable, the 1125(e) Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with the terms of and pursuant to the Plan. Each of the 1125(e) Parties is entitled to all of the protections and benefits afforded by section 1125(e) of the Bankruptcy Code in connection with such party's solicitation and participation in relation to the Plan.

**d.      Section 1129(a)(3)—Proposal of Plan in Good Faith**

49.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these chapter 11 cases, the Sale Transaction, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and the record of these chapter 11 cases, the Plan, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the chapter 11 cases.

50.      The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee and SVB Capital, in connection with the Global Settlement.   Further, the Plan's classification, settlement, exculpation, release, discharge, and injunction provisions have been negotiated extensively in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1125(e), 1129, 1141, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to the chapter 11 cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**e.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable**

51.      Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the chapter 11 cases, or in connection with the Plan and incident to the chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**f.      Section 1129(a)(5)—Disclosure of Directors, Officers and Managers and Consistency with the Interests of Creditors and Public Policy**

52.      Because the Plan provides for the orderly wind-down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down

17

Debtor, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity, affiliations, and terms of compensation of the Plan Administrator.

### g.      Section 1129(a)(6)—Rate Changes

53.      Section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.  The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.

### h.      Section 1129(a)(7)—Best Interests of Holders of Claims and Interests

54.      The Debtors have demonstrated that the Plan is in the best interests of their creditors and equity interest holders.  The requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.  The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, including the Liquidation Analysis attached as Exhibit A to the Combined Plan and Disclosure Statement, together with the facts and circumstances of the chapter 11 cases, establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

### i.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Deemed Rejecting Classes

55.      Class 1, Class 2, and Class 3 are Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in each such Class are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 4 and Class 5 are Impaired by the Plan and entitled to vote on the Plan.  As reflected in the Voting Report, creditors in Class 4 representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan and creditors in Class 5 representing 99.8 percent by amount of voted claims and 90.9 percent by number in the aggregate voted to accept the Plan.  Class 6 is either Unimpaired by the Plan and conclusively presumed to have accepted

18

the Plan or Impaired and deemed to have rejected the Plan. Class 7A and Class 7B are Impaired

Classes that will not receive or retain any property under the Plan on account of the Claim in each

such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan.

56.     As set forth below, the Debtors satisfy the requirements of section 1129(b) of the

Bankruptcy Code with respect to the Claims that are deemed to reject the Plan.

**j.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

57.     The treatment of Administrative Claims, Priority Tax Claims, Professional Fee

Claims, and payment of U.S. Trustee statutory fees under Section 2.1 of the Plan satisfies the

requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k.      Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

58.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

As set forth in the Voting Report, each Impaired Class that was entitled to vote on the Plan has

voted to accept the Plan. Specifically, creditors in Class 4 representing 100 percent by amount of

voted claims and 100 percent by number in the aggregate voted to accept the Plan and creditors in

Class 5 representing 99.8 percent by amount of voted claims and 90.9 percent by number in the

aggregate voted to accept the Plan. Accordingly, with respect to each Debtor, at least one Class

of Claims that is Impaired under the Plan has voted to accept the Plan, determined without

including any acceptance of the Plan by any insider (as such term is defined in section 101(31) of

the Bankruptcy Code.

**l.      Section 1129(a)(11)—Feasibility of the Plan**

59.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence

supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing:

(a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared,

presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes

that the Plan is feasible and confirmation of the Plan is not likely to be followed by liquidation

(other than as contemplated by the Plan) or the need for further financial reorganization; and

19

(d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

### m.    Section 1129(a)(12)—Payment of Statutory Fees

60.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 2.1 of the Plan provides for the payment of all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code.

### n.    Section 1129(a)(13)—Retiree Benefits

61.    The Debtors do not have any obligations to pay retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code).    Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the chapter 11 cases and the Plan.

### o.    Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations

62.    The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.    Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the chapter 11 cases.

### p.    Section 1129(b)—Confirmation of Plan over Nonacceptance of Impaired Classes

63.    The Plan may be confirmed as to any Class that is deemed to have rejected the Plan (collectively, the "Deemed Rejecting Classes") pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding that the requirements of section 1129(a)(8) have not been met with respect to the Deemed Rejecting Classes, because the Debtors have demonstrated by a preponderance of the evidence the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Holders of Claims and Interests in the Deemed Rejecting Classes.    The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that the Deemed Rejecting Classes are deemed to reject the Plan.    After entry of this

20

Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the Holders of Claims and Interests, as applicable, in the Deemed Rejecting Classes.

**q.      Section 1129(c)—Only One Plan**

64.     The Plan is the only plan filed in the chapter 11 cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**r.      Section 1129(d)—Principal Purpose of the Plan**

65.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

**s.      Section 1129(e)—Not Small Business Cases**

66.     None of the chapter 11 cases are small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the chapter 11 cases.

**O.    Satisfaction of Confirmation Requirements**

67.     Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all of the requirements for confirmation of a chapter 11 plan set forth in section 1129 of the Bankruptcy Code.

**P.    Good Faith**

68.     The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.  The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of their Estates for the benefit of their stakeholders.  The Plan is the product of extensive collaboration among the Debtors and key stakeholders, including, but not limited to, the Committee and the Prepetition Lenders, and accomplishes the Debtors' goal.  Accordingly, the Debtors or the Wind-Down Debtor, as appropriate, have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed

in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**Q.     Disclosure: Agreements and Other Documents**

69.     The Debtors have disclosed all material facts, to the extent applicable, regarding: (a) the identity, affiliations, and compensation of the Plan Administrator; (b) the method and manner of distributions under the Plan; (c) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtors or the Wind-Down Debtor, as applicable; (d) the exemption, if applicable, under section 1146(a) of the Bankruptcy Code; (e) the retained Causes of Action; and (f) the adoption, rejection, execution, and delivery, as applicable, of all contracts, leases, instruments, securities, releases, and other agreements related to any of the foregoing.

**R.     Conditions to Effective Date**

70.     The Plan shall not become effective unless and until the conditions set forth in Article XI of the Plan have been satisfied or waived pursuant to Section 11.1 the Plan.  Each of the conditions set forth in Article XI of the Plan is reasonably likely to be satisfied or waived in accordance with the Plan.

**S.     Implementation**

71.     All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and

agreements.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**T.    Global Settlement, UPS Settlement, and Palantir Settlement**

72.    The Global Settlement, UPS Settlement, and Palantir Settlement, together, provide for a comprehensive, consensual resolution to these chapter 11 cases, are each integral to the Plan, and are each fair, reasonable, equitable, and in the best interests of the Debtors, their Estates, and all parties in interest in the chapter 11 cases.  The parties to the Global Settlement, UPS Settlement, and Palantir Settlement each negotiated the terms of the Global Settlement, UPS Settlement, and Palantir Settlement, respectively, at arm's length and in good faith.  The consideration provided by the Global Settlement Parties under the Global Settlement, the UPS Settlement parties under the UPS Settlement, and the Palantir Settlement parties under the Palantir Settlement, in each case exceeds the value to the Debtors' Estates of any claims and causes of action that are settled pursuant to the Global Settlement, UPS Settlement, and Palantir Settlement, respectively, which are speculative in nature and would be costly and uncertain to pursue.  The Global Settlement, the UPS Settlement, and the Palantir Settlement each avoid the expense, inconvenience, and delay that would be attendant to resolution, on a contested basis, of the disputes that are resolved under the Global Settlement, the UPS Settlement, and the Palantir Settlement, respectively.

**U.    Vesting of Remaining Assets in the Wind-Down Debtor**

73.    Except as otherwise provided in the Plan, the Purchase Agreement, the Sale Order, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all Estate assets remaining shall vest in the Wind-Down Debtor for the purpose of administering the Estate and consummating the Plan.

**V.    Treatment of Executory Contracts and Unexpired Leases**

74.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for  rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan, the Purchase Agreement, the Sale Order, or another prior or pending notice and/or motion.  The Debtors' determinations regarding the assumption or

rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests and other parties in interest in the chapter 11 cases.

**W.     Objections**

75.     All objections, responses, reservations, statements, and comments in opposition to the Disclosure Statement or the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects.  All withdrawn objections, if any, are deemed withdrawn with prejudice.  All objections to confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

76.     All parties have had a full and fair opportunity to litigate all issues raised in the objections to confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

77.     The Disclosure Statement shall be, and hereby is, approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

78.     The Plan shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to implement the provisions of the Plan and consummate the Plan, including taking all actions necessary, advisable, or appropriate to effectuate the Plan without

any further authorization except as may be expressly required by the Plan or this Confirmation Order.

79.    This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order.

80.    The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including, without limitation: (a) the Debtors and Wind-Down Debtor; (b) the Prepetition Lenders; (c) the Purchaser and its affiliates; (d) Holders of General Unsecured Claims; (e) the Committee; and (f) all Holders of Claims and Interests.

81.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

## A.    Objections

82.    To the extent that any objections (including any reservations of rights contained therein) to confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

## B.    Plan Modifications

83.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to accept the Plan, subject to the technical modifications set forth herein and Docket No. 299.  Pursuant to Bankruptcy Rule 3019, these modifications do not

require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan or Plan Supplement modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## C.    Findings of Fact and Conclusions of Law

84.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

## D.    Modification of Plan Supplement

85.    Subject to the terms of the Plan and this Confirmation Order, the Debtors are authorized to modify and amend the Plan Supplement through and including the Effective Date, and to take all actions they deem necessary and appropriate to effect the transactions contemplated therein through, including, and following the Effective Date.

## E.    Postconfirmation Modification of the Plan

86.    Subject to the limitations and terms contained in Article XII of the Plan, the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of the Court.

### F.    Plan Classification Controlling

87.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors except for voting purposes.

### G.    General Settlement of Claims and Interests

88.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan, including the Global Settlement, shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Section 8.1 of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

### H.    Sources of Consideration for Plan Distributions

89.    The Plan Administrator and/or Wind-Down Debtor shall fund distributions under the Plan from the sources set forth therein.  Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, enjoined, or exculpated under

Article VIII of the Plan on or prior to the Effective Date shall vest in the Wind-Down Debtor and shall be subject to administration by the Plan Administrator.

**I.      Continued Corporate Existence**

90.      Except as otherwise provided in the Plan or this Confirmation Order, Debtor Fast Radius Operations, Inc. shall continue in existence after the Effective Date as the Wind-Down Debtor for purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtor after the Effective Date and after the consummation of the Sale Transaction, (b) performing the Debtors' obligations under the Purchase Agreement, (c) resolving any Disputed Claims, (d) paying or otherwise satisfying Allowed Claims, (e) filing appropriate tax returns, and (f) administering the Plan in an efficacious manner.  The Wind-Down Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forum, or administrative proceedings outside of the Bankruptcy Court, in each case without the requirement or need for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

**J.      Plan Administrator**

91.      The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan and as provided in the Confirmation Order.

92.      The Plan Administrator shall act for the Wind-Down Debtor in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof.  On the Effective Date, the authority, power, and incumbency of the persons acting as directors, managers, and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall succeed to the powers of the Debtors' directors and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtor.  For the avoidance of doubt, the foregoing shall not limit the

28

authority of the Wind-Down Debtor or Plan Administrator, as applicable, to continue the employment of any former director, officer, employee, or other agent or representative.

93.    Without limitation, the Plan Administrator is authorized to establish and maintain the Wind Down Reserve to satisfy future costs and expenses for the implementation of the Plan and discharge of its duties thereunder.

94.    Upon the occurrence of the Effective Date, all of the chapter 11 cases, except for the chapter 11 case of Debtor Fast Radius Operations, Inc., shall be closed pursuant to a separate order to be submitted under certification of counsel with the U.S. Trustee, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the chapter 11 case of Debtor Fast Radius Operations.  When all or substantially all of remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the chapter 11 case of Debtor Fast Radius Operations, Inc. in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**K.    Plan Implementation Authorization**

95.    The Debtors or the Wind-Down Debtor, as applicable, will be authorized to take all necessary or appropriate steps, and perform all necessary or appropriate acts, to consummate the terms and conditions of the Plan, including, as applicable, consummation of the Sale Transaction. Such actions may include:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state

or provincial law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

**L.    Approval of Global Settlement**

96.    The Global Settlement was negotiated in good faith, is in the best interests of the Debtors, their Estates, and their stakeholders, satisfies the standards of sections 363(b) and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and is approved.

**M.    Approval of Palantir Settlement**

97.    The Palantir Settlement was negotiated in good faith, is in the best interests of the Debtors, their Estates, and their stakeholders, satisfies the standards of sections 363(b) and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and is approved.

**N.    Approval of UPS Settlement**

98.    The UPS Settlement was negotiated in good faith, is in the best interests of the Debtors, their Estates, and their stakeholders, satisfies the standards of sections 363(b) and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and is approved.

**O.    Cancellation of Existing Securities and Agreements**

99.    Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, the Interests and any other promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Interests, and all options, warrants, calls, rights, puts, awards, and commitments, including, without limitation, any agreements purporting to relate to deferred compensation that relate to Interests or options, shall be deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under the notes, share certificates, and other agreements and instruments governing such Claims and Interests shall be released; *provided, however*, that the cancellation, release, and discharge of the foregoing shall not affect whether a timely Claim made on account of such obligation may become

30

an Allowed Claim; *provided, further, however,* that certain instruments, documents, and credit agreement related to Claims shall continue in effect solely for the purpose of allowing the Plan Administrator to make Distributions in accordance with the Plan.  The Holders of or parties to such cancelled notes, share certificates, and other agreements and instruments shall have no rights against the Debtors, the Estates, and the Wind-Down Debtor or the Plan Administrator arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

**P.      Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

100.    This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**Q.      The Discharge, Releases, Injunction, Exculpation, and Related Provisions under the Plan**

101.    The following discharge, releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party: (a) Releases by the Debtors (Section 8.3); (b) Third-Party Release (Section 8.4); (c) Exculpation Provision (Section 8.5); (d) 1125(e) Provision (Section 8.6); and (e) Injunction (Section 8.7).

**R.      Assumption, Rejection, and Cure of Executory Contracts and Unexpired Leases**

102.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article IX of the Plan shall be, and hereby are, approved in their entirety.

103.    For the avoidance of doubt, on the Effective Date, except as otherwise provided in this Confirmation Order, this Plan, any other Plan Document, the Sale Order, the Bar Date Order, or any other relevant order of the Bankruptcy Court, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting all prepetition Executory Contracts or Leases to which any Debtor is a party, to the extent such contracts or leases are Executory Contracts or Leases, on and subject to the occurrence of the Effective Date, unless (a) such contract or lease is expressly assumed hereunder or previously shall have been assumed or assumed and assigned by the Debtors, or (b) is the subject of a pending motion to reject on the Confirmation Date; *provided*, *however*, that as to all policies and agreements giving rise to insurance in favor of the Debtors or their Estates, the Debtors believe that the insurance agreements of the Debtors are not Executory Contracts or Leases and therefore are not subject to assumption or rejection.  To the extent that an insurance policy or agreement is determined to be an Executory Contract or Lease subject to assumption by the Debtors, such executory insurance policy or agreement, as the case may be, is hereby assumed and assigned to, and shall vest with, the Wind-Down Debtor.  For the avoidance of doubt, all insurance policies and agreements of the Debtors, and all obligations of any of the Debtors and the other counterparties thereto, shall be unaffected by the Plan and shall remain enforceable according to their terms and applicable law.

**S.    Provisions Regarding United States**

104.    Notwithstanding any provision to the contrary in the Plan, the Plan Supplement, this Order, the Plan Documents or any implementing Plan documents (collectively, "Documents"):

    a.    As to the United States, nothing in the Documents shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code ("claim"), (b) any claim of the United States arising after the Confirmation Date, or (c) any liability of any entity or person under police or  regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property or rights to property that such entity owns, operates or leases after the Confirmation Date; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (3) release, enjoin, impair or discharge any non-debtor from any claim, liability, suit, interest, right or Cause of Action of the United States; (4) affect any setoff or recoupment rights of the United States and such rights are preserved; (5) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) pursuant to

Section 503(b)(1)(D) of the Bankruptcy Code; (6) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (7) be construed as a compromise or settlement of any liability, suit, claim, right, Cause of Action or interest of the United States; (8) modify the scope of Section 502 or 505 of the Bankruptcy Code; (9) cause the filing of any claim by the United States to be disallowed or expunged without notice and a hearing unless agreed to in writing by the United States; (10) cause the Government Bar Date to be shortened; or (11) affect or impair the ability of the United States to make demand on, be paid by, or otherwise pursue any sureties that are liable for any debt owed to the United States.

b.  Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full; *provided*, *however*, that the rights of each of the Debtors, the Wind-Down Debtor, the Plan Administrator, and any other party in interest with requisite standing under Section 502 of the Bankruptcy Code to object to such allowance, including in respect of interest and penalties asserted under non-bankruptcy law, are likewise fully preserved.  Priority Tax Claims of the United States allowed pursuant to the Plan or the Bankruptcy Code will be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code; *provided*, *however*, that the rights of each of the Debtors, the Wind-Down Debtor, the Plan Administrator, and any other party in interest with requisite standing under Section 502 of the Bankruptcy Code to object to such allowance are likewise fully preserved.  To the extent allowed Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code; *provided*, *however*, that the rights of each of the Debtors, the Wind-Down Debtor, the Plan Administrator, and any other party in interest with requisite standing under Section 502 of the Bankruptcy Code to object to such allowance, including in respect of penalties, interest and the applicable rate, if any, pursuant to Section 511 of the Bankruptcy Code, or additions to tax, are likewise fully preserved.  Moreover, nothing shall affect a release, injunction or otherwise preclude any claim whatsoever against the Debtors or the Debtors' Estates by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from amending any claim against the Debtors or the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Any liability that is an allowed Administrative expense claim or allowed Priority Tax Claim pursuant to the Plan or the Bankruptcy Code arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code; *provided*, *however*, that the rights of each of the Debtors, the Wind-Down Debtor, the Plan Administrator, and any other party in interest with requisite standing under Section 502 of the Bankruptcy Code to object to such allowance, including in respect of amounts payable, if any, under Section 1129(a)(9)(A) and (C) of the Bankruptcy Code, are likewise fully preserved.. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to bind the United States to any characterization of any transaction for

tax purposes or to determine the tax liability of any person or entity, including, but not limited to, the Debtors, the Debtors' Estates and the Plan Administrator, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under the United States Code, including Section 505 of the Bankruptcy Code.

**T.**    **Provisions Regarding Goose Island Landlord**

105.    Nothing in the Documents shall be construed to release, waive, or enjoin any direct claims or Causes of Action, if any, LBA LVF VII-Company XXXIII, LLC (the "<u>Goose Island Landlord</u>") may assert against the Debtors' applicable insurance providers in respect of the lease for 1224 Hooker Street, Chicago, IL, 60642 (the "<u>Goose Island Property</u>"); *provided*, *however*, for the avoidance of doubt, nothing herein (a) creates a direct right of action if one does not otherwise exist under applicable law, and (b) shall be deemed to modify, amend, waive, or otherwise prejudice any of the insurance providers' rights or defenses under or with respect to the insurance policies.

**U.**    **Further Plan Modifications**

106.    The Plan shall be deemed modified as follows:

    a.    The definition of "Exculpated Parties" set forth in section 1.46 of the Plan shall be amended and replaced in its entirety with the following:

        "Exculpated Parties" shall mean, each in their respective capacities as such, (a) the Debtors; (b) the Committee **and its members**; ~~and~~ (c) ~~the Related Parties of each of the foregoing in each case as to the Persons and entities in this clause (c) to the extent such Person or Entity is a fiduciary of any of the Estates (including, without limitation, as an officer or director of the Debtors)~~ **the Debtors' officers, directors, and any employee who served in a fiduciary capacity during these chapter 11 cases, (d) with respect to each of the foregoing in clauses (a) through (c), each of their respective financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other professionals, including the Professionals, who served in such capacities during these chapter 11 cases; and (e) with respect to each of the foregoing in clauses (a) through (d), such Person's or Entity's successors and assigns, solely to the extent such Person or Entity acted as a fiduciary of any of the Estates and served in such capacities during these chapter 11 cases**.

    b.    The first sentence of section 7.13 of the Plan shall be amended and replaced in its entirety with the following:

The Debtors intend to ~~treat this Plan as~~ **file** a motion to close the Chapter 11 Case of Debtor Fast Radius, Inc. and Debtor Fast Radius PTE. LTD ~~for purposes of~~ **under** the Bankruptcy Rules and Local Rules, including Local Bankruptcy Rule 3022-1, **as soon as reasonably practicable**.

c. Section 8.5 of the Combined Disclosure Statement and Plan is hereby revised as follows:

"…each Exculpated Party is released and exculpated from, any liability to any Entity for any claims or Causes of Action arising prior to or on the Effective Date ~~(including prior to the Petition Date)…~~"

## V.    Provisions Governing Distributions

107.    The distribution provisions of Article X of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Distributions under the Plan shall be made by the Wind-Down Debtor or the Plan Administrator.

## W.    Release of Liens upon Satisfaction of Secured Claims

108.    Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtor to evidence the release of such Lien, including

35

the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**X.      Effective Date Notice**

109.    In accordance with Bankruptcy Rules 2002 and 3020(c), the Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Effective Date Notice"), upon all parties listed in the creditor matrix maintained by Stretto, Inc. no later than five (5) business days after the Effective Date.

**Y.      Administrative Claims Bar Date**

110.    In accordance with the Plan and except as otherwise set forth herein, requests for payment of Administrative Claims (other than requests for payment of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code) must be filed with the Court filed no later than thirty (30) days after the Effective Date. Unless otherwise ordered by the Court, holders of Administrative Claims that do not file and serve such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Nothing in this Order or the Plan extends any deadline for the filing of any claims established in any previously entered order of the Court, including the *Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Section 503(B)(9) Claims, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 112].

**Z.      Section 1146 Exemption**

111.    To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan or this Confirmation Order or the issuance, transfer or exchange of any security under the Plan or this Confirmation Order shall not be subject to any

document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## AA.    Preservation of Causes of Action

112.    Except as otherwise provided in the Plan or this Confirmation Order or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Wind-Down Debtor may enforce all rights to commence and pursue, as appropriate, any and all such Retained Actions, whether arising prior to or after the Petition Date, and the Wind-Down Debtor's rights to commence, prosecute, or settle any such Retained Actions shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.

## BB.    Effectiveness of All Actions

113.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors, the Wind-Down Debtor, and/or the Plan Administrator and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

## CC.    Binding Effect

114.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, and their respective

successors and assigns, including, but not limited to, the Wind-Down Debtor and the Plan Administrator.

## DD.    Claims Reconciliation Process

115.    The procedures and responsibilities for, and costs of, reconciling Disputed Claims shall be as set forth in the Plan or as otherwise ordered by the Court.

## EE.    Asset Sale Rights, Claims, and Obligations

116.    Nothing in this Confirmation Order or the Plan shall act as a release of any obligation of the Purchase Agreement parties pursuant to, or any Claim arising out of, the Purchase Agreement or any related document, or as a waiver, relinquishment, or release of any right held by any of the parties to the Purchase Agreement pursuant to the Purchase Agreement.

## FF.    Professional Compensation and Reimbursement Claims

117.    Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Wind-Down Debtor shall be authorized, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, to pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and consummation incurred by the Wind-Down Debtor.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtor, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court

## GG.    Authorization to Consummate

118.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction of the conditions precedent to Consummation set forth in Article XI of the Plan.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**HH.    Injunctions and Automatic Stay**

119.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the chapter 11 cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**II.    Dissolution of the Committee**

120.    On the Effective Date, the Committee, to the extent then in existence, will be deemed dissolved and cease to exist.  The dissolution of the Committee as provided herein shall not prevent any Professional from filing a Professional Fee Claim for service provided to the Committee prior to the Effective Date.

**JJ.    Effect of Nonoccurrence of Conditions to the Effective Date**

121.    If the Effective Date does not occur, the Debtors reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and that this Plan be null and void in all respects.  If the Bankruptcy Court shall have entered an order vacating the Confirmation Order, the time within which the Debtors may assume and assign or reject all Executory Contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

**KK.    Reports**

122.    After the Confirmation Date, the Debtors have no obligation to File with the Court or serve on any parties reports that the Debtors were obligated to File under the Bankruptcy Code or a prior order of the Court, including monthly operating reports, ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however*, that the Debtors shall comply with the U.S. Trustee's quarterly reporting requirements.

EAST\200470911.4

**LL.    Effect of Conflict between Plan and Confirmation Order**

123.    Except as set forth in the Plan and the Confirmation Order, to the extent that any provision of the Plan or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**MM.    Retention of Jurisdiction**

124.    The Court retains jurisdiction over the chapter 11 cases and all matters arising out of or related to the chapter 11 cases and the Plan.

**NN.    Waiver of 14-Day Stay**

125.    Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, and 9014), this Confirmation Order is effective immediately upon entry and not subject to any stay.

**OO.    Final Order**

126.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**Dated: February 22nd, 2023**
**Wilmington, Delaware**

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

EAST\200470911.4